UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JAN WELFNC

Write the full name of each plaintiff.

_____CV_____
(Include case number if one has been
assigned)

-against-

POLISH & SLAVIC FEDERAL
CREDIT UNION BOARD
OF DIRECTORS

**COMPLAINT**

Do you want a jury trial?
☒ Yes   ☐ No

Write the full name of each defendant. If you need more
space, please write "see attached" in the space above and
attach an additional sheet of paper with the full list of
names. The names listed above must be identical to those
contained in Section II.

JUDGE WOODS

18 CV 9617

---

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed
with the court should therefore *not* contain: an individual's full social security number or full
birth date; the full name of a person known to be a minor; or a complete financial account
number. A filing may include *only*: the last four digits of a social security number; the year of
an individual's birth; a minor's initials; and the last four digits of a financial account number.
See Federal Rule of Civil Procedure 5.2.

Rev. 1/9/17

## I.   BASIS FOR JURISDICTION

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation, and the amount in controversy is more than $75,000, is a diversity case. In a diversity case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal-court jurisdiction in your case?

☒ Federal Question

☐ Diversity of Citizenship

### A.   If you checked Federal Question

Which of your federal constitutional or federal statutory rights have been violated?

- FREDOM OF SPEECH
- PERSONAL INVIOLABILITY
- THE RIGHT TO VOTE

### B.   If you checked Diversity of Citizenship

#### 1.   Citizenship of the parties

Of what State is each party a citizen?

The plaintiff , _____ , is a citizen of the State of
(Plaintiff's name)

_____
(State in which the person resides and intends to remain.)

or, if not lawfully admitted for permanent residence in the United States, a citizen or subject of the foreign state of

_____

If more than one plaintiff is named in the complaint, attach additional pages providing information for each additional plaintiff.

If the defendant is an individual:

The defendant, _____, is a citizen of the State of
                        (Defendant's name)

_____

or, if not lawfully admitted for permanent residence in the United States, a citizen or
subject of the foreign state of

_____

If the defendant is a corporation:

The defendant, _____, is incorporated under the laws of

the State of _____

and has its principal place of business in the State of _____

or is incorporated under the laws of (foreign state) _____

and has its principal place of business in _____

If more than one defendant is named in the complaint, attach additional pages providing
information for each additional defendant.

## II. PARTIES

## A. Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional
pages if needed.

JAN _____ NELENC
First Name          Middle Initial          Last Name

148 DRIGGS AVENUE # 1R
Street Address

BROOKLYN                NY              11222
County, City                State           Zip Code

929-305-2680
Telephone Number                    Email Address (if available)

## B.  Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. Attach additional pages if needed.

Defendant 1:   SEE PAGE 4A

First Name                                  Last Name

Current Job Title (or other identifying information)

Current Work Address (or other address where defendant may be served)

County, City                    State            Zip Code

Defendant 2:

First Name                                  Last Name

Current Job Title (or other identifying information)

Current Work Address (or other address where defendant may be served)

County, City                    State            Zip Code

Defendant 3:

First Name                                  Last Name

Current Job Title (or other identifying information)

Current Work Address (or other address where defendant may be served)

County, City                    State            Zip Code

Defendant 4:

| First Name | Last Name |

Current Job Title (or other identifying information)

Current Work Address (or other address where defendant may be served)

| County, City | State | Zip Code |

## III. STATEMENT OF CLAIM

Place(s) of occurrence:   CLARK (N.J.)   |   GREENPOINT (NY)

Date(s) of occurrence:   05/07/2017   |   10/29/2013 – 10/15/2018

## FACTS:

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and what each defendant personally did or failed to do that harmed you. Attach additional pages if needed.

EVENT ON 05/07/17
On 05/07/17 I took part in annual general meeting of Polish & Slavic Federal Credit Union in Clark (NJ). When I started asking questions addressed to PSFCU Board of Directors, concerning verdict of Supreme Court to call a special meeting of PSFCU members that was ignored by PSFCU Board of Directors, they called security guards to take my microphone and not let me speak. A mighty bodyguard pushed me brutally on the chair and tables at which the participants of the meeting sat, hitting me in the chest. One of meeting participants, Mr. Andrzej Mioduszewski, stepped in between bodyguard and me, preventing a tragedy. Because of this attack of the bodyguard on me, I had to leave meeting and I went to a nearby hospital because of severe cervical and ankle pain.

EVENT ON 10/29/13
The lawyer Mr. William Cagney, acting on behalf of PSFCU Board of Directors, unlawfully threatened me in his letter, presenting me an ultimatum to remove all the information, concerning mismanagement of PSFCU Board of Directors, from internet, as well as, to abandon handing out leaflets to PSFCU members. Otherwise, he warned me that he can file a lawsuit against me. Board of Directors humiliated and bullied me, using secret medical data concerning my health conditions, disclosed by former PSFCU Director Andrzej Kaminski.

At the same time, I am suing NCUA for the lack of control over Board of Directors and ignoring complaints sent by PSFCU and even some former executives. NCUA did not even respond to complaints about the use of physical violence against PSFCU member during General Meeting.

Page 5

**The following PSFCU members are involved in actions against PSFCU Board of Directors and support my claim:**

- Henryk Kwiatkowski  (henrykk@att.net)
- 5905  70th Ave., Ridgewood, NY 11385
-
- Jozef Guzik  (joeguzik@hotmail.com)
  381 Burlington Rd., Paramus, NJ 07652

- Marek Wysocki  (mwysocki@verizon.net)
- 185 Old Tappan Rd., Tappan, NY 10983
-
- Jan Lipski
- 227 Calyer Street, Apt. 4L, Brooklyn, NY 11222
-
- Jan Welenc
- 148 Driggs Avenue, Apt. 1R, Brooklyn, NY 11222
- ANDRZEJ MIODUSZEWSKI 148 DRIGG AVE # 1R BROOKLYN NY 11222

**Below there are the names and addresses of  PSFCU Directors:**

1. Krzysztof Matyszczyk
   PSFCU, 100 McGuinness Blvd, Brooklyn, NY 11222

2. Elzbieta Baumgartner
   PSFCU, 100 McGuinness Blvd, Brooklyn, NY 11222

3. Malgorzata Gradzki for USD
   PSFCU, 100 McGuinness Blvd, Brooklyn, NY 11222

4. Marzena Wierzbowska
   PSFCU, 100 McGuinness Blvd, Brooklyn, NY 11222

5. Iwona Podolak
   PSFCU, 100 McGuinness Blvd, Brooklyn, NY 11222

6. Malgorzata Czajkowska
   PSFCU, 100 McGuinness Blvd, Brooklyn, NY 11222

[-3]   4A

7. Bozena Krajewska-Pielarz
PSFCU, 100 McGuinness Blvd, Brooklyn, NY 11222

- 3 -

8. Malgorzata Wadolowski
PSFCU, 100 McGuinness Blvd, Brooklyn, NY 11222

9. Bogdan Chmielewski (CEO)
PSFCU, 100 McGuinness Blvd, Brooklyn, NY 11222

10. Lech Wojtkowski
PSFCU, 100 McGuinness Blvd, Brooklyn, NY 11222

11. Ryszard Bak
PSFCU, 100 McGuinness Blvd, Brooklyn, NY 11222

12. Edward Pierwola
PSFCU, 100 McGuinness Blvd, Brooklyn, NY 11222

13. National Credit Union Administration
1775 Duke Street, Alexandria, VA 22314-3428

14. POLISH & SLAVIC FEDERAL
CREDIT UNION
100 McGuinness Blvd
BROOKLYN NY 11222

4A

Because of the stress I suffered due to attacks on my person for being socially engaged in the interests of PSFCU members and at their request, I `had traffic accident, which threatened my life. As a result of this accident, my 14 ribs have been fractured, the collarbone has been broken, also bilateral pneumonia and heart attack have been reported. In addition, I spent too much time on social activities, neglecting my spouse, who after many surgeries was blind.

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

MORAL SUFFERING, STRESS DISORDER, SEVERE CHEST, ANKLE & CERVICAL PAIN, HEADACHE, TRAUMATIC STRESS I SUFFER TILL TODAY, NIGHTMARES ABOUT HARASSMENT. ALSO MY WIFE SUFFERED STRESS CAUSED BY A/M SITUATION. DUE TO A/M REASONS, I HAD TO UNDERGO COMPLICATED SURGICAL OPERATIONS.

**IV. RELIEF**

State briefly what money damages or other relief you want the court to order.

compensation USD 13 mln + $ 1mln = $ 14 mln

## V. PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| 10-19-2018 | Jan Welenc |
|---|---|
| Dated | Plaintiff's Signature |

| YAN | | WELENC |
|---|---|---|
| First Name | Middle Initial | Last Name |

148 DRIGGS Avenue # 1R
Street Address

| BROOKLYN | NY | 11222 |
|---|---|---|
| County, City | State | Zip Code |

| 929-305-2680 | |
|---|---|
| Telephone Number | Email Address (if available) |

I have read the Pro Se (Nonprisoner) Consent to Receive Documents Electronically:
☐ Yes   ☐ No

   If you do consent to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.

New York, 10/05/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
500 Pearl Street, Rm # 200
New York, NY 10007

Honourale High Court Judges,

Hereby, I would like to file a court action against Board of Directors of
Polish & Slavic Federal Credit Union (located at 100 McGuinness Blvd.,
Brooklyn, NY 11222) and each Director separately.  I am also suing Federal
Agency NCUA (located at 1775 Duke Street , Alexandria, VA 22314-3426),
which is obliged to control all Credit Unions. So far, NCUA has ignored
complaints sent by many members, including me myself, as well as, by some
former PSFCU Directors, not preventing great corruption and pathology in
PSFCU.

Hereby, I demand a monetary compensation from PSFCU and from each of
the Directors separately, including the CEO, for the loss of my mental and
physical health. I was still purposely and deliberately harrassed and scared
by each of the PSFCU Directors with vengence for representing members
of PSFCU on a Court case against  Board of Directors. Court issued a ruling
to order Board of Directors to call a Special Meeting of memebers.  PSFCU
Board of Directors ignored both the petition signed by four thousand
members and the judgment given by the Court *(Exhibit #* \     *).* The
purpose of the petition was to call a Special Meeting of PSFCU members, in
accordance with Statute of Credit Union, at which time it was intended to
remove some corrupt Directors from the Board.

Because of the stress I suffered due to attacks on my person for being
socially engaged in the interests of  PSFCU members and at their request, I
had traffic accident, which threatened my life. As a result of this accident,
my 14 ribs have been fractured, the collarbone has been broken, also
bilateral pneumonia and heart attack have been reported. In addition, I spent
too much time on social activities, neglecting my spouse, who after many
surgeries was blind.

- 1 -

Due to the above-mentioned reasons, the brutal attack of bodyguard on me during gathering of PSFCU members in Clark, serious loss of health, incessant humiliation of me and life in constant stress and the need for further treatment, I insist on cash compensation individually from NCUA and each of the listed below PSFCU Directors:

1. Krzysztof Matyszczyk - Chairman   ($ 1mln)
   PSFCU, 100 McGuinness Blvd, Brooklyn, NY 11222

2. Bogdan Chmielewski – CEO   ($ 1 mln)
   PSFCU, 100 McGuinness Blvd, Brooklyn, NY 11222

3. Elzbieta Baumgartner – Director ($1 mln)
   PSFCU, 100 McGuinness Blvd, Brooklyn, NY 11222

4. Malgorzata Gracki – Director ($1 mln)
   PSFCU, 100 McGuinness Blvd, Brooklyn, NY 11222

5. Marzena Wierzbowska – Director  ($ 1 mln)
   PSFCU, 100 McGuinness Blvd, Brooklyn, NY 11222

6. Iwona Podolak – Director ($ 1 mln)
   PSFCU, 100 McGuinness Blvd, Brooklyn, NY 11222

7. Malgorzata Wadolowski – Director ($ 1 mln)
   PSFCU, 100 McGuinness Blvd, Brooklyn, NY 11222

8. Bozena Krajewska-Pielarz – Director ($ 1 mln)
   PSFCU, 100 McGuinness Blvd, Brooklyn, NY 11222

9. Malgorzata Czajkowska – Director ($ 1 mln)
   PSFCU, 100 McGuinness Blvd, Brooklyn, NY 11222

10. Michal Kwiatkowski – Director ($ 1 mln)
    PSFCU, 100 McGuinness Blvd, Brooklyn, NY 11222

11. Richard Bak – Director ($ 1 mln)
    PSFCU, 100 McGuinness Blvd, Brooklyn, NY 11222

12. Edward Pierwola - Director of Audit Committee ($ 1 mln)
    PSFCU, 100 McGuinness Blvd, Brooklyn, NY 11222

13. National Credit Union Administration (NCUA) ($ 1 mln)
1775 Duke Street, Alexandria, VA 22314-3428

14. POLISH & SLAVIC FEDERAL CREDIT UNION → $ 1 mln
    100 McGuinness Blvd, Brooklyn NY 11222

**The total amount of compensation I demand: $ 13 mln** + $ 14 mln

## Justification of a Court action

The members and co-owners of Polish & Slavic Federal Credit Union, who submitted four thousand signatures to the petition, asked me and Erik Roszkowski to represent them in a Court case in which they demanded that the Court orders PSFCU Board of Directors to call a Special Meeting of members in accordance with the Statute of the Credit Union. Since the Board of Directors had ignored the members' petition, it was necessary to file a motion in the Brooklyn Court *(Case # 12933/13).* The right to call a Special Meeting of members is confirmed by PSFCU Statute attached to the case file (Exhibit #2 ). A similar special meeting was held on March 25th, 2012, during which part of Directors were dismissed and deprived membership of the Credit Union.

The purpose of calling a Special Meeting of member is to submit a motion for removal from PSFCU Board of Directors some of them, on account of their decision-making not in accordance with PSFCU Statute, mismanagement and the use of their social positions for personal gains, ignoring members' opinions when making financial decisions, imposing Credit Union on huge financial losses through faulty investment decisions for large sums of members' money and deliberate deception of members of the Union in investment matters.

PSFCU Board of Directors hires lawyers, using members' money, to defend their no-pay positions as volunteers acting against Credit Union members interests. After filing an application to the Court in July 2013 for Board of Directors to call a special meeting of members, Mr. Cagney, a lawyer hired

by Directors, deliberately attempted to intimidate me on behalf of Board of
Directors. His task was to force me to withdraw from the court case.
On October 29th, 2013 attorney Mr. Cagney's sent me a letter in which he
demanded that I should resign from the court case. He obligated me to
immediately discontinue my presentation of any claims and destruction of
my entire documentation that is supposedly false. Otherwise, I will be sent
to the court. A letter in which the lawyer acting on behalf of the Board of
Directors is trying to intimidate me is included in the case file *(Exhibit 2 )*.

Board of Directors to intimidate me, unlawfully uses secret information from
my personal medical reports that have been made public by Bozena
Kaminski, Director of Polish & Slavic Center, wife of former Director of
PSFCU Andrew Kaminski, who previously represented me in the court on
workers compensation case and new all my medical data protected by law.
Bozena Kaminski illegally disclosed my medical reports, while collecting
signatures of members of the Union, when she was applying to Board of
Directors of our Credit Union.

Witnesses of the disclosure of my medical reports by Bozena Kaminski are
Waldemar Szuba and Bozena Krajewska-Pielarz, who on 8/11/2011 also
collected signatures of members supporting their candidatures to PSFCU
Board of Directors. Both witnesses notarized their statements, which I attach
to my letter *(Exhibit 4 )*. The information from my medical reports has
been used by Board of Directors for psychological pressure and blackmail to
force me to withdraw the court case regarding calling of a special meeting of
PSFCU members.

Then, I accuse Board of Directors of provoking a bandit physical assault on
me by security guy who protected General Meeting of PSFCU members at
Clark (NJ) on 05/07/2017. Bodyguard, ordered by Board of Directors, used
physical strength to throw me out of the meeting. I was hit hard in my chest
and neck with his fists and I was thrown on chairs and tables. As a result of
this attack I felt a strong pain in the cervical, chest, and right ankle. One of
the meeting participants, Andrzej Mioduszewski, defended me and
prevented me from getting out of the meeting by security guards. I enclose
the statement of Andrzej Mioduszewski attested by the notary. *(Exhibit 5 )*.

After bodyguard attack I sat down on the chair, but since I suffered a strong

- 4 -

pain I had to leave the meeting and went home. Next day I still felt pain in my neck, chest and ankle, so my friend dropped me at the emergency room at Bellevue Hospital on 05/08/2017. In the hospital x-ray of chest, neck and ankles were made. I must add that I had already damaged my neck in the past, so surgery of cervical vertebra must be accelerated after a/m attack. I attached the results of examination from Bellevue and Mt Sinai Hospitals. *(Exhibit 6 )*.

The main reason for impudent removal of me from the meeting was fact that during meeteing I informed members of the Union about the judgment of Brooklyn Court. Judge Wavny Toussaint in the judgment of June 12th 2015 ordered PSFCU Board of Directors to call a special meeting of members. Unfortunately, Board of Directors ignored the Court judgment.

At this meeting I raised another problem, uncomfortable for Board of Directors. Namely, I informed members about financial scandals of the head of the Polish Schools Dorota Andraka. Board of Directors handed over $ 165,000 to Mrs Andraka for activities of Polish schools, despite investigations against her. The federal authorities have filed a lawsuit against her for tax evasion and intercepting money from Polish and American funds that were supposed to support education. I hereby submit information of the Federal Prosecutor's Office on the initiation of criminal proceedings against Mrs. Dorota Andraka *(Exhibit 7 )*.

I will also file court case against the security company, which by law should ensure safety of participants of general meeting in Clark (N.J.) on 05/07/2017, but it was on the contrary. Two bodyguards of this company tried to remove me from the meeting by force. As a result of this assault, I suffered an injury and I had to go to New York hospital. The use of physical force by bodyguards caused worsening of my neck condition and my surgery will be more complicated. I attache herewith referral to surgery *(Exhibit #8     )*.

Board of Directors wrongly accused me of distributing leaflets in which I give false information criticizing the management of our Credit Union. Here I would like to explain that all the information given to members of the Union has been provided by former Directors of PSFCU who were removed at the special meeting in 2012. During this meeting, current Board of

Directors used members of the Credit Union to remove uncomfortable competition for themselves. In addition, a lot of information was received from some honest directors, selected after 2012, who were not corrupt like most of current Board of Directors.

The principles of democracy are alien to Krzysztof Matyszczyk who behaves like a head of mafia-type Board of Directors.  Krzysztof Matyszczyk, who has been on Board of Directors for 20 years as a volunteer, blocks access to information by members of management, including the treasurer. At the general meeting in Hempstead in 2014, Treasurer Staszewski and Director Leon Kokoszka reported on activities of the group under Krzysztof Matyszczyk which hurt the interests of members. I present as the case evidence the paper read at General Meeting by Treasurer Staszewski *(Exhibit #3  ).*

Another proof of existence of a mafia group on Board of Directors is an open letter from former Director Marzena Wojczulanis, addressed to NCUA and members of PSFCU, as well as, her another open letter that points to fabrication of election results to Board of Directors every year.
The issue of fabrication Board of Directors election was also raised in a petition addressed to Board of Directors and to NCUA, which was ignored *(Exhibit #4@    ).*

All complaints sent to federal agency NCUAwere ignored and failed *(Exhibits #  10                    ). *This is a testimony to mafia regime in PSFCU. Credit Union members are also disappointed that all complaints sent to New York State Prosecutor Schneiderman, FBI, IRS and Congresswoman Carolyn Maloney, who supposed to control NYC credit unions, so far, have not taken any action in this matter.

40 years ago there were over 23,000 credit unions in United States, and only 6,500 remain today. They were closed by Courts because of their corruption and cheating of members. Mafia-style activist of our credit union Krzysztof Matyszczyk also earned a multi-million dollar fortune in damages to members,  among other things, the illegal purchase of multi-family homes for foreclosure, financial manipulations on loans and repairs of PSFCU branches buildings. To confuse investigative bodies, Krzysztof Matyszczyk

runs a small insurance agency, but his main illegal income derives from his social activities as a volunteer director of PSFCU (supposedly without pay).

In order to facilitate his illegal and corrupt activities, Krzysztof Matyszczyk practically incapacitated PSFCU members and subordinated Board of Directors, as well as, Audit Committee. Krzysztof Matyszczyk manipulates election of Board of Directors by nominating candidates who are submissive to him. He has changed individual paragraphs of the Statute without consent of PSFCU members. An example of such unlawful action may be to increase the number of signatures required for a petition to call a special meeting of member from 750 to 2,000 (Art 4., Sect. 2). Federal Agency NCUA generously approved this decision on July 26th, 2013.

Union members sent protests against this decision to former NCUA Chairman Michael Fryzel, who replied that he could not interfere with activities of Credit Union and decisions made by Board of Directors. In such a situation, members turned to NCUA asking why the Federal Agency, which can not interfere with unlawful decisions taken by PSFCU Board of Directors, has duly agreed to change the Statute *(Exhibit #12.).* Unfortunately, members of the Union have not yet received an answer from NCUA.

Since foundation of PSFCU in 1976, Board of Directors members have been working as volunteers. However, in practice Directors took over our financial institution. Having access to members' money, they made a kind of private farm from our Union. All you have to do is go to NCUA web site to find out how big our losses are due to poor management. One example could be establishment of a receivership at PSFCU by NCUA because of cheating IRS in 2000. Financial penalties, caused by irresponsible behavior of the Board of Directors, costed PSFCU members $ 3 million.

Another example may be the unreasonable dismissal of some Executive Directors before expiration of their term of office. One of them was a brilliant specialist, graduate of Columbia University, CEO Oskar Mielczarek, who filed a lawsuit against Board of Directors for unjustified termination of his contract. PSFCU Board of Directors decided to settle down and pay Oskar Mielczarek million dollars compensation. There is a

- 7 -

reasonable suspicion that Oskar Mielczarek, who had access to all financial documents of PSFCU, used his knowledge in the Court. Board of Directors decided to take a stand, fearing that various hidden financial frauds would be revealed. Board of Directors did not inform either PSFCU members or CUNA Mutual Insurance Agency about the case *(Exhibit # 13  ).*

An example of the irresponsible behavior of PSFCU Board of Directors may be employment of Bohdan Chmielewski, Krzysztof Matyszczyk's friend, as CEO in place of dismissed Oskar Mielczarek. Bohdan Chmielewski was once fired from the position of CEO by previous Board of Directors in 2012, for which he received compensation in the amount of 300 thousand dollars. Bohdan Chmielewski does not have any American education or preparation for being a CEO of a big financial institution.  Previously he was released from the position of Vice President of the Polish Bank WAWEL in New Jersey upon discovery misappropriating 100 thousand dollars of members' money by the bank's management *(Exhibit 14 ).*

I work socially with other members in defense of PSFCU, which is in danger of bankruptcy. This activity costed me a loss of health. I neglected also my family. My wife lost sight after several surgeries. Still, I'm not going to give up on the action, whose purpose is to remove corrupt Board of Directors who does not respect the principles of American democracy. Board of Directors must acknowledge that members are owners of PSFCU and that each director is subject to verification of his/her function by members.

This pathology in PSFCU would not take place if federal authorities, such as NCUA, which is supposed to control all credit unions, as well as, local politicians like Congresswoman Carolyn Maloney were interested in this sick situation.

According to my opinion, Court should issue a subpoena to force Board of Directors to disclose all financial documents, that can demonstrate how big losses were suffered by members of PSFCU due to mafia-dominated methods of managing PSFCU.

Yours faithfully,

Jan Welenc

Jan Welenc

148 DRIGGS Ave IR - 8 -
BROOKLYN NY 11222



09/10/2012


Ms. Marzena Wierzbowska

100 McGuiness Blvd.
Brooklyn, NY 11222

For the information of Board of Directors, Supervisory Committee, PSFCU Members

We the undersigned members of Polish & Slavic Federal Credit Union herewith testify that between July the 15th 2012 and September the 08th 2012 we were involved in civic activity to collect signatures for the Petition to be submitted to the PSFCU Board of Directors President. This Petition concerned convening of special meeting of PSFCU members to remove the following Directors from the Board of Directors: Krzysztof Matyszczyk, Elzbieta Baumgartner, Leon Kokoszka, Kajetana Sawczuk, as well as, Edward Pierwola from Supervisory Committee. Furthermore, petition requested depriving PSFCU membership of the following Directors: Krzysztof Matyszczyk and Elzbieta Baumgartner. Petition was submitted according to Article IV, Point 2 & 3 of binding PSFCU Statute.

Signatures and personal data concerning PSFCU members, who supported convening of special meeting, were collected by undersigned members. Undersigned members certify herewith that all signatures, supporting petition, were collected in their presence and all signatories confirmed their authenticity. Undersigned members understand that Compliance Department of PSFCU is obliged to verify authenticity of all signatures supporting petition, as well as, membership of all signatories. When verification is finished written report should be shared with undersigned members. Report should include: petition number (red color number at left upper side of the page)m, as well as, name of disputed name (according to number on each page of petition).

Petition includes 2039 signatures.


Jan Welenc

Jozef Guzik

Zofia Gola

Zdzislaw Kowalczyk

Zdzislaw Piatek

Pani Marzena Wierzbowska

09/10/2012

Przewodnicząca Rady Dyrektorów PSFCU

100 McGuinness Blvd
Brooklyn, NY 11222

Do wiadomości: Rada Dyrektorów, Komisja Nadzorcza, Członkowie PSFCU

My niżej podpisani członkowie Polsko Słowiańskiej Unii Kredytowej zaświadczamy, że w dniach od 15 lipca do 08 września 2012 zaangażowani byliśmy społecznie w akcję zbierania podpisów pod petycją do Przewodniczącej Rady Dyrektorów Polsko Słowiańskiej Unii Kredytowej o zwołanie Zebrania Specjalnego w celu usunięcia: z Rady Dyrektorów i członkostwa Krzysztofa Matyszczyka, z Rady Dyrektorów i członkostwa Elżbiety Baumgartner, z Rady Dyrektorów Leona Kokoszki i Kajetany Sawczuk oraz Edwarda Pierwoły z Rady Nadzorczej. Petycja złożona jest zgodnie z artykułem IV punkt 2 i 3 obowiązującego Statutu PSFCU.

Podpisy oraz dane osobowe członków Unii popierających zwołanie zebrania zostały zebrane przez członków podpisanych poniżej.  Członkowie podpisani poniżej poświadczają niniejszym, że podpisy te złożone zostały w ich obecności i zgodnie z zapewnieniem osób podpisujących są autentyczne. Członkowie podpisani poniżej rozumieją, że Compliance Department naszej Unii zobowiązany jest do weryfikacji autentyczności i zgodności z listą członków wszystkich podpisów złożonych na petycji. Po zakończeniu weryfikacji pisemny raport powinien być udostępniony niżej podpisanym członkom. Raport musi zawierać: numer strony petycji (czerwony numer w lewym górnym rogu strony) oraz numer kontrowersyjnego nazwiska (wg. numeracji na każdej stronie petycji)

Petycja zawiera 2030 podpisów *plus dziewięć podpisów razem 2039 podpisów Sg podpisów Sg*

Jan Welenc        ...........................................

Józef Guzik       ...........................................

Zofia Gola        ...........................................

Zdzisław Kowalczyk  ...........................................

000083

PETYCJA DO RADY DYREKTORÓW PSFCU

A PETITION TO THE P&SFCU BOARD OF DIRECTORS

Zgodnie z artykułem IV sekcja 2 i 3 statutu PSFCU, my niżej podpisani członkowie PSFCU żądamy zwołania Zebrania Specjalnego w celu:

In Accordance with Article IV Sections 2 and 3 of the P&SFCU Bylaws, we the undersigned members of the P&SFCU demand the calling of a Special Meeting in order to:

1) Poddać pod głosowanie wniosek o usunięcie z Rady Nadzorczej Edwarda Pierwoli za umyślne utrudnianie zwołania zebrania specjalnego, łamanie zasad zwoływania zebrań Rady Nadzorczej, narażenie PSFCU na straty finansowe poprzez niezgodne z zasadami i etyką postępowanie, złamanie statutu Artykuł XVI sekcja 4
Put to a vote a motion to remove Edward Pierwola from the Supervisory Committee for willful obstruction of the convening of the prior Special Meeting , violation of the principles of calling meetings of the Supervisory Committee, exposing the P&SFCU to financial losses by unethical actions, violation of Article XVI Section 4 of the Bylaws.

2) Poddać pod głosowanie wniosek o usunięcie z Rady Dyrektorów i członkostwa Elżbiety Baumgartner za podejmowanie decyzji niezgodnych ze statutem PSFCU, niegospodarność, wykorzystywanie pozycji społecznej do czerpania korzyści prywatnych, ignorowanie członków przy podejmowaniu ważnych decyzji, narażenie organizacji na olbrzymie straty finansowe poprzez błędne, niekonsultowane z członkami decyzje rozprzestrzenianie informacji niezgodnych z prawdą dotyczących inwestycji olbrzymich sum członkowskich pieniędzy
Put to a vote a motion to remove Elżbieta Baumgartner from the Board of Directors and membership in the P&SFCU for undertaking decisions that violate the PSFCU Bylaws , mismanagement, abuse of public office for personal gain, ignoring the membership when making important decisions, placing the organization at great financial risk through erroneous decisions without consulting the membership, distributing untruthful investment related information concerning the investment of $590 million dollars of membership funds.

3) Poddać pod głosowanie wniosek o usunięcie z Rady Dyrektorów Leona Kokoszkę za niedotrzymanie obietnic wyborczych i celowe wprowadzenie w błąd członków na niego głosujących. Leon Kokoszka po wyborze do Rady dyrektorów swoje postulaty, dzięki którym został wybrany nazwał w obecności członków „kiełbasą wyborczą" i stwierdził, że nie da się ich wprowadzić w życie.
Put to a vote a motion to remove Leon Kokoszka from the Board of Directors and membership in the P&SFCU for breaking his campaign promises and conscious misleading of the members who voted for him. After he was elected to the Board of Directors Leon Kokoszka, in the presence of various members, called the postulates, which got him elected, "campaign fodder" and stated that it would be impossible to realize them.

4) Poddać pod głosowanie wniosek o usunięcie z Rady Dyrektorów i członkostwa Krzysztofa Matyszczyka za podejmowanie decyzji niezgodnych ze statutem PSFCU, niegospodarność, wykorzystywanie pozycji społecznej do czerpania korzyści prywatnych, ignorowanie członków przy podejmowaniu ważnych decyzji, narażenie organizacji na olbrzymie straty finansowe poprzez błędne, niekonsultowane z członkami decyzje
Put to a vote a motion to remove Krzysztof Matyszczyk from the Board of Directors and membership in the P&SFCU for undertaking decisions that violate the PSFCU Bylaws , mismanagement, abuse of public office for personal gain, ignoring the membership when making important decisions, placing the organization at great financial risk through erroneous decisions without consulting the membership.

5) Poddać pod głosowanie wniosek o usunięcie z Rady Dyrektorów Kajetany Sawczuk za podejmowanie decyzji niezgodnych ze statutem PSFCU, niegospodarność, ignorowanie członków przy podejmowaniu ważnych decyzji, narażenie organizacji na olbrzymie straty finansowe poprzez błędne, niekonsultowane z członkami decyzje, notoryczne nie uczestniczenie w zebraniach Rady Dyrektorów (Artykuł VI sekcja 8 statutu PSFCU)
Put to a vote a motion to remove Kajetana Sawczuk from the Board of Directors and membership in the P&SFCU for undertaking decisions that violate the PSFCU Bylaws , mismanagement, abuse of public office for personal gain, ignoring the membership when making important decisions, placing the organization at great financial risk through erroneous decisions without consulting the membership, notorious absences from Board of Directors meetings (Article VI Section 8 of the P&SFCU Bylaws).

6) Poddać pod głosowanie wniosek o wybór spośród uczestniczących w zebraniu członków PSFUK, dyrektorów tymczasowych na czas do następnych wyborów w zastępstwie dyrektorów usuniętych w czasie zebrania
Put to a vote a motion to elect from among the P&SFCU members attending the Special Meeting temporary directors to the time of the next elections to fill the vacancies caused by the removal of directors at the Special Meeting.

Podpisując się poniżej stwierdzam, że w pełni rozumiem i całkowicie zgadzam się z tekstem Petycji

By signing below I affirm that I fully understand and completely agree with the text of the Petition.

| | IMIĘ I NAZWISKO/ NAME LAST NAME | PODPIS/ SIGNATURE | ADRES/ ADDRESS | NUMER TELEFONU/ PHONE |
|---|---|---|---|---|
| 1 | Elżbieta Nowobilski | Nowobilski | 145 DIVISION AVE 07026 GARFIELD | 201-341-1577 |
| 2 | Agnieszka Nowobilska | Nowobilska | 145 DIVISION AVE GARFIELD 07026 | 908-890-8591 |
| 3 | ALEKSANDER POBIARZYN | A. Pobiarzyn | 150 DIVISION AVE GARFIELD | (201) 1033223 |
| 4 | MARIOLA POBIARZYN | M. Pobiarzyn | 44 CENTER GROVE RD APT T-19 RANDOLPH | 973-366-2017 |



Print this

# NOTICE CONCERNING THE PETITION TO CALL A SPECIAL MEETING OF PSFCU MEMBERS

October 9, 2012

On September 11, 2012, PSFCU received a petition from members demanding a special meeting.  Although the petition contained valid signatures, a sufficient number to call a Special Meeting, after a legal review, it was determined to be invalid because of the following reasons:

1.  Paragraph 6 is invalid because it seeks an unauthorized replacement process and an unauthorized special election, in violati PSFCU bylaws.
2.  Paragraphs 1-5 are invalid because the invalid Paragraph 6 automatically rules out all the remaining paragraphs. There are serious discrepancies between the English and Polish versions of Paragraphs 1-5.
3.  Intent of signers is unclear because both the English and Polish versions were presented to the members simultaneously, m it impossible to ascertain which version they read and agreed to by signing.
4.  Entire petition is invalid because under the law, if one provision of the document is invalid, it invalidates the entire documen

As a result of the above, the petition has been determined to be invalid. In accordance with the law and the PSFCU bylaws, the Chairwoman of the PSFCU Board of Directors cannot call a special meeting of members based on an invalid petition.

**Marzena Wierzbowska**
Chairwoman of the
PSFCU Board of Directors

**Małgorzata Gradzki**
Secretary of the
PSFCU Board of Directors

09/10/2012 / 01/08/2013

Ms. Marzena Wierzbówska

100 McGuiness Blvd.
Brooklyn, NY 11222

For the information of Board of Directors,  Supervisory Committee, PSFCU Members

We the undersigned members of Polish & Slavic Federal Credit Union herewith testify that between July the 15th 2012 and September the 08th 2012 we were involved in civic activity to collect signatures for the Petition to be submitted to the PSFCU Board of Directors President. This Petition  concerned convening of special meeting of PSFCU members to remove the following Directors from the Board of Directors: Krzysztof Matyszczyk, Elzbieta Baumgartner, Leon Kokoszka, Kajetana Sawczuk, as well as, Edward Pierwola from Supervisory Committee. Furthermore, petition requested depriving PSFCU membership of the following Directors:  Krzysztof Matyszczyk and Elzbieta Baumgartner.  Petition was submitted according to Article IV, Point 2 & 3 of binding PSFCU Statute.

Signatures and personal data concerning PSFCU members, who supported convening of special meeting, were collected by undersigned members.  Undersigned members certify herewith that all signatures, supporting petition, were collected in their presence and all signatories confirmed their authenticity. Undersigned members understand that Compliance Department of PSFCU is obliged to verify authenticity of all signatures supporting petition, as well as, membership of all signatories. When verification is finished written  report should be shared with undersigned members.  Report should include: petition number (red color number at left upper side of the page)m, as well as, name of disputed name (according to number on each page of petition).

Petition includes ~~3029~~ 2074 *Jan Welenc* signatures.


Jan Welenc

Jozef Guzik

Zofia Gola

Zdzislaw Kowalczyk

Zdzislaw Piatek

Pani Marzena Wierzbowska

01/08/2013

Przewodnicząca Rady Dyrektorów PSFCU

100 McGuinness Blvd
Brooklyn, NY 11222

Do wiadomości: Rada Dyrektorów, Komisja Nadzorcza, Członkowie PSFCU

My niżej podpisani członkowie Polsko Słowiańskiej Unii Kredytowej zaświadczamy, że w dniach od 1 listopada do 20 grudnia 2012 zaangażowani byliśmy społecznie w akcję zbierania podpisów pod petycją do Rady Dyrektorów Polsko Słowiańskiej Unii Kredytowej o zwołanie Zebrania Specjalnego.

Petycja złożona jest zgodnie z artykułem IV punkt 2 i 3 obowiązującego Statutu PSFCU.

Podpisy oraz dane osobowe członków Unii popierających zwołanie zebrania zostały zebrane przez członków podpisanych poniżej.  Członkowie podpisani poniżej poświadczają niniejszym, że podpisy te złożone zostały w ich obecności i zgodnie z zapewnieniem osób podpisujących są autentyczne. Członkowie podpisani poniżej rozumieją, że odpowiedni departament naszej Unii zobowiązany jest do weryfikacji autentyczności i zgodności z listą członków wszystkich podpisów złożonych na petycji. Po zakończeniu weryfikacji pisemny raport musi być udostępniony niżej podpisanym członkom. Raport musi zawierać numer strony petycji (czerwony numer w lewym górnym rogu strony) oraz numer kontrowersyjnego nazwiska (wg. numeracji na każdej stronie petycji)

Petycja zawiera ~~1994~~ *2,074 llo undel* podpisów *2 opła § al 9*

Józef Guzik          *Józef Guzik*

Zofia Gola           *Zofia Gola*

Zdzisław Kowalczuk   *Kowalczuk*

John Czop            *John D. Czop*

Kontakt: Marek Wysocki  (917) 399-3465

Email: mwysocki@verizon.net

*Sworn to before me on January 08, 2013*

*received 2,074 pcs.*

*01/09/2013*

ANNA M. LAROCCA
Notary Public State of New York
No. 01LA6986943
Qualified in Queens County
Commission Expires

POLISH & SLAVIC
FEDERAL CREDIT UNION
100 McGUINNESS BLVD
BROOKLYN NY 11222

# POLISH &SLAVIC

FEDERAL CREDIT UNION

More than a bank.
It's our Credit Union.

## NOTICE CONCERNING THE PETITION TO CALL A SPECIAL MEETING OF PSFCU MEMBE

February 1, 2013

On January 9, 2013, PSFCU received a petition from members demanding a special meeting.

The petition included requests naming the Chairperson and the First Vice Chairperson of the PSFCU Board of Directors, determined that Article XVI, Section 4 of the PSFCU Bylaws (entitled "Conflicts of interest prohibited") applies and did n the determination required of the Chair under Article IV, Section 3 of the PSFCU Bylaws (entitled "Special meetings"). Th duty was undertaken by the Second Vice Chairperson as the ranking vice chair under Article VII, Section 5 of the PSFCU (entitled "Vice chair").

After a legal review, the petition was determined to be invalid because of the following reason:
The petition is invalid because it fails to specify a reason or reasons for the requested action. Under the circumstances, examination of the petition for any additional defects was discontinued.
As a result of the above, the petition has been determined to be invalid. In accordance with the law and the PSFCU byla Vice Chairperson of the PSFCU Board of Directors, as ranking vice chair and exercising all the powers, authority, and dut cannot call a special meeting of members based on an invalid petition.

**Iwona Podolak**
Second Vice Chairperson
of the PSFCU Board of Directors

**Małgorzata Gradzki**
Secretary of the
PSFCU Board of Directors

We, the undersigned Members of the Polish and Slavic Federal Credit Union in regards to the decision in the court case Index No. 12933/13 in which judge Vawny Toussaint ordered calling the Special Meeting in 60 days demand from the Board of Directors organizing the Special Meeting in the venue of the Polish National Home in Greenpoint Brooklyn. The Banquet Hole the National Home is sufficiently big to accommodate interested members, as showed the Meeting held there in 2012, also it has all requirements to hold such a Meeting. National Home is located in the center of Polish Community, this will warrant least of unnecessary burden with reaching the place by all interested in participation.

My niżej podpisani Członkowie Polsko Słowiańskiej Federalnej Unii Kredytowej, w związku z decyzją w sprawie sądowej o Indeksie 12933/13, w której sędzina Vawny Toussaint nakazała zwołanie Zebrania Specjalnego w przeciągu 60 dni żądamy od Rady Dyrektorów zorganizowania Zebrania Specjalnego w sali Domu Narodowego na Greenpoint Brooklyn. Sala Bankietowa w Domu Narodowym jest wystarczająco duże, aby pomieścić zainteresowanych członków, jak pokazało to Zebranie z 2012 roku oraz posiada wszystkie wymogi do przeprowadzenia takiego Zebrania. Dom Narodowy zlokalizowany jest w centrum Polskiej Społeczności, co zapewni jak najmniejsze utrudnienia w dojeździe wszystkim zainteresowanym we wzięciu udziału.

| | Name and Last Name<br>Imię i Nazwisko | Address<br>Adres | Signature<br>Podpis |
|---|---|---|---|
| 1 | HENRYK KWIATKOWSKI | 59-05 70TH AVE RIDGEWOOD NY 11385 | |
| 2 | JAN WELENC | 349 OCEAN PKWY #6C Brooklyn NY 11218 | Jan Welenc |
| 3 | Ireneusz Roszkowski | Bklyn NY 11222 729 Humboldt St | |
| 4 | Jan Siobronski | 188 NASSAU AVE Brooklyn NY 11222 | |
| 5 | Andrzej Cieboryk | 1946 19 TH LANE BROOKLYN NY 11214 | |
| 6 | Tomasz Szyydel | 8304 7 Ave Brooklyn NY 11218 | Tomasz Szyyd |
| 7 | Halina Lechowior | 2145 80 str. Brooklyn NY 11214 | Lechy |
| 8 | IVAN Koudla | Brooklyn NY 11223 | |
| 9 | SZTABINSKI WLODZIMIERZ | 3629 CANAL AVE BKLYN NY 11224 | Wsldla |
| 10 | Piotr Bujicl | 1271 49 str. Brooklyn 11219 | Bujicl |

We, the undersigned Members of the Polish and Slavic Federal Credit Union demand from the Board of Directors to recover all the financial costs, including (but not limited to) costs of the legal representation, pertaining to the court case Index No. 12933/13 in which judge Vawny Toussaint  ordered calling the Special Meeting in 60 days. The Board members who are responsible for breaking the PSFCU bylaws by denying calling Special Meeting in spite of more than 2000 member's signatures under the petition, must be hold personally responsible and cover the costs with their own private monetary funds.

My niżej podpisani Członkowie Polsko Słowiańskiej Federalnej Unii Kredytowej żądamy od Rady Dyrektorów odzyskania wszystkich finansowych kosztów łącznie, (ale nie tylko) z kosztami prawnymi dotyczących sprawy sądowej o Indeksie 12933/13, w której sędzina Vawny Toussaint nakazała zwołanie Zebrania Specjalnego w przeciągu 60 dni. Członkowie Rada, którzy są odpowiedzialni za złamanie statutu PSFCU poprzez odmówienie zwołania Zebrania Specjalnego pomimo ponad 2000 członkowskich podpisów pod petycją, muszą być personalnie odpowiedzialni i zwrócić koszty ze swoich prywatnych funduszy.

| | Name and Last Name<br>Imię i Nazwisko | Address<br>Adres | Signature<br>Podpis |
|---|---|---|---|
| 1 | Jerzy Pałuszny | 87 07 4AVE Brooklyn NY 11209 Apt. 2F | |
| 2 | Efme Ronella | 65 Driggs Ave 425 Brooklyn, NY 11222 | |
| 3 | Kecli Plekig ali | Kosih st Brulla | |
| 4 | Andrzej Domczak | 176 Russell st r Brooklyn NY 11222 | |
| 5 | Jolanta Stampula | 6084 Bleecker st Ridgewood NY | |
| 6 | Baldowiarski Henryk | Morgan stu Apt.5 R | |
| 7 | Andrzej Dul | G3 HAUSMAN ST Brooklyn | |
| 8 | Józef Bednar | 56 Russell #3 Brooklyn NY 11222 | Józef Bednar |
| 9 | Krzysztof Kieler | 281 Nassau Ave Brooklyn #1 NY 11222 | |
| 10 | MARGARET KUREK | 094-01 64RD # 20 REGO PARK NY 11374 | |





POLISH
&SLAVIC
FEDERAL CREDIT UNION

## BYLAWS

## Charter No. 22592

(d) The share account of a deceased member (other than one held in joint tenancy with another member) may be continued until the close of the dividend period in which the administration of the deceased's estate is completed.

(e) The board will have the right, at any time, to impose a fee for excessive share withdrawals from regular share accounts. The number of withdrawals not subject to a fee and the amount of the fee will be established by board resolution and will be subject to regulations applicable to the advertising and disclosure of terms and conditions on member accounts.

Section 6. Trusts. Shares may be issued in a revocable or irrevocable trust, subject to the following:

When shares are issued in a revocable trust, the settlor must be a member of this credit union in his or her own right. When shares are issued in an irrevocable trust, either the settlor or the beneficiary must be a member of this credit union. The name of the beneficiary must be stated in both a revocable and irrevocable trust. For purposes of this section, shares issued pursuant to a pension plan authorized by the rules and regulations will be treated as an irrevocable trust unless otherwise indicated in the rules and regulations.

Section 7. Joint accounts and membership requirements. Owners of a joint account may both be members of the credit union without opening separate accounts. For joint membership, both owners are required to fulfill all of the membership requirements including each member purchasing and maintaining at least one share in the account.

## Article IV. Meetings of Members

Section 1. Annual meeting. The annual meeting of the members must be held no later than December 31st, in the county in which any office of the credit union is located or within a radius of 100 miles of an office, at the time and place as the board determines and announces in the notice of the annual meeting.

Section 2. Notice of meetings required. At least 30 but no more than 75 days before the date of any annual meeting or at least 7 days before the date of any special meeting of the members, the secretary must give written notice to each member. Notice may be by written notice delivered in person or by mail to the member's address, or, for members who have opted to receive statements and notices electronically, by electronic mail. Notice of the annual meeting may be given by posting the notice in a conspicuous place in the office of this credit union where it may be read by the members, at least 30 days before the meeting, if the annual meeting is to be held



# BYLAWS
## Charter No. 22592

during the same month as that of the previous annual meeting and if this credit union maintains an office that is readily accessible to members where regular business hours are maintained. Any meeting of the members, whether annual or special, may be held without prior notice, at any place or time, if all the members entitled to vote, who are not present at the meeting, waive notice in writing, before, during, or after the meeting.

Notice of any special meeting must state the purpose for which it is to be held, and no business other than that related to this purpose may be transacted at the meeting.

Section 3. Special meetings. Special meetings of the members may be called by the chair or the board of directors upon a majority vote, or by the supervisory committee as provided in these bylaws. The chair must call a special meeting, meaning the meeting must be held, within 30 days of the receipt of a written request of 25 members or 5% of the members as of the date of the request, whichever number is larger. However, a request of no more than 750 members may be required to call a special meeting.

The notice of a special meeting must be given as provided in Section 2 of this article. Special meetings may be held at any location permitted for the annual meeting.

Section 4. Items of business for annual meeting and rules of order for annual and special meetings. The suggested order of business at annual meetings of members is--

(a) Ascertainment that a quorum is present.

(b) Reading and approval or correction of the minutes of the last meeting.

(c) Report of directors, if there is one. For credit unions participating in the Community Development Revolving Loan Program, the directors must report on the credit union's progress on providing needed community services, if required by NCUA Regulations.

(d) Report of the financial officer or the chief management official.

(e) Report of the credit committee, if there is one.

(f) Report of the supervisory committee, as required by Section 115 of the Act.

(g) Unfinished business.

**Polish & Slavic Federal Credit Union**
**Minutes of the June 24, 2015 Open Session of the Regular Meeting of the Board of Directors**
**100 McGuinness Boulevard, Brooklyn, NY**
Draft 07 01 15

## CONSENT AGENDA

3.    Motion to approve the Financial Report for May 31, 2015, the new members for the month of May 2015, and the Loan Charge-off Report for May 2015 by Ms. Wierzbowska was seconded by Ms. Gradzki and passed unanimously.

## MONTHLY REPORTS

**Supervisory Committee Report**
This report was presented by Mr. Sosnowski.

**CEO Report**
This report was presented by Mr. Chmielewski.

Mr. Chmielewski informed Board members about a BSA violation at the Staten Island branch.

*Ms. Gradzki left the meeting at 8:04PM. Ms. Wierzbowska left the meeting at 8:10PM and rejoined at 8:12PM.*

**COO Report**
This report was presented by Ms. Poslednik.

*Ms. Baumgartner left the meeting at 8:13PM. Mr. Kwiatkowski left the meeting at 8:14PM and rejoined at 8:16PM.*

**Legal Update**
This report was presented by Ms. Poslednik.

4.    Motion to call a Special Meeting of Members in 60 days in connection with the Welenc and Roszkowski case was made by Mr. Staszewski but it was not seconded.

**CMRO Report**
This report was presented by Mr. Rogalski.

*Ms. Podolak left the meeting at 8:20PM and rejoined at 8:24PM. Ms. Baumgartner and Ms. Gradzki rejoined the meeting at 8:24PM.*

**CLO Report**
This report was presented by Mr. Arnold.

**Action Item Report**
There was no update on this report.

## BUSINESS ITEMS

**Polish & Slavic Federal Credit Union**
**Minutes of the June 24, 2015 Open Session of the Regular Meeting of the Board of Directors**
**100 McGuinness Boulevard, Brooklyn, NY**
Draft 07 01 15

## CONSENT AGENDA

3.  Motion to approve the Financial Report for May 31, 2015, the new members for the month of May 2015, and the Loan Charge-off Report for May 2015 by Ms. Wierzbowska was seconded by Ms. Gradzki and passed unanimously.

## MONTHLY REPORTS

**Supervisory Committee Report**
This report was presented by Mr. Sosnowski.

**CEO Report**
This report was presented by Mr. Chmielewski.

Mr. Chmielewski informed Board members about a BSA violation at the Staten Island branch.

*Ms. Gradzki left the meeting at 8:04PM. Ms. Wierzbowska left the meeting at 8:10PM and rejoined at 8:12PM.*

**COO Report**
This report was presented by Ms. Poslednik.

*Ms. Baumgartner left the meeting at 8:13PM. Mr. Kwiatkowski left the meeting at 8:14PM and rejoined at 8:16PM.*

**Legal Update**
This report was presented by Ms. Poslednik.

4.  Motion to call a Special Meeting of Members in 60 days in connection with the Welenc and Roszkowski case was made by Mr. Staszewski but it was not seconded.

**CMRO Report**
This report was presented by Mr. Rogalski.

*Ms. Podolak left the meeting at 8:20PM and rejoined at 8:24PM. Ms. Baumgartner and Ms. Gradzki rejoined the meeting at 8:24PM.*

**CLO Report**
This report was presented by Mr. Arnold.

**Action Item Report**
There was no update on this report.

## BUSINESS ITEMS

Jan Welenc
349 Ocean Parkway, #6C
Brooklyn, New York  11218

and

Ireneusz Roszkowski Jr. as Executor
of the Estate of Ireneusz Roszkowski
729 Humboldt Street, #1
Brooklyn, New York  11222

Hon. Wavny Toussaint
Supreme Court, Kings County
Civil Term Part 70
360 Adams Street, Room 366
Brooklyn, NY  11201

RE:  Index No. 12933/13

Your Honor,

For over three years we are representing the members of the Polish & Slavic Federal Credit Union
(PSFCU) in Court and we are respectfully asking the Court to enforce its order of March 2, 2015 and
amended order of June 12, 2015 regarding the calling of a Special Meeting of the members of the PSFCU
in order to remove questionable officers.

After our Court Hearing of January 13, 2016 we are surprised by the miscommunication regarding the
issues in our case.  While it is true that there have been three annual meetings since the beginning of this
action, this fact is irrelevant to our case as we are pressing suit to enforce PSFCU bylaws, pursuant to the
collected 2,000 members' signatures, calling for a Special Meeting of PSFCU members, rather than an
Annual Meeting.  For this reason our action has not become moot.  We are, as we have from the
beginning of this action, seeking a Special Meeting for the purpose of removing PSFCU officers per
Article IV, section 3 of the bylaws.  As per Article IV, upon the gathering of 750 member signatures it is
our right, as PSFCU members to request a special meeting.  In March of 2012, by order of Judge Herrera,
a Special Meeting took place in Greenpoint, Brooklyn, where four officers were removed.  They were
Tomasz Bortnik, Krystyna Myssura, Wojciech Mleczko and Irena Marchaj.  Ironically, it was William C.
Cagney who represented the PSFCU members in that action in which Judge Herrera of the Kings County
Supreme Court ordered the Special Meeting which ultimately led to the removal of the aforementioned
officers.  Simply put, in this current action, we are seeking exactly the same relief, i.e. to exercise our
right to call a Special Meeting of PSFCU members for t he purpose of removing PSFCU officers.

To be clear, the business conducted at Annual Meetings is to announce the results of the yearly officer
elections and discuss the yearly financial matters of the PSFCU.  However, we are seeking to exercise our
right per Article IV of the bylaws to call a Special Meeting with the purpose of removing PSFCU officers.
Specifically, we would also like to point out that the highest concentration of PSFCU members, PSFCU
branches and in fact the PSFCU headquarters and offices is in Greenpoint, NY, where the first Special
Meeting of March 2012 took place.  Likewise, it would be in the PSFCU's members best interest in order

to maximize attendance and the exercise of our democratic right to have PSFCU members' voices heard that the Second Special Meeting also take place in Brooklyn, NY.  There are multiple venues in Greenpoint where such a meeting can be held.

Lastly, we would like to direct your attention to the Affirmation of William C. Cagney of December 10, 2015 which only serves the corrupted interests of certain PSFCU officers, to delay and avoid the special meeting, and quickens the demise and insolvency of our organization.

Attached to this letter are documents presented in Court on July 13, 2015 and November 10, 2015.  Also attached are application requesting the Special Meeting, PSFCU bylaws confirmed by the NCUA, NCUS statutes regarding awards of attorney's fees and Court costs for members, a statement from Marzena Wojczulanis, who at the time was a PSFCU officer and PSFCU's member's Affidavit of Opposition.

We are also asking the President of PSFCU to familiarize himself with our request, it simply cannot last forever, our request for a special meeting already lasts *three years*!  **Really?**

Respectfully,

Jan Welenc

Ireneusz Roszkowski Jr.

cc:

Hon. Lawrence Knipel
Administrative Judge for Civil Matters
2nd. Judicial District
360 Adams Street
Brooklyn, NY  11201

Print                                                                      Close

# FW: Letter from the members of PSFCU

**From:** **Mark** (mwysocki@verizon.net)
**Sent:** Thu 7/18/13 6:58 PM
**To:** jansid188@hotmail.com

**From:** Mark [mailto:mwysocki@verizon.net]
**Sent:** Thursday, September 27, 2012 4:47 PM
**To:** 'Region1@ncua.gov'
**Subject:** Letter from the members of PSFCU

National Credit Union Administration

Region 1 Albany

9 Washington Square

Washington Avenue Extension

Albany, NY 12205

September 27, 2012

Mark A. Treichel

Regional Director of the Region 1 – Albany office

Dear Mr. Treichel,

We are a group of members of the Polish and Slavic Federal Credit Union (PSFCU) from Brooklyn, New York. We would like to inform you and ask for your assistance in a very important matter. Not long ago our Credit Union held a Special Meeting which was called after more than two years of court battles among (PSFCU) members and the Board of Directors.

The final decision of the court was clear: Because PSFCU By-Laws permit members to hold a Special Meeting, the Chair of the PSFCU's Board of Directors must convene a Special Meeting after having received a PSFCU members' petition calling for a Special Meeting.

Mrs. Marzena Wierzbowska, Chair of the PSFCU's Board of Directors received a petition from PSFCU members requesting a Special Meeting in February 2012. Next, the Chair acted according to the Bylaws, and she promptly convened the Special Meeting, which took place in Brooklyn, NY at the Polish National Home on Sunday, March 25, 2012. At this Special Meeting PSFCU members voted by a large plurality to remove four members of the Board of Directors, who for many years refused to communicate with the members and who were responsible for many unpopular decisions. The support for the March 25, 2012 Special Meeting from certain Board Members was anything but disinterested, that is they wanted to eliminate four of their colleagues to satisfy their selfish ambitions, and not for the good of the PSFCU.

For many years our Credit Union was torn between two competing groups who were fighting with each other. This had calamitous results for our Credit Union which included a period of Conservatorship by the NCUA. The members of Mr. Matyszczyk's group supported the Special Meeting of March 25, 2012 for the purpose of eliminating their rivals from Mr. Bortnik's group. The PSFCU membership saw through this ploy only after the March 25, 2012 Special Meeting, and therefore consider Mr. Matyszczyk's group, whose members currently sit on the Board, no better than those, who were removed at the Special Meeting.

That is why the Chair, Marzena Wierzbowska, and a member of the Supervisory Committee, Mr. Leon Fuks, publicly suggested that members who wish to remove directors in question could call a Special Meeting for that purpose. We PSFCU members for good corporate governance then decided to collect signatures for the new petition to let the members decide on whether, or not, to remove Directors included in the petition. In order to avoid calling a Special Meeting, Mrs. Wierzbowska organized in June 2012 an informational meeting open to all PSFCU members so the controversial issues could be resolved, however, the Directors in question did not attend this meeting (only three members of the Board were present: Mrs. Wierzbowska, Mrs. Wojczulanis and Mr. Fuks who serves on the Supervisory Committee). The failure of the controversial Directors to attend the informational meeting in June made the Special Meeting unavoidable.

Over the summer of 2012, PSFCU members also have called two separate meetings, one at the Cracovia Hall, Wallington, NJ that was completely ignored by the Board of Directors, and one in the Polish National Home in Greenpoint, NY, which only Mrs. Wojczulanis attended. We PSFCU members want to resolve contentious issues by discussing them with the Board of Directors, and especially with the Directors included on the petition, however, they did not attend the informational meetings which PSFCU members organized.

Instead of meeting with the members to resolve controversial issues in a spirit of democratic corporate governance, "our" Board of Directors is trying to change the PSFCU's By-Laws in order to increase the number of signatures required for the petition to convene a Special Meeting, undoubtedly to prevent their well merited ouster. The group of Directors in question blatantly overlooks the fact that they won election to the Board of Directors by no more than 2000 votes (and most of them by only 1500 or less). These Directors must not be permitted to tamper with the By-Laws to increase the number of signatures required on the petition to call the Special Meeting. When the members petition the

Board to change the By-Laws to limit the period of service on the Board of Directors to two consecutive terms we were informed that the NCUA did not permit any changes to the By-Laws, but not when the changes are in favor for corrupted Directors?{Should the last sentence read: We members for democratic corporate governance were dismayed to learn that the NCUA does not seem to be following a consistent and evenhanded policy in the matter of modifying the PSFCU's By-Laws. Why is it acceptable for the PSFCU's Board to propose modifying the By-Laws to require more signatures to call a Special Meeting; while it is unacceptable for the members to propose that the By-Laws limit service on the Board to two consecutive three years' terms?

Members of the PSFCU also want to eliminate the Nominating Committee whose members usually select their cronies when all the other candidates have to collect signatures on a petition in order to get on the ballot. The PSFCU membership is fed up with their tactics, and especially by their recent effort to modify the By-Laws in order to frustrate the prompt convening of the Special Meeting.

PSFCU members know that the Board members are trying to discredit the Polish translation of the petition. PSFCU members want to emphasize that we live in the United States and the language here is English not Polish. The Polish translation was provided for the convenience of those members who find reading in English tedious, and the Polish language version has no legal value in this matter. Those PSFCU members who have difficulty understanding English (who form but a small group of mostly elderly people) were provided with a translation printed with a bigger font.

PSFCU members hope that the Board is not trying to smear the Polish community as too uneducated to comprehend the language of the country in which they now are living, especially in view of several law suits that have involved the PSFCU, some of which were based on racial and ethnic discrimination grounds. Most of us PSFCU members came from Poland to escape the oppressive Communist regime. We came to America to live in a country with freedom and democratic laws. We embraced American culture and opportunities offered by democratic procedures and we cannot permit the methods of the Communist "apparatchik" to dominate our PSFCU. We need the NCUA to assist us with bringing democratic corporate governance and honesty back to our PSFCU.

Mr. Wysocki that the Board is contesting the petition on the grounds that it calls for the election during the meeting. We would like to inform you that we want the Board to appoint and elect new Directors (in the event that The Special Meeting votes to remove any of the Directors in question) in the open public forum during the Special Meeting and not behind the closed door. We do not want to remove from the Board one group of unpopular Directors and then let the Board appoint in secrecy the people who do not have broad membership trust.

We would like to schedule a meeting with you, or with some other representative of the NCUA who is responsible for compliance with NCUA regulations and for preventing a board of directors from violating their credit union's By-Laws.


Sincerely

Zofia Gola, Joe Guzik, John Czop, Mark Wysocki, Zdzislaw Kowalczuk, Roman Ploszaj,

*Joe Guzik*

*Zdzislaw Kowalczuk*

*Jan Polenc*

*Mark Wysocki*

*Zofia Gola*

*Roman Ploszaj*

CC. National Credit Union Administration
1775 Duke Street
ALEXANDRIA 22314-3428
Mr. FRANK KRAFSSMAN



William C. Cagney
732.448.2535
wcagney@windelsmarx.com

156 West 56th Street | New York, NY 10019
T. 212.237.1000 | F. 212.262.1215

October 29, 2013

## DEMAND NOTICE WITH CEASE AND DESIST DIRECTION

### TO

**Mr. Jan Welenc**
349 Ocean Parkway, #6C
Brooklyn, New York 11218

Re:   Polish & Slavic Federal Credit Union

Dear Sir:

We write on behalf of Polish & Slavic Federal Credit Union ("PSFCU"), the PSFCU Board of Directors, and PSFCU Directors, including those persons formerly holding such positions (all of the aforesaid hereinafter collectively referred to as "PSFCU Claimants").

Investigation has demonstrated ongoing and deliberate conduct on your part, personal behavior intentionally and willfully designed and executed by yourself, in bad faith and with ill will, including publication of false statements and activities of harassment, intimidation, and trespass, aimed to harm and damage PSFCU Claimants.

Your false statements and your misconduct evidence claims and causes of action under the law for defamation (including libel and slander, libel and slander per se, libel and slander per quod); commercial disparagement, and injurious falsehood, as well as trespass, intentional interference with prospective economic advantage, and malicious interference with prospective economic advantage, all warranting PSFCU Claimants' legal action for temporary, preliminary, and permanent injunctive relief, compensatory and consequential monetary damages, punitive damages, and legal fees and costs.

Accordingly, my Client has determined to take decisive action on a forthwith basis.

ACCORDINGLY, this is your DEMAND NOTICE, that you immediately withhold all such unlawful activities and take all necessary and appropriate steps to comply with your responsibilities under the law, in order to avoid a lawsuit for injunctive relief and monetary damages.

{40478987:1}

Windex Marx lane & Mittendorf LLP
William C. Cagney
156 West 56th Street
New York , NY  10019

November 15, 2013

Dear Mr. Cagney

*Index No 12933/13*

As you are probably aware, representing the members of the Board of Polish and Slavic Federal Credit Union all of them are duly elected by the members of our non for profit organization in the process of democratic election.  They are also responsible for hiring CEO of the organization and this position is strictly politicized by the Board, so do the actions of the CEO. I hope that you are also aware of the well-established system which for last two hundred years is cherished and protected with loss of life by the American society. This system is called – Democracy.  The question is – How dare you intimidate me with your letter filled up with the "lawyer's jargon" and by doing so trying to prevent me from exercising my citizen rights? The so called by you "publication of false statements" and "activities of harassment" are called in the free American society - protecting of the public interest and demanding answers from elected officials for their premeditated actions causing loss of millions of dollars of public funds.  By protecting these people without proper investigation from you is not only allowing this practice to happen, but also is become accomplice in their wrong doing. The people like you, practicing the law are duly responsible for the fabric of society and the trust of regular citizens in the fundamental legal system of our country. Your unethical attack on me is contradictory to the behavior of the person under oath of the BAR and you should be immediately removed from the practicing of the law before your actions will damage not only law obeying citizens like myself, but also destroy the democratic system of our country. I will place official complaint and demand investigation of your illegal actions from the BAR Association. Your baseless accusations and scare tactics against me, while I'm involved in the process of legal litigation with the PSFCU Board of Directors are only comparable to the tactics used by regime in communist Poland and should be stop immediately by authorities of United States.

Jan Welenc

*Jan Welenc*
*349 OCEAN PKNY #6C*
*BROOKLYN NY 11218*
CC    *Phone: 347-336-9538*

*Jan Welenc*

Supreme Court of New York
Congress of United States of America
BAR Association
Attorney General
New York Times
New York Post
New York Daily News

12/23/13


BAR Association
42 West 44th Street
New York, NY 10036

President Carey Dunne

Dear Sir,

I undersigned Jan Welenc would like to file complaint at BAR Association against lawyer Mr. Mark Cagney who should lose his attorney license, as he has broken basic principles of law ethics.

My substantiation below:

I have been a member of Polish & Slavic Federal Credit Union for 25 years. Recently, a group of PSFCU members (including me) asked PSFCU Board of Directors to call special meeting of members, according to law and Credit Union Statute. We have right to start such action as owners of our financial institution. Unfortunately, our petition was ignored by PSFCU Board of Directors who are in fact volunteers. So, we were compelled to file lawsuit at court to order calling special meeting of PSFCU members.

PSFCU Board of Directors, using our money, hired lawyers to protect them. Their lawyer Mr. Mark Cagney started threatening me in retaliation for my action to disclose truth about mismanagement during special meeting we proposed. I would like to inform you that in March 2012 Court ordered calling such meeting. During that special meeting a few corrupted directors were removed from PSFCU Board of Directors.

Please, find attached documents, concerning calling of special meeting of PSFCU members, as well as, letter from Mr. Mark Cagney containing threats.


Yours faithfully,

Jan Welenc

Jan Welenc
349 Ocean Pkwy,
Brooklyn, NY 11218

04/25/15

**Office of NJ Governor**
*Chris Christie*
P.O. Box 001
Trenton, N.J. 08625

<u>**COMPLAINT**</u>

Dear Sir,

Hereby, I would like to file a complaint, concerning Garfield Police. On March 21, 2015 I was collecting signatures of Polish & Slavic Federal Credit Union members, who supported candidacy of Marek Wysocki for PSFCU Board of Directors in the coming election, in front of local branch of PSFCU, located at 75 River Drive in Garfield, NJ. Unfortunately, police officer Eddie Figueroa (badge # 178) brutally interrupted my activity, demanding me to leave above mentioned location. He explained me that his decision was based on complaint of a PSFCU employee, who stated that I do not have permission to collect signatures, and my action is illegal.

So, I would like to ask police authorities since when in the USA anybody needs a permit to collect signatures and to hand out leaflets, supporting candidate to the Board of Directors of non-profit organization. Police officer Eddie Figueroa was warning me that if I not leave this location in front of PSFCU building, he is going to punish me by issuing a ticket or even with arrest.

As police officer Eddie Figueroa violated my rights as a citizen of the United States, arising from the Constitution, I asked Garfield Police Chief Kevin Amos to disclose name of the PSFCU employee who lodged the complaint to remove me from where I legally collected signatures. Unfortunately, Chief of Garfield Police did not disclose his/her name, so I would like to ask You, Sir Governor, to intervene in this intriguing affair.

Please, find attached the following materials, concerning above incident:

- My picture made during collecting of signatures in front of PSFCU building,
- Court judgment ordering corrupt PSFCU Board of Directors to convene a special meeting of members. (PSFCU employee acted out of revenge to remove us.)

Yours faithfully,

Jan Welenc

349 Ocean Pkwy, Apt. # 6C
Brooklyn, NY 11218



CHRIS CHRISTIE
*Governor*

KIM GUADAGNO
*Lieutenant Governor*

*State of New Jersey*
OFFICE OF THE ATTORNEY GENERAL
DEPARTMENT OF LAW AND PUBLIC SAFETY
DIVISION OF CRIMINAL JUSTICE
PO BOX 085
TRENTON, NJ 08625-0085
TELEPHONE:  (609) 984-6500

JOHN J. HOFFMAN
*Acting Attorney General*

ELIE HONIG
*Director*

June 16, 2015

Jan Welenc
349 Ocean Pkwy. Apt. 6C
Brooklyn, NY 11218

Re:   #201504256

Dear Ms. Welenc:

This letter will acknowledge receipt of your correspondence to Attorney General John J. Hoffman.

After review we have determined that the Bergen County Prosecutor's Office, Bergen County Justice Center, 10 Main Street, Hackensack, New Jersey 07601 would be the appropriate agency to receive your correspondence.  Accordingly, we have forwarded it to that agency.

Thank you for contacting the Attorney General and the Division of Criminal Justice.

Very truly yours,

Robert E. McGrath,
Lieutenant
Records and Identification

/a

   *New Jersey Is An Equal Opportunity Employer · Printed on Recycled Paper and is Recyclable*   

04/01/15

GARFIELD  POLICE
411 Midland Avenue
Garfield, NJ 07026

Attn.  Chief of Police Kevin Amos

**Re:  Dept. Incident  # 1-2015-008043**

Dear Chief,

Last week I submitted complaint, using your Citizen Service Request, concerning
harassment  I suffered in front of PSFCU building where I was collecting
signatures of PSFCU members, supporting candidacy of  Marek Wysocki to
PSFCU Board of Directors.  I asked your staff to disclose name of PSFCU
manager who was calling police to extort action against me.  Your police officer
Eddie  Figueroa forced me to stop collecting of signatures, breaking my basic
rights ad USA citizen.

Unfortunately, as for now,  I have not received any answer from your staff.

Yours faithfully,

Jan Welenc

349 Ocean Pkwy, # 6C
Brooklyn, NY 11218

cc.  NCUA
1775 Duke street
ALEXANDRIA, VA 22314-3428
Attn: Inspector General

the caller on this card
is Tom Duch
see Attached
That is All the information
we have - Records

The Board of Directors issued a ban on informing members of the Union and collecting signatures on a petition for election

**On Saturday March 21st 2015 Credit Union branch manager in Garfield called the police and police officer informed persons who were gathering signatures for a petition to the Board of Directors, that they cannot stay on the sidewalk located in front of the Credit Union office and asked Jan Welenc and Mark Wysocki to leave the place** (police report attached in PDF format).

A few minutes earlier Director Iwona Podolak was warning Mark Wysocki (leading the campaign), in an aggressive manner, using a raised voice that a lawsuit will be filed against him in the court.

Mark Wysocki is the only candidate competing for the Board of Directors basing on petition of members and not nominated by the President Matyszczyk who designated Nominating Committee. This Committee, as every year, will nominate "their proteges" who do not need to collect signatures of members, and as a result they have occupied Board for almost 20 years !!! The only independent candidate who has a improvement program for our organization was denied the opportunity to gather signatures on a petition under penalty of arrest by the police.

Why Jan Welenc was forbidden to give out leaflets, informing members of Credit Union that Board of Directors has lost a court case concerning special meeting? How Mark Wysocki, as the only candidate who wants to run for Board of Directors, basing on petition can collect members signatures on his petition if Matyszczyk and the entire Board prohibits him to stand in front of local branch office of the Union? Why are they so afraid of the electoral program of Mark Wysocki?

**Members of the Polish & Slavic Federal Credit Union! Do not let a small group of swindlers to take over our organization and to endanger hundreds of millions of dollars earned through generations of hard-working Polish immigrants.**

Do not believe in their success propaganda they send to you on colored paper. Our Union prospers only by the fact that more and more Poles bring their money here, but not thanks to involvement of the Board of Directors or the inept management. Do not let be bribed by a few dollars dividend paid to you. It is only 3.3 million dollars out of 120 million, which for years should be distributed among the members. Do not let yourself be bribed by "free" concerts and performances. You pay for it by your own money, not by generosity of Board of Directors

**IMPROVE YOUR LIFE AND THE FUTURE OF YOUR CHILDREN!**

**TAKE PART IN ELECTIONS, COME TO CREDIT UNION MEETINGS, TAKE ACTIVE PART IN THE FIGHT AGAINST CALLOUSBOARD OF DIRECTORS, WHICH SEIZED OUR ORGANIZATION!**

Jan Welenc
349 OCEAN PRKWY #6C
BROOKLYN NY 11218

# Policją w członków PSFCU.

03/29/2015

0 Comments



Jan Welenc prowadzi akcje informacyjną w Garfield

**Skandal !!!**

Rada Dyrektorów wydała zakaz informowania członków Unii i zbierania podpisów na petycję do wyborów

W sobotę 21 marca 2015 roku kierowniczka oddziału Unii Kredytowej w Garfield wezwała policję, która poinformowała zbierających podpisy pod petycję do Rady Dyrektorów, że nie mogą oni przebywać na chodniku znajdującym się przed budynkiem Unii i poprosiła Janka Welenca i Marka Wysockiego o opuszczenie miejsca.

Kilka minut wcześniej w oddziale była Dyrektor Iwona Podolak i w sposób agresywny, używając podniesionego głosu straszyła prowadzącego kampanię wyborczą Wysockiego sprawą sądową.

Marek Wysocki jest jedynym kandydatem startującym do Rady Dyrektorów z petycji członków, a nie z nominacji stworzonej przez przewodniczącego Matyszczyka Komisji Nominacyjnej. Komisja ta, jak co roku nominuje „swoich" bez wymogu zbierania podpisów wśród członków, przez co w Radzie osoby te zasiadają od prawie 20 lat!!! Jedynemu niezależnemu kandydatowi, który posiada program naprawy naszej organizacji odmówiono możliwości zebrania petycji pod karą aresztu przez policję.

Perth Amboy, August 19.2011

Waldemar Szuba

700 Johnstone Street,

Perth Amboy,NJ 08861

Phone: 908-208-7448

Dear Sir/Madam

On  August 11.2011, I was involve collecting signatures  at UPFCU on McGuiness Blvd, Greenpoint, NY.

Mr. Jan Walenc  was conducting standard – peaceful democratic protest against Mrs. Bozena Kaminski,  she seeks nomination to the PSFCU.

Her public and social  activities  within polish ethnic grup  is very  disappointed .

Mrs. B.Kaminski noticed a banner held by Mr.Walenc, and turn verbally on him, stated that he was and still it is mentally  sick, and that his rehabilitation at the psychiatric mental institution didn't help him.

She made this statement with the knowlage of Mr. Jan Walenc personal data informations, once used by her husband ( **Andrew Kaminski Esq.)** who was representing Mr.Walenc in the legal case

Waldemar Szuba

SWORN Before me this
8 day of lept 2011

DON AOKI
Notary Public, State of New York
No. 01AO4889887
Qualified in New York County
Commission Expires August 26, 2013

New York 08/16/2011

To Whom It May Concern:

I undersigned Bozena Kajewska Pielarz (FL Driver Licence) hereby certify that on August 11, 2011 I have witnessed  Mrs Bozena Kaminski called Mr Jan Welenc "psycho" who was treated at the psychiatric hospital. This incident took place at 100 McGuinness Blvd in Brooklyn, in front of the Polish & Slavic FCU building when she was collecting signatures to support her as a candidate for the Board of Directory.
Mr Jan Welenc was standing quietly and did not offend Mrs Bozena Kaminski.

Bozena Kajewska Pielarz
646-239-7520

SWORN TO BEFORE ME
THIS 16 DAY OF AVG 2011

ANNA M. LAROCCA
Notary Public State of New York
No. 01LA6095343
Qualified in Queens & Kings County
Commission Expires July 7, 2015



*12-30- 2008*

*Case Number*
*0 832 4000 1206 06*



ADMINISTRATIVE REVIEW DIVISION
WORKERS' COMPENSATION BOARD
20 PARK ST
ALBANY, NY  12207
*www.wcb.state.ny.us*

**Zachary S. Weiss**
**Chair**

## State of New York - Workers' Compensation Board

## In regard to Jan Welenc, WCB Case #0034 1006

# MEMORANDUM OF BOARD PANEL DECISION

*keep for your records*

Opinion By:  Mona A. Bargnesi
Richard A. Bell
Frances Libous

The claimant's attorneys, in a review application served on August 14, 2008, and filed with the Board on August 15, 2008, request review of the Workers' Compensation Law Judge (WCLJ) decision filed August 15, 2008, which, among other things, established the date of disablement as October 19, 2005 (the alleged date of first treatment for the post-traumatic stress disorder). The claimant's attorneys contend that the date of disablement should be established as August 6, 2003 (the date of the first diagnosis of post-traumatic stress disorder).

The carrier served a rebuttal on September 9, 2008, wherein they assert that the claimant's attorneys submitted no evidence in support of their allegation that the date of disablement should be modified.

<u>FACTS</u>

The claimant submitted an August 16, 2003 C-3 (Employee's Claim For Compensation) form, wherein he alleged that as a result of his working as an asbestos handler at "ground zero", the site of the September 11, 2001 terrorist attack, he suffered from headaches and post-traumatic stress disorder.

One of the claimant's treating physicians, Ewa Kozikowska, M.D., submitted an August 6, 2003 report, relative to treatment on March 20, 2003, wherein she diagnosed the claimant with causally related post-traumatic stress disorder.

The WCLJ found prima facie medical evidence for the claimant's psychiatric condition and "possible heart problem" in the October 28, 2004 decision.

Thereafter, in the January 20, 2006 decision, the WCLJ restored to notice Zurich, and directed Liberty Mutual to produce a copy of their wrap-up policy. Liberty Mutual appealed that decision. The Board Panel, in a decision

*** Continued on next page ***

| | | | |
|---|---|---|---|
| Claimant - | Jan Welenc | Employer - | L V I Services Inc |
| Social Security No. - | | Carrier - | ACE American Insurance Co. |
| WCB Case No. - | 0034 1006 | Carrier ID No. - | W019004 |
| Date of Accident - | 10/19/2005 | Carrier Case No. - | 24064-03424 |
| District Office - | NYC | Date of Filing of this Decision - | 12/30/2008 |

ATENCION:

Puede llamar a la oficina de la Junta de Compensacion Obrera, en su area correspondiente, cuyo numero de telefono aparece al principio de la pagina y pida informacion acerca de su reclamacion(caso).



filed June 7, 2006, modified the January 20, 2006 WCLJ decision, finding that Liberty Mutual was discharged and removed from notice.

Subsequently, in the May 3, 2007 decision, the WCLJ found Article 8-A applicable to this claim.

In the July 6, 2007 decision, the WCLJ found prima facie medical evidence for the claimant's rhinitis, gastroesophageal reflux disease, and reactive airway dysfunction syndrome.

The WCLJ established the "date of disablement" as October 16, 2001 (the last date on which the claimant worked at ground zero) in the decision filed December 6, 2007.

ISSUE 1

The first issue presented for administrative review is whether the date of disablement was correctly established.

LEGAL ANALYSIS

The Board Panel hereby modifies the date of disablement to March 20, 2003 (the date of first treatment and diagnosis of post-traumatic stress disorder).

Workers' Compensation Law § 42 provides that the date of disablement is set by the Board, and the Board may select the date of diagnosis that the condition is work related; the date of first treatment; the date of first lost time from work; the date the claimant was told to stop work by his physician; or the date the claimant first suffered diminution of earnings. Moreover, the courts have noted that the Board is not bound to select the earliest date possible, nor is it required to give preference to certain events over others (*Matter of Hastings v Fairport Cent. School Dist.*, 274 AD2d 660 [2000]). The date that the claimant ceased working because of his condition may also be chosen (*Matter of Sciemeni v Welbilt Stove Co.*, 32 AD 2d 364 [1969]).

The August 12, 2008 hearing minutes clearly reflect that the WCLJ wanted to establish the date of disablement as the date of first treatment and diagnosis. However, due to confusion about the medical record, the WCLJ chose October 19, 2005, rather than the true date of first treatment, March 20, 2003. Therefore, in accordance with the WCLJ's choice, the Board Panel hereby modifies the date of disablement to March 20, 2003.

ISSUE 2

The second issue presented for administrative review is whether the "date of disablement" was correctly established in the decision filed December 6, 2007.

LEGAL ANALYSIS

The Board's jurisdiction over each case is continuing, and it may make such modification or change with respect to former findings, awards, decisions and orders as in its opinion may be just (Workers' Compensation Law § 123). In accordance with this continuing jurisdiction, the Board Panel finds that the "date of disablement" established by the WCLJ in the December 6, 2007 decision is actually the "date of accident." Workers' Compensation Law § 164 ("Disablement of a participant in World Trade Center rescue, recovery and clean-up operations treated as an

*** Continued on next page ***

| Claimant - | Jan Welenc | Employer - | L V I Services Inc |
|---|---|---|---|
| Social Security No. - | | Carrier - | ACE American Insurance Co. |
| WCB Case No. - | 0034 1006 | Carrier ID No. - | W019004 |
| Date of Accident - | 10/19/2005 | Carrier Case No. - | 24064-03424 |
| District Office - | NYC | Date of Filing of this Decision - | 12/30/2008 |

ATENCION:

Puede llamar a la oficina de la Junta de Compensacion Obrera, en su area correspondiente, cuyo numero de telefono aparece al principio de la pagina y pida informacion acerca de su reclamacion(caso).

17082650
0832 4000 1206061

accident") states: "The date of disablement of a participant in World Trade Center rescue, recovery and clean-up operations resulting from a qualifying condition that is causally related to such participant shall be treated as the happening of an accident within the meaning of this chapter and the procedure and practice provided in this chapter shall apply to all proceedings under this article, except where otherwise specifically provided herein. The board shall determine the date of disablement that is most beneficial to the claimant."

Workers' Compensation Law § 166 ("Liability of employer and insurance carrier") states: "The employer in whose employment an employee participated in World Trade Center rescue, recovery and clean-up operations shall be liable for any claim for a qualifying condition that is causally related to such participation provided that such participation arose out of and in the course of such employment. For the purpose of determining which carrier has insurance coverage of such claim, the date of accident shall be considered the last day of such participation."

Thus, in accordance with Workers' Compensation Law § 166, the date of accident pertains solely to employer/carrier liability, such that a date of disablement can also be established as per Workers' Compensation Law § 164. Here, the Board Panel establishes the date of accident as October 16, 2001 (the last date on which the claimant worked at ground zero).

CONCLUSION

The Board Panel hereby modifies the date of disablement to March 20, 2003 (the date of first treatment and diagnosis of post-traumatic stress disorder). The Board Panel establishes the date of accident as October 16, 2001 (the last date on which the claimant worked at ground zero.)

Accordingly, the WCLJ decision filed August 15, 2008 is MODIFIED. Additionally, the decision filed December 6, 2007 is MODIFIED, as the "date of disablement" is actually the "date of accident." No further action is planned by the Board at this time.

All concur.


Mona A. Bargnesi                    Richard A. Bell                    Frances Libous

| | | |
|---|---|---|
| Claimant - | Jan Welenc | |
| Social Security No. - | | |
| WCB Case No. - | 0034 1006 | |
| Date of Accident - | 10/19/2005 | |
| District Office - | NYC | |

| | |
|---|---|
| Employer - | L V I Services Inc |
| Carrier - | ACE American Insurance Co. |
| Carrier ID No. - | W019004 |
| Carrier Case No. - | 24064-03424 |
| Date of Filing of this Decision - | 12/30/2008 |

ATENCION:

Puede llamar a la oficina de la Junta de Compensacion Obrera, en su area correspondiente, cuyo numero de telefono aparece al principio de la pagina y pida informacion acerca de su reclamacion(caso).

# VILOR SHPITALNIK, M.D.

Diplomate of American Board of Psychiatry and Neurology

26-32 E. 21ˢᵗ Street
Brooklyn, NY 11235
Telephone (718) 615-7450
Fax (718) 615-7452

### Updated Psychiatric report:

**Date of Examination:** January 13, 2012
**Patient:** Jan Welenc

**Chief Complaints:**
Depression, anxiety, nightmares, flashbacks, feelings of despair, hopelessness and helplessness, issues not to be alive, persistent physical pain, headaches, dizzy spells, memory problems.

**Interim History:**
Mr. Jan Welenc is a 58-year-old man who has been under my care since December 9, 2008.
As I described in my previous reports the patients mental condition deteriorated secondary to his haven been exposed t Ground Zero tragedy. Due to severity of his psychological distress, he was admitted to the psychiatric unit of Mt. Sinay Hospital.
During my initial evaluation of the patient and further follow up visits, I formulated the diagnosis as Posttraumatic Stress Disorder and Major Depressive Disorder.
He indicates that his main stressors are: persistent psychical pain and psychical disability. The patient withdrew himself from any social activities and most of the time he is home bound. Reportedly, he feels uncomfortable around people and even apprehensive and paranoid towards strangers. He also feels uncomfortable while using public transportation.
Currently, the patient receives several psychotropic medications including: Pristiq 50mg per day, Wellbutrin XL 300mg per day, Seroquel XR 150mg per day and Klonopin 05mg QID.

**Mental Status Examination:**
The patient appears his stated chronological age. He is casually dressed and groomed. He presents with slow psychomotor behavior and sad facial expression. During the interview he was reluctant to speak, the tone of his voice was very low. His mood is severely depressed. His affect is blunted. He is responsive, but the time of response is delayed indicating slowing mental process. There is evidence of apprehension and paranoia. He is preoccupied with negative thoughts, he feels hopeless and helpless. At times, thoughts of worseness of life cross his mind. The patients cognitive functioning is significant for short-term memory and attention/concentration deficit.

In my professional opinion, continuation of psychiatric treatment is indicated and necessary.

*[signature]* M.D

**Dr. Vilor Shpitalnik**
**Board Certified Psychiatrist**



05/10/2017,  New York


Andrzej Mioduszewski
148 Drigggs Ave., # 1R,
Brooklyn, NY 11222


# TO WHOM IT MAY CONCERN

I below signed declare that on 05/07/17 I took part in Annual General Meeting of
Polish & Slavic Federal Credit Union members at Clark N.J., called by PSFCU
Board of Directors (located at100 McGuinness Blvd, Brooklyn, NY 11222).  When
Board of Directors allowed members to ask questions, Jan Welenc, a member of
our union representing members in Court, took microphone to present issue of
Special Meeting of PSFCU members.  Supreme Court ruled on this case a verdict
on 12/06/15, ordering Board of Directors to call a special meeting of members
according to Credit Union Statute. This case was reported to Court because Board
of Directors ignored the petition signed by 4,000 members.

Board of Directors, afraid of losing their free functions, appealed against this
verdict to Court of Appeals in Brooklyn, at the expense of members, without any
substantive justification. Jan Welenc (who lives at the following address:  349
Ocean Pkwy, #6C, Brooklyn, NY 11218) wanted to give members more
information about this case, as well as on corruption in PSFCU Board of Directors.
Then Board of Directors ordered security guards to take Mr. Welenc's microphone.
One of the mighty security guards brutally pushed him on the chairs and tables
where members were sitting, hitting him in the chest. Then I stepped in between
the bodyguard and Mr. Welenc to prevent a tragedy.  Mr. Welenc informed me that
he had a severe pain in the cervical and ankle, and had to leave meeting to go to the
hospital. PSFCU's Director, who led this meeting, did not even respond to this
brutal incident.

NYS CDL # 750-786-059

*Andrzej Mioduszewski*

TEKARAM DINANATH
NOTARY PUBLIC-STATE OF NEW YORK
No. 01DI6321969
Qualified in Kings County
My Commission Expires May 04, 2019

7/22/2017

*report z operacji szyi*  (handwritten)

(6)  (handwritten)

# Welenc, Jan

MRN: 2596857
Description: 65 year old male

**IP Operative Report** Date of Service: 03/14/18 2148
Creation Time: 03/14/18 2148

## Saad Chaudhary, MD
ORTHOPAEDIC SURGERY, SURGERY OF THE SPINE

The Mount Sinai Hospital
New York, NY 10029-6574

PATIENT NAME: WELENC, JAN
MRN: 2596857
ACCOUNT NUMBER: 51988284
ADMIT DATE: 03/14/2018
DATE OF PROCEDURE: 03/14/2018

ATTENDING SURGEON: Saad Chaudhary, MD

ASSISTANT: Dr. Li Sun.

PREOPERATIVE DIAGNOSES:
1. Cervical stenosis.
2. Cervical disk herniation.
3. Cervical spondylotic myelopathy.
4. Cervical radiculopathy.

POSTOPERATIVE DIAGNOSES:
1. Cervical stenosis.
2. Cervical disk herniation.
3. Cervical spondylotic myelopathy.
4. Cervical radiculopathy.

PROCEDURES PERFORMED:
1. Cervical laminectomy C3, C4, C5, C6, C7 for a total of 5 levels.
2. Posterior cervical arthrodesis C3-C4, C4-C5, C5-C6, C6-7, C7-T1.
3. Posterior spinal instrumentation C3-T1.
4. Use of autograft.
5. Use of allograft and off label bone morphogenetic protein.
6. Use and interpretation of fluoroscopy with real time interpretation.
7. Placement and Removal of Cranial Tongs.

INDICATIONS: Briefly, the patient is a pleasant 65-year-old male who has had significant neck pain, upper extremity paresthesias, radiculopathy. The patient also has been complaining of fine motor skill dysfunction. He has failed conservative care and had been indicated for surgery in the past. He has been thoroughly worked up and diagnosed with ossification of the posterior longitudinal ligament as well as cervical stenosis, cervical disk

herniation, and radiculopathy. Due to the failure of improvement with conservative care, all the relevant risks, benefits, and alternatives of the above-mentioned surgery were discussed with him multiple times with the use of a Polish speaking interpreter. We also discussed the use of plastic surgery to facilitate tension-free wound closure to minimize risk of infection. The patient consented and wanted to proceed forward with surgery as mentioned above.

PROCEDURE IN DETAIL: The patient was examined in the preoperative holding area. The correct operative site was clearly marked. Consent was reviewed. The patient was induced, intubated, all the appropriate IV lines were obtained, SCDs were applied and functional. Foley catheter was inserted. Neurophysiologic monitoring leads were applied. Due to the patient's alignment, it was felt appropriate to place the patient in cranial tongs and use bivector traction to facilitate enhanced lordosis for this fusion surgery. Standard technique was used and Gardner-Wells tongs were applied. The patient was positioned prone and bivector traction was utilized to facilitate optimal cervical lordosis and alignment. This was then followed by clipping, prepping, and draping the patient's cervical spine. Also, of note, the shoulders were gently taped down. All his bony prominences were well-padded. Baseline SSEP, MEP, and EMG data was obtained, and this was followed throughout surgery, and there were no changes in MEP or SSEP. There was a mild intermittent EMG that was quite closing. After positioning and appropriate lordosis attainment with traction, we marked out the proposed surgical incision. The patient was draped, surgical timeout was called, preoperative antibiotics were delivered, and a midline surgical incision was performed to expose the spine from C3-T1. Care was taken to preserve the facet capsules and the muscle attachment at C2-C3 as well as at C7-T1. Once the spine was exposed, lateral radiograph was obtained to confirm localization. This was then followed by performing pilot holes for lateral mass fixation from C3-C6. Of note, the patient had a very small limited lateral mass and his fixation specifically on the right C6 was tenuous. This was then followed by placing bilateral T1 pedicle screws, Globus cortex system was utilized. Once the T1 pedicle screws were placed, they were assessed with a ball-tipped probe and AP and lateral radiographs were obtained to confirm appropriate screw placement and alignment. Bilateral T1 pedicle screws were placed 4.5x24. This was then followed by drilling, tapping the lateral mass screws, but the screws were not placed. Following this, lobster tail technique was utilized to perform a wide laminectomy from the undersurface of C3, partial C3 laminectomy was performed, and C4, C5, C6, and partial C7 laminectomy with facetectomy and foraminotomies were performed at these levels. This was subsequently followed by removing the lamina and the dura was noted to be well decompressed, and there was epidural bleeding that was encountered, which was appropriately coagulated. Copious irrigation was performed. This was then followed by decorticating the facet joints and lateral masses bilaterally. Following this, lateral mass screw fixation was performed, 3.5x10mm screws were placed across C3, C4, C5, C6 in the left and C3, C4, C5 on the right. This was then followed by approximately contouring a 100mm rod with cervicothoracic lordosis. Rods were placed into position. Set screws were deployed. Final motors were ran. This was then followed by obtaining a final lateral and AP radiograph to confirm appropriate alignment. Crossings were attached at C5. This was subsequently followed by another round of copious irrigation. Following this, bone graft was utilized, autograft as well as allograft bone with off label bone morphogenetic protein and Mastergraft. Bone was packed in bilateral gutters with specific attention to the cervicothoracic junction. The construct was final torqued. Cross

Welenc, Jan (MR # 2596857) DOB: 02/02/1953

connectors were placed and torqued. This marked the end of this procedure. Surgical hemostasis was obtained. No signs of CSF leak. This was then followed by performing a layered closure by the plastics and reconstructive service. Please refer to their note for details. Once the closure was performed, sterile dressings were applied. The patient was removed from cranial traction. Tongs were removed, flipped supine, placed in a Miami J collar, reversed, extubated, and taken to PACU for postoperative care.

ESTIMATED BLOOD LOSS:  150mL .

FINDINGS:  Cervical stenosis.

COMPLICATIONS:  None.

DISPOSITION:  To PACU in stable condition.

IMPLANTS:  Globus Quartex cervical system.

---

SAAD CHAUDHARY

DD:  03/14/2018 19:31:57
TD:  03/14/2018 21:47:58
Job#:  287630

This is a privileged and confidential communication.  Please dispose of paper copies appropriately.

Admission
(Discharged) on
3/14/2018



**NYU Langone Health**

530 First Avenue
Schwartz Health Care Center 14th Floor
New York, New York 10016
(T) 212.263.5656
(F) 212.263.8534

NYU Langone Health - Tisch Cardiac Cath Lab
Procedure Report - Final result

**Patient Name: Welenc, Jan      DOB:2/2/1953**
**Order # 269785849**
Study date: 9/27/2018

Referring Providers: MORCOS, HANAN
Signing Physicians: DAVID, MARIAN

# Patient Information

| Name | MRN | Description |
|------|-----|-------------|
| Jan Welenc | 13789058 | 65 y.o. Male |

## Attending Physicians

| Name | Panel | Role | Time Period |
|------|-------|------|-------------|
| Marian David, MD | Panel 1 | Primary | 9/27/2018 0846 - 9/27/2018 0857 |

## Staff

| Name | Type | Time Period |
|------|------|-------------|
| Anita Hariprashad, PA | Physician Assistant | 9/27/2018 0843 - 9/27/2018 0907 |

# History of Present Illness

This is a 65 y.o. male with hx of GERD who underwent a stress test as part of pre-operative evaluation for ankle arthroscopy, stress test was significant for mid, apical and

inferior ischemia, admits to intermittent chest pain at rest and with exertion. Patient referred for LHC for further evaluation.

# Procedures

## Diagnostic Procedures
Coronary Angiography and Left Heart Catheterization

# Conclusions
- Mild non-obstructive coronary artery disease (mLAD)
- Normal LV systolic function
- Normal LVEDP
- Left Dominant Circulation

# Recommendations
Post-cardiac catheterization care per routine
Optimize medical therapy for CAD and CAD risk factors per the referring physician
Follow-up with the referring physician in 1-2 weeks, or as previously instructed

# Indications and Risk Factors

## Cardiac Cath Lab Visit Indications
Atypical angina
Pre-Op for Non Cardiac Surgery

# Diagnosis Codes
Angina pectoris [I20.9 (ICD-10-CM)]
Abnormal stress test [R94.39 (ICD-10-CM)]

# Access Site
Moderate sedation was administered under the supervision of the attending physician and the patient's level of consciousness, clinical status, and hemodynamics were monitored throughout the procedure.

4 French sheath was inserted into the right femoral artery. (SHEATH INTRO PINNACLE 4FR 10CM)

# Coronary Findings, selective coronary angiography was performed in the standard views
Dominance: Left
**Left Main**
The vessel is angiographically normal.
**Left Anterior Descending**

 Mid LAD lesion, 30% stenosed.
### Left Circumflex
The vessel exhibits minimal luminal irregularities. The vessel is large caliber.
### Right Coronary Artery
The vessel exhibits minimal luminal irregularities. Small caliber non dominant vessel

## Left Heart

| Left Ventricle | LV End Diastolic Pressure is normal. Diastolic pressure 11 mmHg. LV ejection fraction is normal. There are no wall motion abnormalities in the left ventricle. |
|---|---|

## Hemostasis

Arterial Hemostasis:
Manual compression

## Complications

There were no immediate complications during the procedure.

## Orders

CATH LEFT HEART WITH POSSIBLE PCI

## Signed

Electronically signed by Marian David, MD on 10/4/18 at 0820 EDT

## External Images

Show images for CARDIAC CATH PROCEDURE

## Scans on Order 269785849

Scan on 9/27/2018 9:20 AM

AFTER VISIT SUMMARY

 **NYU Langone Health**

**Jan Welenc** Date of birth: 2/2/1953   9/27/2018   Kimmel Pavilion - Cardiac Catheterization   212-263-4605

## Instructions

 Discharge Instructions

**NYUMC**

Jan Welenc
13789058

## Cardiac Catheterization Discharge Instructions

**Can I do my regular daily activities?**

**For first 24 hours (1 day) after you leave the hospital:**

- DO NOT bend your ___ right wrist ___ left wrist
- DO NOT drive a car
- DO NOT rub the catheter site
- YOU CAN shower tomorrow morning
- YOU CAN remove the dressing and gently wash the site and pat dry
- YOU CAN climb stairs slowly and rest between flights

**For first 72 hours (3 days) after you leave the hospital:**

- DO NOT lift anything over 10 pounds (including children)
- DO NOT do anything physical including housework, exercise and sexual activity
- YOU CAN resume activities of daily living after 72 hours (3 days)

**For first week (7 days) after discharge:**

- DO NOT play sports
- DO NOT take a bath, swim or soak in a tub

**What should I know about the puncture site?**
- The puncture site in your groin or wrist will heal on its own in about a week.
- At the puncture site it is normal to have:
  - soreness, swelling or a small, hard bump under the skin
  - bruising (black and blue)
- If you notice any of the following, call the Cath Lab at **(212) 263-5656**:
  - increased pain, swelling redness or warmth at the puncture site

- numbness, coldness, tingling or cramping in your arm or leg below the puncture site

- you have a temperature of 100.8°F or higher

- chest pain, pressure, tightness or burning in the chest, arm, jaw or stomach

- If there is any bleeding at the puncture site:

  - _____Lie down (groin puncture) _____ Sit down (wrist puncture)

  - Put direct pressure (without stopping) just above the puncture site for at least 10 minutes. Call the Cath Lab at **(212) 263-5656**

  - **NEVER TIE ANYTHING AROUND YOUR LEG OR ARM TO STOP THE BLEEDING (DO NOT use a tourniquet)**

  - **If the bleeding does not stop after 10 minutes, call 911 or your local emergency number for assistance**

## What are my medications?

- You will get another form called a **Medication Reconciliation Form** that will give you information about the medications you will need to take.
- There are a number of medications that you may be given after your cardiac catheterization procedure. Your cardiac interventionalist and your primary doctor will decide how long you need to take these medications. It is important to fill your prescription right away and take all medications without skipping doses. These medications may include:
  - Antiplatelets
    - Help keep the stent open
    - Examples: Clopidogrel (Plavix®), Prasugrel (Effient®), Aspirin and Cilostazol (Pletal®)
    - It is important that you take these medications to prevent thrombosis (blood clots) inside the stent
    - Blood clots inside the stent can cause a heart attack
    - Consult with your cardiologist before stopping antiplatelet medications at any time
  - Beta Blockers
    - Make it easier for the heart and help it to beat more regularly
    - Treat high blood pressure and help to prevent chest pain after a heart attack
    - Prevent more heart attacks from occurring
    - Examples: Metoprolol (Lopressor®, Toprol X®L), Atenolol (Tenormin®)
  - Statins
    - Reduce inflammation (swelling) in the arteries and lower your cholesterol
    - Examples: Atorvastatin (Lipitor®), Rosuvastatin (Crestor®), Simvastatin (Zocor®)
  - Analgesics
    - Relieve discomfort in the groin and/or chest after the cardiac catherization
    - Relieve mild headaches and other body aches
    - Examples: Acetaminophen (*Tylenol*®, *Extra-Strength Tylenol*®)
      - Take 2 tablets every 6 hours as needed. Check with your doctor or nurse practitioner about which strength you should take and about how many pills you can take in one day.

## Do I need to watch my weight?

Weigh yourself every day. Call your primary heart doctor or call **(212)-263-5656** for instructions if you have any of the following symptoms:
- you gain more than 3 pounds in a day
- you gain more than 6 pounds in a week
- you feel more short of breath with your normal daily activities than you did before your procedure

### Stop Smoking:
Do you or a loved one smoke? Smoking is the number one cause of death that we can prevent in the U.S. Smoking or being near second hand smoke is a major risk factor for many health problems such as heart disease, lung cancer, emphysema, stroke and asthma. It is hard, but it is possible to quit. **The Smilow Cardiac Rehabilitation and Prevention Center** offers individual and group programs to help break the addiction to smoking. For more information, call **(212) 263-6129**.

### What vaccinations (shots) do you recommend?
New York State guidelines suggest that everyone age 50 and over should get an Influenza (flu) vaccine while everyone age 65 and over should also get a Pneumococcal vaccine. If you are in these age groups, you will be offered the vaccinations. You can choose not to get the vaccines. If you are under age 50 you will not be *offered* the vaccines, but they will be given to you if you ask.       l

Influenza, date: _____          Pneumococcal, date: _____  ____ Declined                    _____
Declined

### Do I need to follow a special diet?
Your doctor or nurse practitioner can provide you with additional information about the diet you must follow. Make sure you ask any questions that you might have. ___Diabetic ____ Low Sodium ___  Heart Healthy ___ Other: ___

For the next 48 hours (2 days), you should drink water as advised by your healthcare team
### When should I have a follow-up appointment?
You need to be seen by Dr.***in about *** week(s).  Please call the doctor's office tomorrow to make an appointment.

We will call you 24 hours (1 day) after you leave the hospital to see how you are feeling.

If taking Glucophage/Metformin, resume on _____

I have received a copy of these discharge instructions and I understand them.

_____  _____  _____
Patient Signature                    Date           Time
__Cheyne Charles PA-C_____  _____  _____
MD/NP/PA Signature                Date           Time
_____  _____  _____
Nurse Signature                     Date           Time

 No changes were made to your medications.

Patient Name: Welenc, Jan    DOB:2/2/1953
Order # 269765849
Study date: 9/27/2018

Referring Providers: MORCOS, HANAN
Signing Physicians: DAVID, MARIAN

## Patient Information

| Name | MRN | Description |
|------|-----|-------------|
| Jan Welenc | 13789058 | 65 y.o. Male |

## Attending Physicians

| Name | Panel | Role | Time Period |
|------|-------|------|-------------|
| Marian David, MD | Panel 1 | Primary | 9/27/2018 0846 - 9/27/2018 0857 |

## Staff

| Name | Type | Time Period |
|------|------|-------------|
| Anita Hariprashad, PA | Physician Assistant | 9/27/2018 0843 - 9/27/2018 0907 |

## History of Present Illness

This is a 65 y.o. male with hx of GERD who underwent a stress test as part of pre- operative evaluation for ankle arthroscopy, stress test was significant for mid, apical and inferior ischemia, admits to intermittent chest pain at rest and with exertion. Patient referred for LHC for further evaluation.

## Procedures

### Diagnostic Procedures

Coronary Angiography and Left Heart Catheterization

## Conclusions

- Mild non-obstructive coronary artery disease (mLAD)
- Normal LV systolic function
- Normal LVEDP
- Left Dominant Circulation

## Recommendations

Post-cardiac catheterization care per routine
Optimize medical therapy for CAD and CAD risk factors per the referring physician
Follow-up with the referring physician in 1-2 weeks, or as previously instructed

## Indications and Risk Factors

### Cardiac Cath Lab Visit Indications

Atypical angina
Pre-Op for Non Cardiac Surgery

## Diagnosis Codes

Angina pectoris [I20.9 (ICD-10-CM)]
Abnormal stress test [R94.39 (ICD-10-CM)]

## Access Site

Moderate sedation was administered under the supervision of the attending physician and the patient's level of consciousness, clinical status, and hemodynamics were monitored throughout the procedure.

4 French sheath was inserted into the right femoral artery. (SHEATH INTRO PINNACLE 4FR 10CM)

## Coronary Findings, selective coronary angiography was performed in the standard views

Dominance: Left
Left Main
The vessel is angiographically normal.
Left Anterior Descending
    Mid LAD lesion, 30% stenosed.
Left Circumflex
The vessel exhibits minimal luminal irregularities. The vessel is large caliber.
Right Coronary Artery
The vessel exhibits minimal luminal irregularities. Small caliber non dominant vessel

## Left Heart

Left Ventricle  LV End Diastolic Pressure is normal. Diastolic pressure 11 mmHg.
                LV ejection fraction is normal.
                There are no wall motion abnormalities in the left ventricle.

## Hemostasis

Arterial Hemostasis:
Manual compression

## Complications

There were no immediate complications during the procedure.

## Encounter Notes

All notes

## Orders

CATH LEFT HEART WITH POSSIBLE PCI

## Signed

Electronically signed by Marian David, MD on 10/4/18 at 0820 EDT

Welenc, Jan (MR # 13789058)

## External Images
Show images for CARDIAC CATH PROCEDURE

## Scans on Order 269785849
Scan on 9/27/2018  9:20 AM

PACS Images

## Link to Procedure Log
Procedure Log

## Printable Result Report
Result Report

## Implants

| Name | | | ID Temporary Type Supply |
| --- | --- | --- | --- |
| No information to display | | | |

## Supplies

| Name | ID | Temporary | Type | Charge Code Description | Charge Code | Quantity |
| --- | --- | --- | --- | --- | --- | --- |
| GUIDEWIRE .035 IN  J 150CM | 21877 | No | Guidewires, Catheters, Balloon Catheters | HC GUIDE WIRE | 129886 | 1 |
| CATH PACK DIAGNOSTIC LAB | 36997 | No | Totes, Custom Packs, Trays | HC STERILE SUPPLY | 109411 | 1 |
| KIT MICRO INTRO SS 4FR | 48419 | No | Sheaths, Introducers, Cannulas, Dilators, Venous Access | HC INTRO/SHEATH, NON-LASER | 129944 | 1 |
| SHEATH INTRO PINNACLE 4FR 10CM | 67340 | No | Sheaths, Introducers, Cannulas, Dilators, Venous Access | HC INTRO/SHEATH,STRBLE,NON-PEEL | 185210 | 1 |
| CATH INFINITI MULTIPACK 4FR | 70941 | No | Guidewires, Catheters, Balloon Catheters | HC CATH, TRANS ATHERECTOMY, DIR | 129848 | 1 |

| Name | ID | Temporary | Type | Charge Code Description | Charge Code | Quantity |
|---|---|---|---|---|---|---|
| KIT ANGIOTOUCH HAND CONTROLLER AT-P65 | 115426 | No | General Supply - Sterile | HC STERILE SUPPLY | 109411 | 1 |

Case 1:18-cv-09617-GHW   Document 1   Filed 10/19/18   Page 66 of 166

**GAZETA Ameryka**

Do nowojorskiej prokuratury trafiło w poniedziałek zawiadomienie o popełnieniu przestępstwa przez Panią Dorotę Andrakę, dyrektorkę Centrali Polskich Szkół Dokształcających

# Nie płaciła podatków, grozi jej 5 lat więzienia



Dorota Andraka prezes Centrali Polskich Szkół Dokształcających

Jeśli prokuratura potwierdzi stawiane w zawiadomieniu zarzuty, dyrektorce Centrali Polskich Szkół Dokształcających może grozić do pięciu lat więzienia i do 100 tys. dolarów grzywny

Zarzuty w doniesieniu, do którego dotarła Polska Gazeta, są bardzo poważne.

Czytamy w nim między innymi, że Dorota Andraka od 2010 roku nie złożyła żadnego rozliczenia podatkowego swojej organizacji. Po trzech latach nie składania podatków, 15 stycznia 2014 roku, IRS pozbawił Centralę Polskich Szkół Dokształcających statusu organizacji "tax exempt" (zwolnionej od podatku).

Po utracie zwolnienia podatkowego, od 2014 roku organizacja Pani Andraki powinna podlegać regułom podatkowym dotyczącym zwykłych (for profit), korporacji oraz powinna była płacić normalnie korporacyjne podatki. Jak wynika z powyższego doniesienia do prokuratury, Pani Andraka tego również nie zrobiła.

IRS ma prawo żądać zapłaty podatku nie tylko po 2014 roku, ale również zaległego podatki z lat 2011, 2012 oraz 2013.

Co to oznacza dla darczyńców organizacji Pani Andraki? Według IRS, osoba która jest w sytuacji Pani Andraki, powinna była poinformować swoich darczyńców o utracie zwolnienia podatkowego przez jej organizację. Darczyńcy zaś nie powinni od 15 stycznia 2014 roku, składać na swoich rozliczeniach odliczeń podatkowych wynikających z datowizn dla owej przekazanych Centrali. Jeśli taktowe

Zawiadomienie do nowojorskiej prokuratury o filepłaceniu podatków przez Dorotę Andrakę

odliczenia złożyli i uzyskali od IRS to mogą być zobowiązani do złożenia korekty ich rozliczeń oraz zapłacenia zaległego podatku oraz kar wynikających z nienależnego odliczenia. Polska Gazeta ustaliła, że wśród darczyńców organizacji Pani

Andraki są bardzo znane polonijne i polskie instytucje.

W treści dokumentów przesłanych do prokuratury, znajduje się również tabela z zestawieniem dochodów i wydatków organizacji w okresie 09/01/2014 - 08/31/2015, w tym zestawieniu znajdu-

ją się między innymi takie pozycje: "studniówka" za 23.150,00 dolarów "transfer z konta" spółdzielni 160.450,00 dolarów, "6 proc kolporatu zu" za 10.121,84 dolarów, zwrot kosztów poniesionych od przesłanych 1.495,06 dolarów.

Dorota Andraka wyjaśnia. Winna poniżej niniejszej korespon...

A jednak śledztwo federalne i stanowe...

# KOLEJNE KŁOPOTY PANI PREZES

Prokuratura nowojorska w liście podpisanym przez Panią Lourdes Soto z biura Prokuratora Generalnego Erica T. Schneidermana potwierdziła wszczęcie postępowania w sprawie niezapłaconych przez organizację Pani Prezes Andraki podatków.

Nasza redakcja dotarła również do listu z IRS (Federalny Urząd Podatkowy) dotyczącego Pani Andraki. W korespondencji podpisanej przez Panią Mary A. Epps, Dyrektor IRS d/s Organizacji Zwolnionych od Podatku czytamy, iż IRS przyjął zawiadomienie o dopełnieniu, przestępstwa - podatkowego przez Panią Prezes Andrakę oraz włączył je do automatycznego postępowania audytowego prowadzonego w zamach Kodeksu Podatkowego. Przypominamy, że chodzi tu, jak pisaliśmy w naszym artykule pod koniec zeszłego roku, o naruszenie przez 6 lat rozliczenia podatkowe oraz, w efekcie, utratę przez jej organizacje statusu "tax exempt", który pozwalał jej organizacji wcześniejsze niepłacenie podatków. W odebrała organizacja Pani Andraki ten status 15 stycznia 2014 roku, po tym jak z żywoła ona rozliczeń podatkowych aż kolejne 3 lata. Po tym okresie, według federalnej, regulacji podatkowych, Pani Prezes miała obowiązek za-



płaty podatku korporacyjnego tak jak każda inna firma. Z danych dostępnych na publicznych stronach federalnego urzędu podatkowego wynika, że organizacja Pani Prezes do dziś dnia nie odzyskała tego statusu (zwolnienia podatkowego). Czy oznacza to, że kary finansowe oraz zaległe podatki jej organizacji, których bez utraty statusu nie musiałaby płacić, będą pokryte ze składek Rodziców oraz członków PSFCU (sponsorujących poprzez składki ż. kont jej organizacji)?

Okazuje się, że to nie koniec zmartwień Pani Prezes.

Nasza redakcja otrzymała również kopie skargi złożonej do NCUA (National Credit Union Administration), organizacji nadzorującej działalność federalnych unii kredytowych i ich "organizacji sponsorskich" między innymi organizacji Pani Prezes - CPSD (Centrala Polskich Szkół Dokształcających). Czytamy w tej skardze, że mogła się ona dopuścić także innych naruszeń prawa federalnego.

Jak czytamy w skardze, pomimo obowiązku przedstawienia do NCUA (poprzez PSFCU) jakichkolwiek zmian w statucie jej organizacji, Pani Andraka, bez zgody NCUA, dokonała dwóch kluczowych zmian w systemie wyboru członków zarządu jej organizacji: wymogu bycia członkiem organizacji przez okres dwóch lat (z uprzednich sześciu miesięcy), oraz wprowadzenia nieograniczonej kadencyjności sprawowania swojej funkcji prezesji (z uprzednich trzech kadencji). Dlaczego dokonano zmian utrudniających wybór nowych ludzi do władz CPSD?

W skardze do NCUA możemy również wyczytać, że Pani Andraka podczas dwu-

nastu lat sprawowania funkcji prezesa członków PSFCU (płacących jako członkowie jej składki) o miejscu i dacie corocznych zgromadzeń, tym samym pozbawiając ich prawa głosu, w tym uczestnictwa w wyborze przyszłego nie zawsze. 5 lutego odbywały się wybory na stanowisko Prezesa CPSD.

Czy Pani Prezes, dzięki, ulepszeniom" wprowadzonym w statucie została nie kolejny raz wybrana na piątą już kadencję?

F6



**The World Trade Center Health Program**
Clinical Center of Excellence at Mount Sinai School of Medicine

1468 Madison Avenue, 3rd Floor, New York, NY 10029

One Gustave L. Levy Place, Box 1059, New York, NY 10029
*Mailing Address*

Monitoring
*Call Center*  Tel. (888) 702-0630
                       Fax (212) 241-1850
*Clinic*           Tel. (212) 241-3355
                       Fax (212) 241-5092
Treatment
                       Tel. (212) 241-8080
                       Fax (212) 987-1134

## Mount Sinai

To:  Jan Welenc

Date:  2/23/2017

To whom it may concern,

Jan Welenc is a patient of mine and he suffers from multiple medical conditions. He also suffers from chronic pain. He has been experiencing difficulties while using the public transportation system. Any assistance in this matter will be really beneficial.

Please contact me @ 212-241-3355 if you have any further questions.

Sincerely,

Ismail Nabeel, MD

```
ISMAIL NABEEL, MD
One Gustave L. Levy Place
Box #1057
New York, NY 10029
212-241-1554
```



**Greenpoint Diagnostic Imaging**
1024 Manhattan Avenue Brooklyn, NY 11222
Tel: (718) 389-5000 Fax: (718) 389-5054

Michael L. Carlin, M.D., Medical Director
Jonathan B. Schwartz, M.D.
Svetlana Shteynman, D.O.
Kornelia Teslic M.D.

**Allium Diagnostic Imaging**
345 St Nicholas Ave Ridgewood NY 11385
Tel: (718) 408-5000 Fax: (718) 381-2090

| | |
|---|---|
| Patient Name: Welenc, Jan | AGE: 065Y  DOB: 02/02/1953(M) |
| GDI #: GRP4677 | Patient Phone #: 718-902-1098 |
| Study Date: 02/26/2018 | CPT Code: 73610 |
| Exam: XR RT ANKLE COMPLETE | Exam #: A5073668 |
| Physician: Salita, Andrzej | Physician Phone #: 718-389-8822 |
| 126 GREENPOINT AVENUE | |
| BROOKLYN, NY 11222 | |

FINAL REPORT

**HISTORY:** Pain

**PRIORS:**

**PROTOCOL:** A plain film examination of the right ankle was performed. Films were obtained in the AP, lateral and oblique projections.

**FINDINGS:**
There is no evidence of any acute fractures or dislocations. There deformity of the distal right fibula as a consequence of an old healed fracture. There narrowing of the tibiotalar joint with anterior and posterior osteophyte formation. There is no evidence of any calcaneal spurs.

**IMPRESSION**
**NO EVIDENCE OF ACUTE BONY PATHOLOGY**
**OLD DISTAL FIBULAR FRACTURE**
**DEGENERATIVE CHANGES AS DESCRIBED ABOVE**

Thank you for referring this patient to us for evaluation

Very truly yours,

Sheldon Feit MD
Electronically signed: 02/27/2018 12:36

This facsimile transmittal is intended only for use of the individual or entity to which it is addressed. It may contain Protected Health Information, which is privileged and confidential. Protected Health Information may only be used or disclosed in accordance with the law and you may be subject to penalties for improper use of further disclosure. If you are not the intended recipient, you may not read, copy, distribute or otherwise use or disclose the information contained in this transmission. If you received this transmission in error, please notify the sender immediately and request instruction on return or destruction of the transmission. DICOM images and results are available for review via our PACS system which may be accessed through http://personalhealthimaging.com

MRI  |  MRA  |  CT Scan  |  Ultrasound  |  X-Ray  |  Bone Density  |  Mammography

# AFTER VISIT SUMMARY



**Jan Welenc** Date of birth: 2/2/1953

📅 9/12/2018  📍 NYU Langone Orthopedic Hospital - Pre-Testing  📞 212-598-6176

## Instructions



### Discharge Instructions

**NYU LANGONE ORTHOPEDIC HOSPITAL**

**PRE-ADMISSION PATIENT INSTRUCTIONS-Same Day Discharge Program**

1. IF YOU GET A COLD, COUGH, OR ANY ILLNESS PRIOR TO YOUR DATE OF SURGERY, NOTIFY YOUR PHYSICIAN.

2. YOU ARE SCHEDULED TO ARRIVE FOR SURGERY ON (DATE) 09/24/18

   - **ON THE DAY OF YOUR SURGERY, PLEASE REPORT TO:**
     **THE ADMITTING OFFICE 301 E17th Street, NY NY 10003, 1ST FLOOR, ROOM 104. (THE HOSPITAL IS LOCATED ON THE CORNER OF 17TH STREET AND 2ND AVENUE).**
   - **YOU WILL RECEIVE A PHONE CALL FROM THE SURGERY CENTER on 09/21/18     (1 BUSINESS DAY PRIOR TO YOUR ELECTIVE SURGERY), BETWEEN THE HOURS OF 2PM AND 9PM.**
   - **IF YOUR SURGERY IS SCHEDULED ON A MONDAY, YOU WILL RECEIVE THE PERI-OPERATIVE PHONE CALL ON THE PRIOR FRIDAY.**

3. **DO NOT** EAT ANY FOOD OR CANDY AFTER MIDNIGHT ON (DATE) 09/23/18

4. BETWEEN THE HOURS OF MIDNIGHT, THE NIGHT BEFORE SURGERY, **UP UNTIL 2 HOURS BEFORE YOUR ARRIVAL TIME**, PLEASE DRINK 32 OUNCES OF GATORADE, G2 (LOW- SUGAR GATORADE) OR WATER.

   *DIABETIC PATIENTS: PLEASE DRINK G2 (LOW-SUGAR GATORADE) OR WATER
   *PLEASE DO NOT DRINK GATORADE OR WATER ON YOUR WAY TO THE HOSPITAL AS THIS MAY RESULT IN CANCELLATION OF YOUR PROCEDURE.

5. YOU MAY TAKE A SHOWER BUT DO NOT APPLY ANY OILS OR LOTIONS TO YOUR SKIN.

6. DO NOT BRING VALUABLES OR JEWELRY WITH YOU TO THE HOSPITAL

7. IF YOU WEAR CONTACT LENSES, YOU MUST BRING THE LENS CONTAINER WITH YOU ON THE DAY OF YOUR SURGERY/PROCEDURE.  YOU WILL NOT BE PERMITTED TO WEAR YOUR CONTACT LENSES TO THE OPERATING ROOM.

8. DO NOT WEAR MAKEUP OR NAIL POLISH.

9. WEAR LOOSE, COMFORTABLE CLOTHING AND LOW-HEELED SHOES.

10. ALL ADULT PATIENTS MUST HAVE A RESPONSIBLE ADULT ACCOMPANY THEM HOME AFTER RECOVERY FROM SURGERY.

11. IF YOU TAKE ANY MEDICATIONS PRESCRIBED BY A PHYSICIAN YOU MUST CONTACT THE SURGEON. YOU WILL BE INFORMED AS TO WHETHER OR NOT YOU CAN TAKE THOSE MEDICATIONS BEFORE SURGERY.

## HISTORY OF THE 100 MCGUINESS BLVD. HEADQUARTERS
## PREPARED BY PSFCU DIRECTORS LEON KOKOSZKA AND ZYGMUNT STASZEWSKI
## MARCH 1, 2014

### Purchase of 100 McGuinness Blvd:

In early 1996 Board of Directors of the PSFCU started looking for location of the administrative offices in Greenpoint. Property located at 100 McGuiness Blvd. owned by the American Legion was available. PSFCU retained Harold Weinberg Architect to assess the property from the architectural standpoint. The property was appraised by R.J. Sar Associates for $600,000 and by Volpe for $820,000. On 8/7/1996 a contract with American Legion was signed for $1,030,000. The property was purchased on 11/7/1996 by the PSFCU represented by Alex Malewski for total sum (all cost involved) of $1,054,965.

### Preliminary activities:

Preliminary plans were completed by Harold Weinberg Architect in October of 1996 (prior to closing). Sometime in 1997 NCUA requested a feasibility study for the building conversion to a local branch and Headquarters. It is unknown if such study was conducted.
On 10/24/2000 the existing property was appraised at $725,000, with assessed annual real estate taxes of $25,426.
On 10/24/2000 reconfiguration and redevelopment for the existing building (approx. 18,400 square feet total) was estimated for $1,940,000.

### Design Contest:

In 1997 the decision was made to convert this existing building into a PSCU branch. On 7/7/ 1997 PSFCU retained Kris Kozlowski Architect to perform the initial zoning analysis and preliminary design for $99,000 (with additional expenses to be billed at $75/hr. for an architect and $45/hr. for draftsperson). These documents were not available in 2014.
On 10/23/2001 PSFCU Chairman Bortnik recommended 4 Polish American Architects: Chris Kozlowski, Jerzy Lesniak, Tom Rybak and Bogdan Cybulski to prepare preliminary renderings for the building at a cost of $5,000 each.
On 4/25/2002 Architects presented their design concepts for review by the Board and Shareholders.
On 5/28/2002 Board chose Kozlowski and Cybulski as finalists, and asked to present cost proposals.
On 5/28/2002 at the Board meetings, a motion was made by Director Andrew Kaminski to select Mr. Kozlowski, the lowest bidder, as the design architect. That motion was seconded by Director Bozena Kaminski and did not carry. Another motion was made by Andrzej Olszewski, seconded by Bortnik to select Mr. Cybulski. During the discussion that followed, Board members requested verification of Mr. Cybulski's licenses and insurance policies. the It is unclear, from the available documents, if such verification was conducted and if the Board was aware that Mr. Cybulski was not licensed to work as an Architect in the State of New York. It also appears that his company, The Cybo Group, was not authorized by the New York State Education Department to perform architectural services.
On 6/18/2002 the Board voted to approve Mr. Cybulski as the Architect for the project.
On 3/13/2002 Cybulski submitted an AIA Contract B171 for design and construction stage services for 10% of the construction cost estimated at that time at $3,500,000 plus 8% of any additional costs above $3,500,000.
On 9/13/2002 a revised contract was issued by Cybulski, this time for 30,000 square foot building

and his fee based on 8% of the total construction cost.

On 9/24/2002 Law office of Malewski Malewski and Boccio reviewed the Cybulski contract, criticized that 85% of the cost was allocated to the design phases, and only 15% to bidding and construction phase. The law office recommended disapproval of the contact.

On 9/30/2002 Director Matyszczyk recommended conditional approval of the Cybulski contract.

On 10/11/2002 Cybulski contract was reviewed by a reputable law firm Schulte Roth & Zabel LLP. Many changes and riders were implemented, including compensation of 10% based on construction cost of $3,500,000, no markup on sub-consultants and a requirement that the Architect was obligated to provide a complete as-built set of plans in electronic AutoCAD format.

On 1/6/2003 a special Board meeting was held with the Architect. The Board approved the design that included an indoor garage, to be converted into a community room in the future.

Mr. Cybulski, estimated that the construction cost for a one story addition to the existing structure will be in the $3,500,000 range. Only then did the board decide to expand the building and a second version was created.

*Contractor selection process:*

It is unclear from the available documents why it was decided to go with a union contractor, which substantially increased the construction costs.

On 3/15/2003 Cybulski recommended 2 contractors: Lehr Construction and Christopher L. Cirgenski.

On 5/7/2003 Cybulski submitted a final list of bidders: Linmar, Lehr, Builders Group, RB Fries, New Ground Resources and Boileg Springs Corp.

It's also not clear how Mr. Cybulski came up with five original bidders and who invited them to bid this project.

In May 2003 bids for Design Option "B were submitted. Lehr Construction submitted a budget of $8,788,005, which included cost of a fire sprinkler system of $261,660 (never installed, but no credit was issued to the PSFCU). Ultra Construction submitted a budget of $7,000,000 plus P.M. cost of $519,000 plus taxes for a total of $7,791,500. Linmar submitted a budget of $3,932,000 + 24% for contingencies, fees and taxes for a total of $7,156,300. New Ground submitted a budget of $13,000,000 and Boiling Springs for $9,700,000.

On 5/27/2003 the Board decided to stop the bidding process due to the projected cost way over budget, and recommended hiring an independent consultant to become the Owner's Representative. It is unclear whether such consultant was retained.

On 7/3/2003 40% of the foundation was already completed, rebar inspected by an engineering firm retained by CYBO.

On 7/28/2003 three schematic design sets of drawings by CYBO Group (Options A, B and C) were distributed by B. Kaminski. It is unclear which set of design drawings was used for bidding.

On 8/26/2003 Option C was selected, which included addition on the south side of the existing building , including a 2,458 sq. ft. garage, for a total of 23,603 square feet.

On 10/15/2003 CYBO estimated the total construction cost for $5,200,000 and submitted a Change Order to CEO Sieminska for $170,000 (8% of the $1.7 mil. above the initial est. cost). Total fee by CYBO was then $486,000.

On 10/15/2003 Board approved Lehr Construction as a Construction Manager (C.M.). Lehr's C.M. contract sent to attorneys for review. On 11/14/2003 total cost of architectural services for Option C increased to $610,899.

On 12/18/2003 Board approved Lehr's contract. Although LEHR was not the lowest bidder (third out of five), they were awarded the contract.

On 2/20/2004 CYBO Group completed a preliminary set of architectural drawings (A-1 to A-48).

On 2/23/2004 Lehr's contract was executed, with a budget of $6,320,000. At that time CYBO completed only the 40% construction documentation; structural, mechanical, electrical, plumbing, fire protection drawings were not completed yet. It is unclear how the job was bid out and awarded based on the 40% drawings, without a complete set of engineering plans.

On 2/23/2004 Lehr presented the construction schedule: close-out on 12/31/2004 and move-in on 1/24/2005.

On 3/5/2004 CYBO Group completed the preliminary Site Plans (SA-01 to SA-04). Cader Engineering completed the preliminary Structural Drawings S-01 to S-07.

On 3/8/2004 Michael Murray PE of Fairlawn NJ completed the preliminary Plumbing Drawings P-1 to P-7, Mechanical M-1 to M-10 and Electrical E-1 to E-8.

On 3/17/2004 CEO Sieminska stated that a Performance Bond will cost additional $120,000. Lehr updated the cost for a 24,000 square foot building (Option C) to $7,500,000. Board approved the new budget. This excluded the soft costs, site construction to date, Performance Bond and contingencies, for a total of $9,300,000. This represented a $3 million increase from 2/24/04 to 3/17/04, supposedly due to increase of the material costs?

On 4/22/2004 Lehr submitted a revised project cost of $9,950,259, which included the C.M. fees of $961,333. This excluded furniture, security, data lines, computers etc.). Lehr claimed that after adding all bids from vendors and sub-contractors, it added up to $9,633,000. It is unclear whether anyone from the Credit Union actually reviewed these bids. At that time Lehr Construction proposed to convert the contract from a Construction Management contract (management fee + cost of all contractors) to a General Contractor contract (including everything) for a firm price of $9,633,000. Construction Management report dated 5/31/04 indicates form price of $7,988,000.

On 6/29/2004 the Building Construction Committee (K. Matyszczyk, J. Lesniak, K. Niebrzydowski and A. Kaminski) reported to the Board that Lehr is a Project Manager and General Contractor. Contract indicated that Lehr is not responsible for Certificate of Occupancy.

On 7/6/2004 construction permits were obtained from the NYC Department of Buildings (construction started on 6/14/2004).

7/27/2004 Construction/ Management report indicates projected completion date of 2/16/2005. J. Lesniak questioned the extremely high cost of the electrical installation (about $1,000,000), elimination of the sprinkler system without a credit, , excessive C.M cost and no bidding of trades. It appears that his comments were ignored.

On 8/19/2004 Department of Buildings approved the construction plans.

On 8/31/2004 Building Construction Committee (K. Matyszczyk, J. Lesniak, K. Niebrzydowski and A. Kaminski) met with Cybulski to discuss possible conversion of the garage into a community area. Also, a Change Order was submitted for $100,00 for substitution of fire dampers with NYC code mandated fire/smoke dampers.

On 10/26/2004 Lehr's new contract was reviewed by attorney and ready for signature. Projected date for Certificate of Occupancy 1/15/2005. CYBO costs $762,187.

On 10/31/2004 new contract with Lehr was signed. Board approved funding for 40 coats of arms.

On 11/24/04 framing was completed.

12/31/2004 construction report: use of kerosene heaters required due to cold weather, additional $200,000 in temporary heat cost. Conduit for ConEd service collapsed, new wiring in January 2005.

On 1/5/2005 a Temporary Certificate of Occupancy was obtained for floors 2 and 3.

On 1/31/2005 new ConEd service installed, still no DEP approval for sewage connection.

On 1/31/05 Roof and windows were installed. CYBO paid $784,437.50 to date, with balance of $5,562.50 in base fees plus 7% of the additional construction cost over $7 million. . Dept. of Environmental Protection did not approve proposed sewage connection; alternate design needed. Total est. cost $9,954,561, of which $790,000 in architectural fees).

2/28/2005 still using kerosene for temporary heating.

3/2/2005 obtained DEP approval for new sewage connection.

3/29/2005 TCO inspection anticipated for 4/29/05. Plans for the fire alarm not filed for yet. This will hold the TCO.

3/31/2005 Roof heating units operational, no more kerosene heating. CYBO and Lehr claim they are not responsible for Temp. Certificate of Occupancy (TCO).

4/18/2005 plans for the fire alarm filed with the Department of Buildings and Fire Department.

4/22/2005 Grand Opening.

4/30/2005 New sewage line connected to Norman Avenue.

5/3/2005 Fire alarm plans were approved (with help of ZS Engineering PC – an outside consultant).

7/5/2005 Fire Department inspection of the fire alarm system.

8/22/2005 Lehr reports that the Place of Assembly application is still open.

9/2/2005 Credit Union started using the building.

9/8/2005 CYBO was paid $846,240 to date.

10/3/2005 First Temporary Certificate of Occupancy was issued based on temporary certification of the fire alarm system by ZS Engineering. TCO was valid till 12/1/2005.

9/14/2006 Fire alarm system was finally signed off by the Fire Department.

11/14/2006 Final Certificate of Occupancy obtained from the Department of Buildings.

## Summary:

### Design phase:

It is unclear why Kris Kozlowski, the lowest bidder and a NY State Registered Architect with offices in Greenpoint, was not selected as the Architect of Record. Instead the Board chose Bogdan Cybulski of CYBO Group, who is not licensed for architectural services in New York and used another Registered Architect to sign and seal his plans.

The Architect fees were tied to the contractor price, which means that every time there was a change order the Architect's signature was needed and the architect's fee would go up as well.

There were additional provisions in the Architect's contract. Any time his services were needed during the construction, beyond his standard already allocated for construction administration, he would charge $150 per hour with a 5-hour minimum (most likely due to required travel time from New Jersey to the job site).

Furthermore, the design concept was changed several times at the Board's requests, which complicated the bidding process.

Contract with the Architect required most of the payments during the design stage and did not stipulate his responsibility for the Certificate of Occupancy, which is very unusual. Attorneys' recommendations were ignored.

### Construction Contract:

The contract was awarded before the preliminary architectural and engineering drawings were completed.

It is obvious that neither the Board nor the Management of our Credit Union fully understood the difference of the methods of delivery between the Construction Management vs the General Contractor (lump sum or maximum guarantee price).

We do not believe that the bid process was up to the industry standards. If this was GC delivery method, the bids should be received in sealed envelopes and opened in the presence of the architect and

owner's rep so that the process cannot be questioned. Any fees or general conditions should be included in the lump sum final price. If the system of delivery was construction management, the contractor is entitled to a fee (usually 6% of the total cost) and general condition to staff the job. In that method of delivery, all individual trades should have been awarded to the lowest bidder.

In the end, LEHR got the job by lowering the base price but increasing CM fees and general conditions allowance to very excessive 14% and 13%, respectively. The final price was $7,988.000 and was based on a 9 month construction schedule. That general conditions and CM fees were very high and calculated as the percentage of the final price and duration of the contract. The 9-month schedule was unrealistic from the start because a project of this magnitude could not be completed in 9 months.

**Construction Process:**

Most of the construction was conducted during the winter time. Due to the above, $200,000 was spent on kerosene heating, which was required due to a poor construction scheduling.

Change Orders added up to $869,124, which consists of 10.9% of the total construction cost. This is not considered too excessive. Some of the change orders were caused by design mistakes (use of fire dampers instead of fire/smoke dampers), but most were related to field conditions (sewage line relocation etc.).

Temporary Certificate of Occupancy was delayed because neither the Architect nor the G.C. felt it was their obligation to obtain it, and due to the fact that the fire alarm system was not designed and filed for in a timely fashion.

Enclosed is a detailed spreadsheet, which summarizes all purchase, design and construction costs, based on the information available to us on January 14, 2014.

Respectfully,

Leon Kokoszka Director
Zygmunt Staszewski Director



# KRZYSZTOF  MATYSZCZYK
**IN THE POST-WAR HISTORY OF POLISH EMIGRATION THERE WAS NOBODY WHO WOULD DO MORE HARM AND DAMAGE TO OUR ETHNIC GROUP THAN KRZYSZTOF MATYSZCZYK.**

**MATYSZCZYK  MUST BE IMMEDIATELY REMOVED FROM ALL POLISH STRUCTURES AND ORGANIZATION,** AS HE WORKS IN THE PLANNED AND PREMEDITATED MANNER LEADING THEM TO FALL AND AT HE SAME TIME HE ENRICHES HIMSELF PRIVATELY.  IN 1997 YEAR HE WAS ELECTED TO THE POLISH & SLAVIC FEDERAL CREDIT UNION BOARD OF DIRECTORS AFTER PRESENTING  A NUMBER OF PROMISES TO MEMBERS, INCLUDING  POSITIVE CHANGES IN BANK ACCOUNTS INTERESTS, AS WELL AS, ASSISTANCE AND FACILITATION TO OBTAIN LOANS. HE ALSO PROMISED TO MAKE POSITIVE CHANGES IN POLISH & SLAVIC CENTER, ORGANIZATION CAPTURED  BY KAMINSKY FAMILY.  HOWEVER,  IN REALITY, HE LIED TO MEMBERS AND HE CAUSED HUGE LOSSES.  HE EMPLOYED HIS INCOMPETENT COMRADES FOR EXECUTIVE POSITIONS, HE ARRANGED INEFFECTIVE EXPANSION OF PSFCU ACTIVITY TO OTHER STATES.  HIS SUSPICIOUS ACTIVITY CAUSED FEDERAL AGENCY TO APPOINT A SUPERVISORY COMMISSION TO CONTROL PSFCU.  AT HE SAME TIME HE ENRICHED HIMSELF PRIVATELY. IS IT POSSIBLE TO MAKE SUCH ENORMOUS PROFITS AS AN OWNER OF SMALL AGENCY DEALING WITH INCOME TAX SERVICES? HE CLAIMS HE HAS BEEN WORKING FOR FREE AS A VOLUNTEER FOR 17 YEARS.  UNFORTUNATELY,  HE REFUSES TO RESIGN AND HE IS NOT GOING TO EXPLAIN HOW MUCH MEMBERS' MONEY HE WASTED AND SPENT FOR HIMSELF.  THE FOLLOWING FACTS CAN ALSO BE AN EXAMPLE OF ABNORMITY IN PSFCU ACTIVITY:  IN THE LAST ELECTION THEY ACCEPTED  A PERSON WHO WAS PREVIOUSLY REMOVED FROM A POSITION IN PSFCU IN DISCIPLINARY WAY, AS WELL AS, ANOTHER ALIEN PERSON UNFAMILIAR TO POLISH COMMUNITY. DESPITE THE FACT THAT THEY DID NOT PRESENT THEIR PROGRAMS AND DID NOT TAKE ACTIVE PART IN ELECTION CAMPAIGN, BOTH WERE ELECTED. **WAS IT IN ACCORDANCE WITH JOSEPH STALIN SAYING: "IT IS NOT IMPORTANT WHO VOTES,  IT IS IMPORTANT WHO COUNTS VOTES?"**
- IN 1997 MATYSZCZYK BECAME MEMBER OF PSFCU  BOARD OF DIRECTORS THANKS TO MISINFORMATION CAMPAIGN.
- IN APRIL 1997 FEDERAL OFFICE OF NATIONAL CREDIT UNION ADMINISTRATION BEGAN INVESTIGATIONS OF PSFCU AUTHORITIES ACTIVITY, CAUSED BY MORE THAN 6,500 ILLEGAL TRANSFERS OF MONEY TO POLAND.  AT THIS TIME MATYSZCZYK WAS TREASURER OF PSFCU AND HE WAS RESPONSIBLE FOR THOSE ILLEGAL TRANSFERS.  MORE THAN $ 3 MLN WERE SPENT FOR NCUA INSPECTORS ACTIVITY IN PSFCU.

- RECEIVERSHIP ESTABLISHED BY NCUA REMOVED MATYSZCZYK AND HIS COMRADES FROM THEIR POSITIONS AS THEY WERE RESPONSIBLE FOR ILLEGAL OPERATIONS OF PSFCU.
- MATYSZCZYK AND LAWYER MARK ZAWISNY INITIATED A WHIP-ROUND TO COLLECT MONEY FOR "UNION DEFENSE" (IN FACT NOBODY KNOWS WHAT HAPPENED TO THAT MONEY). PSFCU AUTHORITIES SECRETLY HIRED A LAWYER TO PROTECT MATYSZCZYK AND LET HIM COME BACK RO BOARD OF DIRECTORS, USING MEMBERS' MONEY WITHOUT THEIR KNOWLEDGE.
- MATYSZCZYK LOST COURT CASE WITH BOZENA KAMINSKI FOR DISCLOSING HER SECRET PERSONAL INFORMATION AND PSFCU HAD TO SPEND $ 500,000 MEMBERS' MONEY FOR COMPENSATION.
- MATYSZCZYK SECRETLY AGREED TO CANCEL COURT CASE AGAINST BOZENA KAMINSKY WHO WAS ACCUSED FOR BREAKING THE STATUTE OF POLISH & SLAVIC CENTER. JURIDICAL EXPERTIZE THAT COST MEMBERS ABT. $ 30,000 WAS NOT USED AND IT WAS NEVER DISCLOSED TO PSFCU MEMBERS.
- PAUL SOSNOWSKI – A LAWYER WORKING FOR NCUA USED HIS INFORMAL INFLUENCE TO STOP INVESTIGATION IN PSFCU. LATER, SOSNOWSKI WAS FIRED FROM HIS POSITION BY NCUA DUE TO HIS "HELP" TO MATYSZCZYK. NEXT, MATYSZCZYK WHOSE POSITION AT PSFCU BOARD OF DIRECTORS WAS RESTORED, HIRED SOSNOWSKI AS PSFCU LAWYER REPAYING FOR HIS FAVOR. FACT THAT SOSNOWSKI HAD NEITHER NEW YORK NOR NEW JERSEY LAWYER LICENCE WAS IGNORED.
- NEXT, MATYSZCZYK CLIQUE HIRED BOGDAN CHMIELEWSKI AS CEO OF PSFCU. IT IS A KIND OF IRONY THAT EXECUTIVE WHO SUPPOSED TO MANAGE SUCH A BIG FINANCIAL ORGANIZATION (MORE THAN $ 1.5 BILLON ASSETS) HAS NO AMERICAN DIPLOMA BUT FINISHED ONLY MARXISM-LENINNISM ECONOMY DEPARTMENT IN COMMUNIST POLAND. ACCORDING TO THE SICK PRINCIPLE "MEDIOCRE BUT FAITHFUL" HE FOLLOWS ALL ORDERS IN FAVOR OF HIS COMRADES. AS A CONSEQUENCE PSFCU GIVES LOANS TO THEIR ACQUAINTANCES WHO OFTEN STOP REPAYING THE LOAN OR SUDDENLY DISAPPEARE.
- PSFCU MEMBERS IN NEW YORK ARE MORE AND MORE DISSATISFIED OF UNION MANAGED BY MATYSZCZYK AND START TO EXPRESS IT LOUDLY. MATYSZCZYK CLIQUE EXPANDED PSFCU ACTIVITY TO OTHER STATES TO GAIN MORE VOTERS UNAWARE OF THEIR DESTRUCTIVE BEHAVIOR WHO WILL VOTE FOR THEM IN THE FUTURE. FOR EXAMPLE, CHICAGO PSFCU BRANCH WAS DESTINED FOR LOSSES FROM THE BEGINNING AND IN FACT IT COSTS PSFCU ABT. $ 1 MLN PER YEAR IN DEBT BUT THAT EXPANSION GAVE THEM POSSIBLILTY TO OFFER NEW EXECUTIVE POSITIONS FOR THEIR COMRADES.
- CONSTRUCTION OF PSFCU GREENPOINT MAIN BRANCH COST $ 14 MLN, TWICE MORE THAN ORIGINALLY ESTIMATED. UNFORTUNATELY, PSFCU AUTHORITIES DENY TO DISCLOSE HOW THAT MONEY WAS SPENT. ESPECIALLY THAT BOSSES OF CONSTRUCTION COMPANY THAT IMPLEMENTED THIS PROJECT ARE NOW ARRESTED DUE TO FRAUDS COMMITED ON OTHER CONSTRUCTION SITES. SO, WHAT ABOUT PSFCU GREENPOINT BRANCH, IS IT THE SAME SITUATION?
- PSFCU BUILDING AT FAIRFIELD (NJ) LOCATED AT FLOODPLAIN ZONE WAS MUCH OVERPRICED ($ 18 MLN).
- MATYSZCZYK AND CURRENT PSFCU BOARD OF DIRECTORS ACCEPTED TAKING OUT A LOAN AMOUNTING TO $ 35 MLN BY CEO CHMIELEWSKI TO BALANCE DIFFERNCE BETWEEN MORTGAGE AND FINANCIAL CONTRIBUTIONS, ALBEIT MATYSZCZYK AND CHMIELEWSKI SOLD ALL MEMBERS LOANS. SO, IN FACT, PSFCU IS NOT ANY MORE OWNER OF LOANS BUT ONLY TAKES CARE ABOUT HANDLING OF LOANS.
- PSFCU MEMBERS USED TO VOTE FOR NEW PERSONS DURING EACH ELECTION WHO PROMISE CHANGE BUT UNFORTUNATELY USUALLY ONLY A NEW CLIQUE IS CREATED WHICH DOES NOT KEEP PROMISES GIVEN BEFORE ELECTION AS IN CASE OF MATYSZCZYK. PREVIOUS PSFCU BOARD OF DIRECTORS CHAIRMAN TOMASZ BORTNIK ALSO

PROMISED IMPROVING OF SITUATION IN PSFCU BUT HE ARRANGED ONLY SUCCESS PROPAGANDA CAMPAIGN WHEN CREDIT UNION PAID "A FEW CENTS" OF DIVIDENDS (THE FIRST TIME FROM 35 YEARS) TO MEMBERS) AND SUED ONE DEBTOR WHO DID NOT PAY A FEW MILLION DOLLARS LOAN (PSFCU v. GALDI). AFTER REMOVING OF INCOMPETENT CHMIELEWSKI HE HIRED HIS COMRADE A NEW CEO OSKAR MIELCZAREK. UNFORTUNATELY, SITUATION IN PSFCU DID NOT CHANGE FOR BETTER. ALSO A NEW BORTNIK CLIQUE STROVE TO WEAKEN AND IN THE END TO PRIVATIZE OUR CREDIT UNION.
- SO, NOW MATYSZCZYK AND ELZBIETA BAUMGARTNER INTRIGUED TO CALL A SPECIAL MEETING OF MEMBERS TO REHIRE CHMIELEWSKI (WHO TOOK $ 300,000 COMPENSATION MONEY FOR BEING REMOVED) AS CEO AGAIN AND TO ELIMINATE THEIR COMPETITORS. NOW, MATYSZCZYK DID NOT WANT TO BE RESPONSIBLE FOR THAT CHANGE SO HE USED MARZENA WIERZBOWSKA HIS PROTÉGÉ HE SUPPORTED - A NEW CHAIRPERSON - TO CALL SUCH SPECIAL MEETING  (WIERZBOWSKA WAS UNEMPLOYED FORMER POLISH & SLAVIC CENTER WORKER BEFORE).
- MIELCZAREK FIRED 22 PSFCU EMPLOYEES BUT MATYSZCZYK DID NOT DEFEND THEM. ONE OF THEM SUED PSFCU AND RECEIVED $ 100,000 COMPENSATION. OTHER GUYS AGREED TO RECEIVE A FEW THOUSAND COMPENSATION MONEY EACH AND SIGNED STATEMENTS  NOT TO SUE PSFCU.
- DURING SPECIAL MEETING OF MEMBERS BORTNIK CLIQUE WAS REMOVED FROM BOARD OF DIRECTORS AND SOON ALSO  MIELCZAREK CEO CONTRACT WAS TERMINATED. IN THE BEGINNING MIELCZAREK RECEIVED $ 300, 000 COMPENSATION BUT NEXT HE USED THIS MONEY TO HIRE A GOOD LAWYER WHO FILED A DISCRIMINATORY PRACTICE CASE AT COURT. AFRAID OF WINING CASE AT COURT BY MIELCZAREK, MARZENA WIERZBOWSKA SUPPORTED BY MATYSZCZYK ARRANGED SETTLEMENT WITH MIELCZAREK WHO AGREED TO WITHDRAW THE CASE FROM COURT FOR ABT. $ 1.5 MLN COMPENSATION PAID FROM MEMBERS MONEY. UNFORTUNATELY THIS INFORMATION WAS NOT DISCLOSED TO PSFCU MEMBERS.
- MATYSZCZYK TOOK NO STEPS TO RECLAIM $ 590 MLN MEMBERS MONEY INVESTED INTO FREDDIE MAC AND FANNIE MAE SCURITIES. INVESTOR RECEIVES ONLY 1.63%  INTEREST (TAKING INTO CONSIDERATION 4.5% INFLATION IT RESULTS IN ALMOST $ 10 MLN LOSS PER YEAR) AND WHAT MORE, THOSE COMPANIES HAVE NO GOVERNMENT GUARANTEES, DESPITE FALSE ASSURANCE MADE BY MATYSZCZYK CLIQUE TO NOT-AWARE MEMBERS. IRONICALLY, A PERSON SELLING THOSE SECURITIES EARNS HUGE MONEY BUT HE/SHE DID NOTHING TO SECURE OUR MONEY. MATYSZCZYK AND HIS CLIQUE IS AWARE THAT CREDIT UNION WAS CREATED AS NON-PROFIT ORGANIZATION TO OFFER CREDITS TO ITS MEMBERS BUT THEY DO NOT WANT POLISH MEMBERS TO GET RICHER.
- MATYSZCZYK SUPPORTS BOZENA KAMINSKI TO OBSTRUCT DEMOCRATIC ELECTION IN POLISH & SLAVIC CENTER BY TRANSFERRING MEMBERSHIP FEE MONEY TO PSC, DESPITE MEMBERS CLAIMS AND RESERVATIONS. KAMINSKA USES THAT MONEY TO HIRE TWO BIG LAW OFFICES TO PROTECT HER AGAINST MEMBERS WHO DEMAND FAIR AND DEMOCRATIC ELECTION. AS A CONSEQUENCE COURT REJECTS THIS CASE WITHOUT HEARING ALL THE TIME.
- MATYSZCZYK WAS A WINNER OF EVERY BALLOT FOR PSFCU BOARD OF DIRECTORS DESPITE FACT THAT HE NEVER CARED FOR  ELECTORAL CAMPAIGN AND HE DID NOT PRESENT  HIS ELECTION PROGRAM. HE NEVER ATTENDED  PSFCU MEMBERS MEETINGS AND HE CLEARLY AVOIDED CONTACTING PSFCU MEMBERS. BOARD OF DIRECTORS HIRES STILL THE SAME ACQUAINTANCE AGENCY FROM LONG ISLAND FOR COUNTING BALLOT VOTES AND PAY THEM TWICE MORE ($ 130,000) THAN REGULAR PRICE. THIS AGENCY  REFUSES DISCLOSING OF BALLOTS DOCUMENTATION, AS WELL AS, CHECKING ELECTION RESULTS BY COMMITTEE SET UP BY MEMBERS ALL THE TIME.
- IN 2013 MATYSZCZYK AND HIS CLIQUE SENT PROPOSAL TO NCUA TO CHANGE PSFCU BYLAW AND TO INCREASE NUMBER OF MEMBERS SIGNATURES, NECESSARY TO CALL A

SPECIAL MEMBERS MEETING,  FROM 750 TO 2,500.      THEY ARE AFRAID OF MEMBERS WHO FOR SURE COULD REMOVE THEM FROM BOARD OF DIRECTORS AND EVEN DEPRIVE THEM FROM PSFCU MEMBERSHIP. THEY WANT TO SECURE SECRETLY THEIR "VOLUNTEER POSITIONS" WHICH LET THEM GO AROUND THE WORLD AT MEMBERS COST.

## PSFCU MEMBERS!

**DO NOT LET MATYSZCZYK CLIQUE TO LIE TO YOU!**
**TELL ENOUGH IS ENOUGH TO COMMUNIST TROUBLERS?**
**LET CALL SPECIAL MEETING OF MEMBERS TO REMOVE**
**MATYSZCZYK FROM PSFCU BOARD OF DIRECTORS, AS WELL**
**AS,  DEPRIVE HIM FROM PSFCU MEMBERSHIP.**
**ENOUGH DAMAMGES AND LOSES HE CAUSED TO US AND OUR**
**ORGANIZATION.**

Jan Welenc                                                                    July 02, 2013

349 Ocean Pkwy. Apt 6C

Brooklyn, N.Y. 11218


Dear Members of the Board of Directors,

      Please find attached formal motions to the Board to implement changes in the Bylaws and procedures that are demanded by the members of the Polish and Slavic Federal Credit Union for very long time. These problematic issues were raised many times on annual and informational meetings, now is the time to finally address them. Implementing these changes is crucial for the welfare of our organization and benefit of the members.

Documents attached:

- Request to the Board of Directors to pass a motion at the next meeting to change the bylaws articles and eliminate Nominating Committee
- Request to the Board of Directors to pass a motion at the next meeting to change the articles of the bylaws pertaining to selecting Supervisory Committee. This Committee must be elected by the Union's members during the annual election.
- Request to the Board of Directors to pass a motion at the next meeting to change the election service company to conduct the next year election

Sincerely:

*Jan Welenc*

Jan Welenc

Sworn to before me
on July 02, 2013

*[signature]*

**ANNA M. LAROCCA**
**Notary Public State of New York**
**No. 01LA6095343**
**Qualified in Queens & Kings County**
**Commission Expires July 7, 2015**

July 02, 2013

## Wniosek do Rady Dyrektorów o podjęcie uchwały na najbliższym zebraniu o zmianę zapisów statutu i likwidację Komisji Nominacyjnej

My, niżej podpisani członkowie Polsko Słowiańskiej Unii Kredytowej żądamy od wybranych przez nas przedstawicieli w Radzie Dyrektorów PSFUK natychmiastowego podjęcia uchwały w drodze głosowania jawnego podczas najbliższego posiedzenia Rady Dyrektorów o zmianę zapisu w statucie dotyczącego powoływania Komisji Nominacyjnej. Żądamy, aby Komisja ta została całkowicie wyeliminowana, a wszyscy kandydaci do Rady Dyrektorów i komisji Nadzorczej zbierali podpisy członków pod petycją nominacyjną. Dotychczasowa nominacja przez Komisję Nominacyjną wybraną przez przewodniczącego Rady Dyrektorów jest nieuczciwością w stosunku do reszty kandydatów i jest reżimową metodą kontroli absolutnej, która w naszej organizacji musi być natychmiast zakończona.

**Żądamy natychmiastowego opublikowania wyniku głosowania nad tym wnioskiem z podaniem nazwisk Dyrektorów i jakie stanowisko zajęli w tej sprawie.**

## Request to the Board of Directors to pass a motion at the next meeting to change the bylaws articles and eliminate Nominating Committee

We, the undersigned members of the Polish Slavic Credit Union, demand from our elected representatives of the Board of Directors of the PSFCU for the immediate adoption of a motion by a vote at the next meeting of the Board of Directors on changing Bylaw's paragraph pertaining to selection of the Nominating Committee. We demand that this Committee is completely eliminated and all of the candidates for the Board of Directors and Supervisory Committee will have to collect member's signatures under petition for nomination. Until present, nomination by the Nominating Committee selected by the Chairperson of the Board of Directors, is not honest with the other candidates, is the regime method for absolute control and has to be ended immediately.

**We demand immediate publication of a vote on this motion with the names of the Directors and the position they have taken on the matter.**

- Jan Nelenc
- Zdzisław Kowalczyk
- Ireneusz Roszkowski
- Zofia Gala

July 01, 2013

**Wniosek do Rady Dyrektorów o podjęcie uchwały na najbliższym zebraniu o zmianę zapisów statutu dotyczących wyboru Komisji Nadzorczej. Członkowie tej Komisji muszą być wybierani przez członków Unii podczas corocznych wyborów.**

My, niżej podpisani członkowie Polsko Słowiańskiej Unii Kredytowej żądamy od wybranych przez nas przedstawicieli w Radzie Dyrektorów PSFUK natychmiastowego podjęcia uchwały w drodze głosowania jawnego podczas najbliższego posiedzenia Rady Dyrektorów o zmianę zapisu w statucie dotyczącego powoływania Komisji Nadzorczej. Żądamy, aby Komisja ta wybierana była przez członków Unii Kredytowej podczas wyborów podobnie jak członkowie Rady Dyrektorów. Obecnie, wybieranie przez Radę Dyrektorów Komisji, która ma nadzorować również pracę tej Rady jest w konflikcie interesu Unii Kredytowej i wbrew interesowi jej członków.

**Żądamy natychmiastowego opublikowania wyniku głosowania nad tym wnioskiem z podaniem nazwisk Dyrektorów i jakie stanowisko zajęli w tej sprawie.**

**Request to the Board of Directors to pass a motion at the next meeting to change the articles of the bylaws pertaining to selecting Supervisory Committee. This Committee must be elected by the Union's members during the annual election.**

We, the undersigned members of the Polish Slavic Credit Union, demand from our elected representatives of the Board of Directors of the PSFCU for the immediate adoption of a motion by a vote at the next meeting of the Board of Directors on changing Bylaw's paragraph pertaining to election of the Supervisory Committee. We demand that the Committee is elected by the Credit Union members during the election the same way as the Board of Director's members are elected. At present, electing by the Board of Directors the Committee, which is supposed to supervise the Board's work is in the conflict of interest for the Credit Union and against the interest of members.

**We demand immediate publication of a vote on this motion with the names of the Directors and the position they have taken on the matter.**

- Jan Welenc
- Zdzisław Kowalczuk
- Ireneusz Proszkowski
- Zofia Gola

July 01, 2013

**Wniosek do Rady Dyrektorów o podjęcie uchwały na najbliższym zebraniu o zmianę firmy prowadzącej przyszłoroczne wybory.**

My, niżej podpisani członkowie Polsko Słowiańskiej Unii Kredytowej żądamy od wybranych przez nas przedstawicieli w Radzie Dyrektorów PSFUK natychmiastowego podjęcia uchwały w drodze głosowania jawnego podczas najbliższego posiedzenia Rady Dyrektorów zmiany firmy mającej przeprowadzić przyszłoroczne wybory. Firma prowadząca wybory powinna być natychmiast zmieniona, aby wykluczyć jakiekolwiek podejrzenia o nieścisłości wyborcze.

Żądamy natychmiastowego opublikowania wyniku głosowania nad tym wnioskiem z podaniem nazwisk Dyrektorów i jakie stanowisko zajęli w tej sprawie.

**Request to the Board of Directors to pass a motion at the next meeting to change the election service company to conduct the next year election**

We, the undersigned members of the Polish Slavic Credit Union, demand from our elected representatives of the Board of Directors of the PSFCU for the immediate adoption of a motion by a vote at the next meeting of the Board of Directors to change the election service company to carry out next year's elections. The company conducting the elections should be immediately changed to exclude any suspicion of electoral inaccuracies.

**We demand the publication of a vote on this proposal with the names of the Directors and the position they have taken on the matter**

— Jan Welene
— Zdzisław Kowalczuk
— Ireneusz Rosikarli
— Zofia Gola

(10)

----- Original Message -----
From: Marzena Wojczulanis
Sent: Thursday, May 01, 2014 12:11 PM
To: Krzysztof Matyszczyk; Board Of Directors; Supervisory Committee; 'fkressman@ncua.gov'
<fkressman@ncua.gov>
Subject: PSFCU Board matters

This is the summary of my 2.5 yrs term as a member of this BoD.

I am ashamed of being associated as a part of this board with the 7 current directors including the
present chairperson Matyszczyk and additionally the former chairlady Wierzbowska who is now
a candidate.

I am disgusted by the lack of integrity from the SC Chairperson Wojnarowska and the entire
supervisory committee.

I am taken aback from the lack of respect from the senior management toward me and the 3 other
directors including the Treasurer. In disbelief I have been observing the various manipulation of
the facts by the CEO and his staff.

Since our chairman supposed to majored in history (although based on his lack of historical
knowledge and ignorance, I have serious doubts)- he is implementing the rules of deep
communism on this board.

Instead of presenting the members with the total comprehensive income that includes unrealized
gains and losses. This management is manipulating the numbers and painting the grass green by
presenting the board with the imaginary achievement of the CEO.

Please refer to the our financial report at the NCUA site....the grass is no longer green.

Please compare the bonuses, salary and the benefits from the last year and now.... It is interesting
that we have less employees but the number on salaries and bonuses is higher.

Please compare our mortgage lost with last year and now. See how many loans are still in
delinquency with no actions taken.

Please see the number of complains from our members that are being ignored by this board.

Apparently(?) all our BoD and SC members are fluent in English and finances, and they will
have no problem locating this financial report on the NCUA site (if course they haven't done that
yet)

I have heard many times on this board as the chairperson and his supporters referred to our
members as trouble makers, the street, uneducated group of screaming people and even the
terrorists.

I have heard as the vice chair Gradzki announced on this board that this is in her right to go to all this exotic trips paid by the members for her hard work on this board.

I have also witnessed as per our secretary Ms. Gradzki and our former Chairlady Ms. Wierzbowska, this CU lost millions of dollars.

A. Intentional manipulation of the minutes by both ladies causing the delay in the pension plan costing us enormous amount of money.
B. Firing Mr. Mielczarek by replacing him with Mr. Chmieleski during pending litigation all initiated by our former chairlady.
C. Not signing the release agreement with Mr. Mielczarek by the senior management and the chairlady allowing him to sue us.
D. Voting for the million of dollars settlement for Mr. Mielczarek and hiding the amount from the members and the board (the motion initiated by Ms. Gradzki).

I have witnessed manipulation of Mr. Chmielewski's contract, finalized by the members of the board without the quorum by the decision of the former chairlady with the full approval of the Supervisory Committee. Technically his contract is invalid and can be simply litigated in court by the members of the PSFCU.

I have witnessed and experience breaking of NCUA regulations by the chair Matyszczyk by not allowing the BoD members access to the information.

I have witnessed as he twice during two consecutive meetings  adjourned the meeting despise the protest of the other directors.
Mr. Matyszczyk abruptly ignored the items on the  agenda requested by me and the treasurer and closed the meeting despise that a director raised a point of order.

Although the report regarding the McGuinness branch building cost and discrepancy clarification was supposed to be presented to the board by directors Kokoszka and Staszewski, the chairman in a very disrespectful and unprofessional manner closed the meeting.
Again, the SC did not object.

This chairman has not only infringed the federal regulations but broke all the democratic rules.

I have witnessed how the supervisory committee supported this illegal behavior and did nothing to prevent his actions. On the contrary the chairman of this committee without any shame supported Mr. Matyszczyk.

I have witnessed how the management  with the chairman Matyszczyk had manipulated the board to approve the loans origination in North Florida, twisting the facts about the board approval for this action (there is no written record of such approval). This is why the chairperson Matyszczyk made the motion yesterday on April 30th to approve the management's action of originating the loans in North FL and CT  without any research and information that should be provided to the board. Despise these facts, the majority voted for it.

The management did not bother to do the homework in North Florida regarding the high cost of the insurance and the large number of foreclosure cases in that region.

I have also witnessed as the chairman and the supervisory committee refused the treasurer the access to information to clarify if the BoD members ever took any preferential rates on the mortgage which is against the federal regulations for the volunteers. This request was based on the members' several demands to verify this information.

Finally, the management admitted that the votes are being open as they arrive allowing these votes to be manipulated to their needs.
The majority of this board refused the motion that for the next election all the votes should be open at the end of election. The same board refused to have the outside committee made by members volunteers to verified the election.

Accordingly with the PSFCU Bylaws Article V. Elections, section 2 paragraphs 5: "The vote will be tallied by the tellers. The results must be verified at the annual meeting and the chair will make the result of the vote public at the annual meeting". Until now this paragraph was completely ignored by the Chair and the Board although the special meeting of 2012 was a precedence and the votes were counted at the meeting by the teller at the open forum.

None of the regulations in the Governance Policies, Bylaws or Election Procedures explain with details how the electronic vote is tallied, verified and conducted, and since this form of voting is permitted in the PSFCU election should be precisely prescribed and follow. Without it, the electronic vote is void and invalid since cannot be verified base on precise Bylaw's prescript_ion.

Now, I believe the members that the election is fixed and the votes are not counted honestly. Why else would this board put such opposition to our proposed motion and the members' committee, unless they have something to hide.

Unfortunately, since I don't believe that despise my strong support from the members I will be re-elected again because it is a common knowledge that this election is not honest and this board did nothing to discredit these allegations, but on the contrary voted against any methods of outside verification from our members to gain back the trust of our members.

I have been harassed by the management by sending me letters that my election is conducted in a violent way.

Since the chairperson refused to put the candidates' program on the election notes, the candidate must distribute their programs on the streets and by the branches. If there are any disturbance caused by the people distributing the election fliers, the board and the chairman is responsible for it via the decision to remove the election programs.

How can the members vote on the candidate not knowing his/her plan, unless the candidates are already picked and the election result is already set.

I am cc'ing the NCUA representative to respectfully remind them that the members of PSFCU provided this board with the executed motion for the NCUA to oversee the election process.

I would also like to thank the NCUA representatives for their advice and "apparent" interest on the issues I have presented to them. And I certainly hope they will conduct their fiduciary duties by monitoring the actions of this board and the senior management and if necessary take actions against this constant misdemeanors and infringement of the NCUA regulations.

I would like to thank Directors Staszewski, Kokoszka and Jakubowski for putting uneven fight among the group of people whose apparent personal gains made them forget about the true role of a director.

Thanks to 3 of you that despise the discrimination and harassment that was imposed on all of us by this board, current and present chairman, you kept you integrity and never forgot that we are here for the members who are the rightful owners of this institution.

I will published this letter among the members.

CC'd: Frank Kressman, Associate General Counsel
BC'd: NCUA and CU press

Sincerely,
Marzena Wojczulanis
CONFIDENTIALITY NOTICE: This e-mail, including attachments is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized copying, use, disclosure or distribution is prohibited if you are not the intended recipient. If you have received this e-mail in error please notify us immediately by reply e-mail then delete it from your system. Please note that any views or opinions presented in this e-mail are solely of the author and do not necessarily represent those of Polish & Slavic FCU. Although this message and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free, and no responsibility is accepted by this firm for any loss or damage arising in any way from its use.

**Subject:**  Fw: Special Meeting

**From:**  Marzena Wojczulanis (mwojczulanis@psfcu.net)

**To:**  mhacker13@yahoo.com;

**Date:**  Thursday, October 4, 2012 9:28 AM

Marzena Wojczulanis

----- Original Message -----
From: Mark [mailto:mwysocki@verizon.net]
Sent: Thursday, October 04, 2012 09:13 AM
To: Marzena Wierzbowska
Cc: Malgorzata Czajkowska; Malgorzata Gradzki; Marzena Wojczulanis; Krzysztof Matyszczyk; Kaja
Sawczuk; Iwona Podolak; Beata Klar-Jakubowski; Bozena Kajewska-Pielarz; Leon Kokoszka; Elzbieta
Baumgartner; Leon Fuks; Edward Pierwola; Anna Wojnarowska; EChmielewski@psfcu.net
<EChmielewski@psfcu.net>; Paul Sosnowski
Subject: RE: Special Meeting

Dear Mrs. Chairperson Wierzbowska,
As you know we try to meet with the members of the Board on several
occasions before petition's signatures were collected. First you've
organized informational meeting, where except you, only Mrs. Wojczulanis and
Mr. Fuks were present. Then we've organized two meetings, one in NJ and one
in Greenpoint's National Home. Only Mrs. Wojczulanis came to the meeting in
National Home. Meeting with the Board will not be possible since it was
scheduled on such a short notice. We would like to also inform you that we
are not representing the members who sign the petition so we cannot speak
for them and meet with the Board on behalf of them. Over two thousand
members signed the petition and all of them have a right to decide on the
issues concerning Special Meeting .We do believe that if you want to discuss
with the members issues pertaining to Special Meeting, the best way was to
call the informational meeting which is already long time overdue.
Since you were always declaring open dialog, cooperation with the members
and you were publicly condemning secrecy in the Board, we believed that we
can resolve the problematic issues without calling the Special Meeting.
Thanks to those declarations you've enjoyed great members' support. People
hoped that you could bring changes to our organization. On 06-28-2012,
during informational meeting instead of trying to resolve the issues thru
dialog you've suggested to collect signatures for the petition!? After this
meeting people from our group tried to contact you by phone, but what we
heard was only your voicemail. We were left with no choice but collecting
signatures for the Special Meeting. You, instead of trying to prevent it,
left for two months' vacation. Of course it is your private life and
decision, but you, as the volunteer took upon yourself great burden to lead
our Credit Union, and leaving organization for that long in such a distress
situation is irresponsible and should not be tolerated.
After you came back we were expecting you to call the informational meeting,

but you chose to hire the lawyer instead (in spite you were always condemning Mr. Bortnik for doing so ?!). You've publicly declared (Super Express) that you will support petition if NCUA would not have an issue with it. We were informed by the NCUA lawyer Mr. Cressman that NCUA will not intervene in this matter and is perfectly OK with petition in spite your lawyer had an issues with translation and last paragraph of the petition.
We were informed by NCUA that the Board of Directors can interpret thirty days from receiving the petition as thirty business days. In this case the Special Meeting should take a place on Sunday, October 21, 2012.
Since you are paying with the members money for the lawyer to represent you against the "Members Will" and probably getting ready to pay for the whole page announcement in polish newspapers (like Mr. Bortnik?) informing members of our organization that you cannot call the meeting because petition is defective base on translation and last paragraph, do not forget to add the main reason: that you would support the petition if Mr. Matyszczyk was not on it.
Regards,
Z Gola
J Guzik
J Czop
M Wysocki
Z Kowalczuk
R Ploszaj


-----Original Message-----
From: Marzena Wierzbowska [mailto:mwierzbowska@psfcu.net]
Sent: Tuesday, October 02, 2012 1:33 PM
To: Mark
Cc: Board Of Directors; Supervisory Committee
Subject: Special Meeting

Dear  Mrs Gola
        Mr. Guzik
        Mr. Czop
        Mr. Wysocki
        Mr. Kowalczuk
        Mr. Ploszaj,


Please be informed you are invited to a Special Meeting of the Board that will take a place on Thursday, October 4th, 2012 at 6:30 pm at 100 McGuinness Blvd. Brooklyn NY, 11222 to discuss Petition of the Members. We're looking forward to see you at the Meeting.

Regards,
Marzena Wierzbowska
Chairperson of the PSFCU

Sent from my iPad
CONFIDENTIALITY NOTICE: This e-mail, including attachments is intended only
for the person or entity to which it is addressed and may contain
confidential and/or privileged material. Any unauthorized copying, use,
disclosure or distribution is prohibited if you are not the intended
recipient. If you have received this e-mail in error please notify us
immediately by reply e-mail then delete it from your system. Please note
that any views or opinions presented in this e-mail are solely of the author
and do not necessarily represent those of Polish & Slavic FCU. Although this
message and any attachments are believed to be free of any virus or other
defect that might affect any computer system into which it is received and
opened, it is the responsibility of the recipient to ensure that it is virus
free, and no responsibility is accepted by this firm for any loss or damage
arising in any way from its use.

-----

No virus found in this message.
Checked by AVG - www.avg.com
Version: 2012.0.2221 / Virus Database: 2441/5304 - Release Date: 10/02/12

CONFIDENTIALITY NOTICE: This e-mail, including attachments is intended only
for the person or entity to which it is addressed and may contain
confidential and/or privileged material. Any unauthorized copying, use,
disclosure or distribution is prohibited if you are not the intended
recipient. If you have received this e-mail in error please notify us
immediately by reply e-mail then delete it from your system. Please note
that any views or opinions presented in this e-mail are solely of the author
and do not necessarily represent those of Polish & Slavic FCU. Although this
message and any attachments are believed to be free of any virus or other
defect that might affect any computer system into which it is received and
opened, it is the responsibility of the recipient to ensure that it is virus
free, and no responsibility is accepted by this firm for any loss or damage
arising in any way from its use.

 National Credit Union Administration
REGION I

February 27, 2014

Mr. Krzysztof Matyszczyk
Board Chairperson
Polish & Slavic Federal Credit Union
100 McGuinness Blvd.
Brooklyn, NY 11222

Dear Mr. Matyszczyk:

This is in reference to an email sent to Frank Kressman of the NCUA Office of General Counsel and other NCUA staff on January 29, 2014, by Polish & Slavic Federal Credit Union Board Member Marzena Wojczulanis. The email states Ms. Wojczulanis has requested information from you regarding the credit union which has not been provided. This is a reminder that you must follow all Bylaws of the credit union, including those regarding the availability of credit union records for board members who have a proper purpose for obtaining these records.

Field staff will review the additional information in the aforementioned email and take whatever action is deemed necessary at the next NCUA examination contact.

Sincerely,

L. J. Blankenberger
Regional Director

I/LAS:las DOS# 63360
22592-E09

cc:     Frank Kressman, Office of General Counsel
        Ms. Marzena Wojczulanis, Polish & Slavic FCU Board Member

## MESSAGE FOR THE MEMBERS OF POLISH & SLAVIC FEDERAL CREDIT UNION

*Letter of the Director Marzena Wojczulanis to members of PSFCU Board of Directors, dated 03/25/14*

Dear Members of PSFCU Board of Directors,

I appeal to all of you, as democratically elected representatives of our members, to respond immediately and to take actions in order to secure the upcoming election.  My requests that were previously addressed to Chairman Matyszczyk, were treated as usual in a cynical manner and downright insolent ignoring my demands as well as the demands of the PSFCU members. Because of this, any discussion with him I consider completely pointless. In accordance with the numerous demands from our members recurring over the years, and among them, the persons running for the election to the Board of Directors, we have to do everything to make sure that the upcoming election is conducted in a clear manner and complying with these demands.  As you know, I have proposed to create a membership committee to oversee election, as well as, to verify and to count the votes during the Annual General Meeting at the open forum.

As you know, the precedence was established during the Special Meeting in March 2012 that ought to be applied in the upcoming election.  These procedures ensure the transparency and impartiality of the election and will eventually cause the members to trust the results of the elections for the first time. Such committee must be composed of at least 9 people and these volunteers should be elected randomly from among our members.  To create such committee, its establishment should be immediately announced by the notices placed on the doors of all PSFCU branches and by placing ads in the Polish medias. The members of the committee will be randomly chosen with all our members present during the Election/information Meeting,  that must be called in the mid-April. These arbitrarily selected members will oversee the election process. Also such meeting will introduce to our members the running candidates and their electoral programs.

The original letter was written in Polish in order to be publicized among our members through newspapers and the flyers.  I certainly hope that all the members of the Board of Directors are unanimously supporting the impartial election process and will endorse my demands, and will  without any delay start the constructive process of the common action to secure the transparency of the election.

Please be also informed that I will inform the members of our organization which Director is willing to conduct the disguised election that is incompatible with the demands of our members, the rightful owners of PSFCU.

Sincerely,

Marzena Wojczulanis

PSFCU BoD Member

U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

**Hon. Jeff Sessions**
**Attorney General of the United States**

**Re: Complaint**

Dear Sir,

We, the undersigned members of two New York non-profit organizations Polish &
Slavic Federal Credit Union and Polish & Slavic Center would like to make a
complaint to the highest federal authorities against NYS Attorney General Eric
Schneiderman. NYS Attorney General was informed many times by members of
both non-profit organizations in writing (File # 2016-1319989) of massive
corruption, financial scams, cheating the tax authorities and reaping personal
financial benefits by directors who supposed to be volunteers to perform social
functions in both organizations for free. Directors of these organizations were often
acting against 86 thousand members, deliberately and consciously squandering
many millions of dollars. Unfortunately, NYS Attorney General did not take any
action to investigate these allegations. Instead, Mr Sneiderman sent all complaints
of PSFCU members to NCUA. NCUA office at Albany (NY) and  Executive
Director Mark A. Treichel at Alexandria (VA) were already repeatedly informed
about embezzlement of many millions of dollars of members of our Credit Union.
Unfortunately, all the information presented in the form of allegations and
evidence by representatives of PSFCU members was ignored by NCUA.

Let us specify some of the most drastic examples:

- Paying penalty in the amount of 3 million dollars for tax evasion;
- Investing of $ 600 million in shares of toxic company Freddie Mac. PSFCU
  Board of Directors falsely assured members that this money was safely
  invested because it was insured by the federal government.

- Paying about $25 million compensation for former PSFCU Executive Director Oskar Mielczarek because of wrongful dismissal from his post before the expiry of his term of office;
- PSFCU members suspect that Board of Directors broke the law by hiring again friend of Director Krzysztof Matyszczyk Bogdan Chmielewski to the position of CEO, who a few years ago was fired from this position and received a severance payment of 400 thousand dollars. There was a governmental agency investigation against him when formerly he was employed as a Vice President of Wawel Bank in New Jersey.
- Paying many millions of dollars financial compensation for discrimination to PSFCU employees as a result of a court judgment after they were illegally fired from their jobs.
- Board of Directors spent a huge members' money on senseless and unnecessary lawsuits and hiring attorneys. For example, they do not want to disclose to members of our Union what compensation was paid to former President of Polish & Slavic Center Bozena Kaminski for illegal disclosure of her social security number. Ms. Kaminski demanded $ 80 million compensation. They also do not want to disclose what sum was paid to former Director Krystyna Myssiura, who was illegally removed from her position in PSFCU.
- Members of our Credit Union do not understand why Board of Directors took a loan of $ 35 million in time when gains in the amount of 120 million dollars were not yet divided. PSFCU must bear costs in the amount of 1 million dollars of this loan.
- Redemption of million dollars loans granted by Board of Directors to their comrades without a thorough examination of their financial situation and next announcement of their bankruptcy. For example case of Ms. Galdi.
- For members of our Credit Union it is particularly important to examine business of Krzysztof Matyszczyk, who used his volunteer Director position for his private financial gains. He bought secretly homes on the foreclosure without informing of ordinary PSFCU members about such possibilities. To confuse traces he probably moved loans to other banks.
- Lack of control over distribution of hundreds of thousands of dollars to sponsors of PSFCU like Polish & Slavic Center and Polish Supplementary Schools Council. For example, case of Ms. Dorota Andraka, head of PSSC,

Case 1:18-cv-0951-CM-KNF Document 21 Filed 10/19/18 Page 95 of 166

who received 400 thousand dollars donation from the PSP and large amounts from Polish government, City of New York and other donors. Tax authorities are currently conducting investigation concerning her financial scams. Members of PSFCU are surprised that despite this situation, she was elected to the Nominating Committee in this year's election to the Board of Directors. There were also many complaints concerning financial misstatements made by the Director of Polish & Slavic Center Bozena Kaminski who receives $ 500 thousand each year to manage PSC.

- PSFCU members have been fighting for five years to convene a special meeting of members, during which Board of Directors would have to answer to the above allegations. Unfortunately, Board of Directors ignores both members' petitions and court judgment in this case.

- Just to avoid confrontation with Credit Union members and not to respond to any troublesome questions, Board of Directors does not want to convene an annual general meeting of PSFCU members in New York, where the most of members live, but it was choosing a distant difficult access locations (like at Clark, NJ) and renting small hall where it can accommodate less than 200 people. It is worth to mention that the hall at PSFCU headquarters in Greenpoint can accommodate more than 600 people.

- Suspicion of falsification of election to Board of Directors raises particular concern of our Union members. The same allegedly independent agency from Long Island deals with counting of votes in many years. This agency receives 100 thousand dollars for counting of votes during elections. Unfortunately, contrary to the provisions of Federal Credit Unions, counting of votes does not take place at a public meeting of members in the presence of which ballot envelopes should be opened. This situation creates a large field for falsification of election results.

- In fact, Director Krzysztof Matyszczyk, who has occupied this position for 20 years, decides who will be elected during the by-election to Board of Directors. This year he has already appointed the following persons, who for sure (in 99%) will sit on the new Board of Directors:

- 1. Malgorzata Gradzki – current Chairwoman of Board of Directors;
- 2. Marzena Wierzbowska – current Secretary of Board of Directors;
- 3. Ryszard Bak – current Treasurer of PSFCU;
- 4. Karol Kwiatkowski – son of former manager of PSFCU.

The above examples may indicate that we are dealing in PSFCU with a corrupt mafia-type system, which completely ignores opinion of members and deliberately works to their disadvantage for Directors' own benefit, contrary to democratic principles. Such a situation would not be possible if it attracted any attention of the federal authorities. Unfortunately, even Congresswoman from our district Mrs. Carolyn Maloney or NY Senator Chuck Schumer did not raise any interest in alarming situation in PSFCU.

Yours faithfully,

Jan Welenc (janwelz@wp.pl)

 349 Ocean Pkwy, # 6C
Brooklyn, NY 11218


Henryk Kwiatkowski  (henrykk@att.net)

5905  70th Avenue
Ridgewood, NY 11385


Jan Sidranski

188 Nassau Avenue
Brooklyn, NY 11222

Zofia Gola

148 Freeman Street, Apt. # 3R
Brooklyn, NY 11222



12/31/14

Office of Attorney General – Eric Schneiderman
The Capitol, Albany, NY 12224—0341

## RE: Complaint - Reporting of financial scams

We, members of Polish & Slavic Federal Credit Union, located at 100 McGuiness Blvd.,
Brooklyn, NY 11222, would like to inform governmental authorities about financial deception
and monkey business made by PSFCU Board of Directors under the leadership of their chieftain
President Krzysztof Matyszczyk.  PSFCU Directors, acting as volunteers, falsify elections and
make financial scams each year, hurting Credit Union members interests, as well, cheating
federal, state and city authorities.

PSFCU Directors extort craftily millions of dollars from our non-profit financial organization.
That money should be used instead to pay dividends and interest rates to PSFCU members. They
capture our hard earned savings to their private pockets as result of settlements made "under the
table." Some of them use their positions at Board of Directors to build their own businesses.
Such behavior means breaking of federal principles as volunteers cannot derive financial benefits
from their volunteering activities.

This refers especially to  President Krzysztof Matyszczyk who  have served various functions in
PSFCU for 17 years.  Several years ago, as PSFCU Treasurer, he exposed our financial
organization to $ 3 million penalty, due to illegal not taxed transfer of money abroad.  Another
former PSFCU Treasurer Mark Zawisny, lawyer by profession, was also involved in similar
financial scams and as a result his lawyer license was suspended.

We would like to inform you also about another financial deception of President Krzysztof
Matyszczyk. This time it's about the affair, concerning the construction costs for the PSFCU
headquarters, located at 100 McGuiness Blvd in Greenpoint, that have not been settled.
According to the initial estimation those costs were to be $ 7 mln but real costs skyrocketed to
more than $ 14 mln.  Two bosses of a construction company, hired to build PSFCU headquarter,
were arrested as a result of an investigation conducted by FBI.  Then, this investigation did not
include President Krzysztof Matyszczyk.  That's why we would like to report his involvement in
that financial deception to prosecution authorities now.

Let us present an example of another monkey business applied by PSFCU Board of Directors
and their boss President Krzysztof Matyszczyk for many years. Every 2 or 3 years they replaced
Executive Director who was on duty from his position before the expiration of his term at office
and they hired a new person for this position. Next, on the basis of mutual agreement, they paid a
huge compensation (usually a few hundred thousand dollars) to former CEO, dismissed from his
post.

Recently, it was the case of Oskar Mielczarek, former CEO, who received $ 300,000 compensation but before he left his office he took out some secret documents, discrediting current Board of Directors. Next, he filed a lawsuit at New Jersey Court, demanding additional 1 million dollars compensation for the alleged discrimination. In this case his blackmail worked as some members of Board of Directors, led at that time by Chairwoman Marzena Wierzbowska, agreed to settle the matter amicably. She paid individually more than $ 1 mln to Oskar Mielczarek, ignoring negative opinion of a few Directors who did not accept this settlement. Those minority directors were next barred from judicial affairs. Unfortunately, Chairwoman Marzena Wierzbowska informed neither insurance company CUNA, nor PSFCU members about that "under table" settlement.  As a result, Oskar Mielczarek received in total more than $ 1,5 mln compensation plus reimbursement of expenses of court and lawyer. They say it was the highest compensation received by anybody in history of American Credit Unions.

By this letter, we would like to ask prosecution authorities to investigate suspicious behavior of PSFCU Board of Directors in above case.  President Krzysztof Matyszczyk removed CEO Oskar Mielczarek from his post to free up space for his protégé Bogdan Chmielewski, causing high costs to PSFCU members. Let us disclose the following intriguing information. It turns out that Bogdan Chmielewski already served as a PSFCU Director a few years earlier and he was sacked without justification by then Board of Directors. Bogdan Chmielewski received $300,000 severance payment but Board of Directors was deprived of power by angry PSFCU members who took part in a special meeting on March 25th 2012.

In a similar way unknown sum of money was paid to Chairwoman of Polish & Slavic Center Bozena Kaminski (who initially demanded as much as $ 80 million compensation for alleged disclosing her secret data to a public), as well as, to a former member of the Board of Directors Krystyna Myssiura. All of the above compensations have been paid on the basis of secret and suspicious arrangements agreed "under the table" without the knowledge and consent of the members of the PSFCU and to their detriment.

We would like to mention that Bogdan Chmielewski already discredited himself as Vice-President of WAWEL Bank in New Jersey. The FBI conducted an investigation into the financial scam, that took place in this bank. According to the information, we have received from Director Zugmunt Staszewski and former Director Marzena Wojczulanis, his employment contract as CEO was not signed in accordance with the federal law and is in contrary to the interests of members.

We would like to recommend the following former Directors who are ready to testify in Court on scandalous case of Oskar Mielczarek who accused Board of Directors for alleged discrimination:

- Marek Wysocki (tel. 1-917-399-3465 & 1-212-203-6981);

- Marzena Wojczulanis  (tel. 1-917-593-5709)

Even so, above mentioned Directors were not allowed to participate in the main trial, they were able to inform PSFCU members what amount of compensation was demanded by Oskar Mielczarek in Court. Unfortunately, Director Staszewski was also complaining that President Krzysztof Matyszczyk refused to disclose to him some financial documents in the time when he was PSFCU Treasurer.

The next financial scams of Board of Directors, subordinated to President Krzysztof Matyszczyk, concerned "under table" purchase of building for PSFCU branch in Fairfield (NJ) for much overpaid amount of $ 18 mln, as well as, set tenders for PSFCU buildings renovations. For example, in some cases the real costs of renovation were 400% higher than initial estimation. It happened to renovation of PSFCU branch building, located at 140 Greenpoint Ave. in Brooklyn. Initially estimated costs amounting to $ 400,000 increased to $ 1,4 mln at the end of renovation. The same situation happened to cases of PSFCU building renovations, located at Maspeth (NY), Clifton (NJ) and Trenton (NJ) and it should be controlled by governmental building inspectors.

Huge financial losses are also caused by deceptions, concerning granting of financial loans. Board of Directors often granted "under table" millions dollars loans to their acquaintances for purchases of buildings or businesses. Next, those persons declared bankruptcy, causing big losses to PSFCU. Some of those buildings were soon purchased by President Krzysztof Matyszczyk and his buddies for much lower amount of money as so called foreclosure. Usually, regular PSFCU members have not been informed about such opportunity.

Now, it looks like there is another sort of scam. Member of PSFCU - Jozef Luczaj, on May 9th 2014 groundlessly, deceitfully and insolently filed lawsuit against PSFCU Board of Directors, demanding $ 4 mln compensation for so-called discrimination and ill-health. According to our well-founded opinion, Jozef Luczaj is in cahoots with President of PSFCU Board of Directors Krzysztof Matyszczyk. He is going to extort craftily millions of dollars from our non-profit financial organization. That money should be used instead to pay dividends and interest rates to PSFCU members. We are sure that President Krzysztof Matyszczyk will go for compromise at Court to pay amicably, let's say $ 2 mln to Jozef Luczaj. Then they will share this sum between each other. So, our money will go to their private pockets as result of settlement under the table. Such practice has already long been used by PSFCU Board of Directors, subordinated to President Krzysztof Matyszczyk, as we mentioned above.

We would like to draw attention of High Court to the fact that Jozef Luczaj for many years ran promotional campaigns for Krzysztof Matyszczyk as candidate for PSFCU Board of Directors during previous elections. During the last election, he distributed leaflets among PSFCU members, promoting comrades of Krzysztof Matyszczyk who won election. Next, he suddenly changed his mind and filed lawsuit against them. Such behavior is impudent, cynical and unreliable. This is suspicious that Jozef Luczaj who is a poor pensioner and does not speak English, could file his claim to the court so professionally written. For us it is obvious who sponsored him.

Many active members of PSFCU are concerned about such unhealthy situation in our non-profit financial organization and they demand calling of special meeting, according to federal law and Bylaw, to remove President Krzysztof Matyszczyk and some other members of Board of Directors, as their activity is detrimental to our Credit Union. Unfortunately, President Krzysztof Matyszczyk can use our PSFCU members money to hire lawyers to protect his interests. It's a kind of paradox and lack of equal treatment that, at the same time, regular PSFCU members must use their own out of pocket money to protect their interests but President Krzysztof Matyszczyk has unlimited access to the members' money to protect his private interests as volunteer. We suspect that Kings County Supreme Court Judge was manipulated by PSFCU lawyers as she has delayed ordering Board of Directors to convene special meeting of PSFCU members for one and half year already.

That's why we would like to ask federal prosecution authorities to investigate financial scams, committed by PSFCU Board of Directors and its President Krzysztof Matyszczyk. Especially that our previous complaints, we sent to Congresswoman Carolyn Maloney and NCUA, were ignored and we even have not received official confirmation they reached those federal authorities offices. We believe that both federal offices should be responsible for control of Credit Unions activity. Fact that 35 years ago there were 23,000 credit unions in USA and now only 6,000 should be alarming. Many credit unions were closed due to embezzlements, scams, corruption, etc. committed by their boards, directors and presidents.

We are surprised that NCUA, so far, focuses on the defense of the interests of directors rather than the interests of regular union members. For example, when we collected 750 signatures of PSFCU members for petition, necessary to call special meeting by Board of Directors in 2013 year, according to Bylaw principles, NCUA accepted Board proposal to increase number of necessary signatures to 2000 to protect volunteer directors' positions to make calling a special meeting more difficult.. And it happened in the time when this case was still in hands of the Court.

Another example of ignoring democracy and justice principles, as well as, the law is fact that NCUA let Board of Directors appoint members of Supervisory Committee to control the Board and its President activity. NCUA ignored proposal concerning selection of Committee members based on the choice of the PSFCU members.

We the undersigned members of Polish & Slavic Federal Credit Union are at the disposal of the Attorney General. Please, find attached documents supporting our request to investigate PSFCU Board of Directors and its President Krzysztof Matyszczyk who should incur the penalty for its scam operations hurting the union members interests.

Your faithfully,

1) JOE GUZIK
381 BURLINGTON RD
PARAMUS NJ 07652
Joe Guzik
201-262-1769

2/ JAN WELENC
349 OCEAN PKWY # 6C
Brooklyn NY 11218
347-455-7167
Jan Welenc

3) ELZBIETA TROCHIMOWICZ
341 E 70 str # 6E tel. 718-336-448
New York NY 10021 E. Trochim.

02/10/17

**The White House**
1600 Pennsylvania Avenue NW
Washington, DC 20500

**US President Donald Trump Office**

Dear Mr. President,

## C O M P L A I N T - RE: Case # 2015-10708 & 2016-02293  Supreme Court of the State of New York

We, the undersigned members of Polish & Slavic Federal Credit Union, located at 100 McGuinness Blvd., Brooklyn, NY 11222, would like to ask the highest authority of our country for help in the proceedings of the case described below.

Forty years ago, members of the Polish community in New York City founded financial non-profit organization under leadership of Father Longin Tolczyk in order to collect funds to help hard-working members in the purchase of houses, cars and other personal goods. PSFCU members worked out then the statute of Credit Union in accordance with federal law, on the basis of which they became co-owners of our financial institution. Our Credit Union is managed by volunteers directors elected by the members for a period of three years.

Unfortunately, volunteers directors, who supposed to perform their duties for free, endangered our union on a multimillion-dollar loss. Some of directors have presided at their stations for over twenty years.  The current management board with its ringleader Krzysztof Matyszczyk behaves like a thieving corrupt clique, fully utilizing social directorship functions to reap financial personal benefits and robbing members of the union under the table.

Such a sick situation would not be possible without falsification by-election results. According to provisions of the Statute, sealed envelopes with voices inside should be opened in public at the general meeting.  Ignoring this law creates situation when usually only about four thousand of members take part in voting with total number of eighty six thousand union members. Members of Credit

Union do not want to take part in voting because they are convinced that anyway election will be forged.

Besides, Board of Directors uses for their purposes teachers of Polish ethnic schools, which are sponsored by the PSFCU (about $ 200 thousand per year). Teachers give children a list with names of candidates to Board of Directors, for whom their parents should vote. Currently, FBI is conducting an investigation against schools headmistress Andraka who is charged with cheating the tax authorities and eventually appropriate a certain sum of money for private purposes.

Some time ago Board of Directors exposed members to pay several million dollars, concerning penalty for cheating IRS, as well as, for compensations paid to former Executive Directors. For example, $ 2 mln to Executive Director Oskar Mielczarek for premature releasing him from his post, against the Credit Union statute. This action was initiated by President Mielczarek, who wanted to hire his companion Bogdan Chmielewski for that position. It is noteworthy that similar compensation amounting to $ 400 thousand was already received by Chmielewski who was fired by previous Board of Directors.

Federal agency NCUA, which is responsible for supervising activity of Credit Unions was informed many times about bad management of PSFCU Board of Directors by regular members, as well as, by former Director Marzena Wojczulanis and former Treasurer Zygmunt Staszewski. Unfortunately, all those complaints and blames were ignored by NCUA authorities, appointed by former President Barak Obama government. It looks like this is one of the most corrupted government agencies in USA. 40 years ago there were 23 thousand Credit Unions in our country. Now, only 7 thousand remained. Most of them have been closed by courts due to corruption and embezzlement of members money.

PSFCU members are aware of pathology in management of our Credit Union, so they requested Board of Directors to convene a special meeting of members, in accordance with Statute rules. Because Board of Directors refused to call such a meeting, members reported the matter to be resolved by Court. After four years of waiting, in 2015 finally Judge Wavny Toussaint of Kings County Supreme Court issued a judgment, which states that Board of Directors should convene a special meeting of members.

Unfortunately, using illegally members money, Board of Directors hired a lawyer, who in its name appealed to the Court to defend their interests and positions. Appellate Division of Brooklyn Supreme Court of the State of New York approved this appeal in May 2016. PSFCU members feel humiliated and are outraged by this Court decision, which means permission to continue pathology in our financial institution which is managed by corrupt Board of Directors.

We believe that demanding for convening a special meeting is a prerogative of members of Credit Union and this is consistent with Union Statute. Court should not accept this appellation. Tricks of their legal counsel W. Cagney have not any legal justification. The above decision of the court is incomprehensible to members of the union who do not understand why the lawsuit and appeals take so much time. The law should be on the side of union members. Some of our members are beginning to doubt in the independence of some courts in our country, which citizens we are and which we respect.

We appreciate activity of New York State Governor Andrew Cuomo who appoints judges in our area. As former Attorney General of NY, he fought with financial crimes committed by various agencies against immigrants. Unfortunately, current NY Attorney General Eric Schneiderman has not taken any action in the explanation of financial allegations against PSFCU Board of Directors.

The same applies to Congresswoman Carolyn Maloney who should exercise control over credit unions in our district. Despite several complaints from PSFCU members she was not interested in reported abnormalities in our union. Lack of interest on the part of local politicians creates situation that Board of Directors feels unpunished and Union pathology continues.

Dear Mr. President Donald Trump,

Members of Polish & Slavic Federal Credit Union in New York hope and believe that your new administration and federal agencies will help us eradicate the pathologies in our Credit Union. Previous federal administration completely ignored our complaints, concerning this matter.

Yours faithfully,

**Jozef Guzik**

381 Burlington Rd., Paramus, NJ 07652

Tel. (201) 693-1664    joeguzik@gmail.com


**Henryk Kwiatkowski**

59-05  70th Avenue, Ridgewood, NY 11385

Tel. (917) 282-4020


**Krzysztof Wolniewicz**

3 Court Street, Staten Island, NY 10304

Tel. (646) 379-8712


**Zofia Gola**

148 Freeman Str., # 3R, Brooklyn, NY 11222

Tel. (718) 349-1917


**Jan Sidranski**

188 Nassau Ave., Brooklyn, NY 11222

Tel. (718) 938-5213

349 OCEAN PKWY #6C
Brooklyn NY 11218

02/10/17

The White House
1600 Pennsylvania Avenue NW
Washington, DC 20500

US President Donald Trump Office

Dear Mr. President,

## RE: Case # 2015-10708 & 2016-02293  Supreme Court of the State of New York

We, the undersigned members of Polish & Slavic Federal Credit Union, located at
100 McGuinness Blvd., Brooklyn, NY 11222, would like to ask the highest
authority of our country for help in the proceedings of the case described below.

Forty years ago, members of the Polish community in New York City founded
financial non-profit organization under leadership of Father Longin Tolczyk in
order to collect funds to help hard-working members in the purchase of houses,
cars and other personal goods. PSFCU members worked out then the statute of
Credit Union in accordance with federal law, on the basis of which they became
co-owners of our financial institution. Our Credit Union is managed by volunteers
directors elected by the members for a period of three years.

Unfortunately, volunteers directors, who supposed to perform their duties for free,
endangered our union on a multimillion-dollar loss. Some of directors have
presided at their stations for over twenty years.  The current management board
with its ringleader Krzysztof Matyszczyk behaves like a thieving corrupt clique,
fully utilizing social directorship functions to reap financial personal benefits and
robbing members of the union under the table.

Such a sick situation would not be possible without falsification by-election
results. According to provisions of the Statute, sealed envelopes with voices inside
should be opened in public at the general meeting.  Ignoring this law creates
situation when usually only about four thousand of members take part in voting
with total number of eighty six thousand union members. Members of Credit

Union do not want to take part in voting because they are convinced that anyway election will be forged.

Besides, Board of Directors uses for their purposes teachers of Polish ethnic schools, which are sponsored by the PSFCU (about $ 200 thousand per year). Teachers give children a list with names of candidates to Board of Directors, for whom their parents should vote. Currently, FBI is conducting an investigation against schools headmistress Andraka who is charged with cheating the tax authorities and eventually appropriate a certain sum of money for private purposes.

Some time ago Board of Directors exposed members to pay several million dollars, concerning penalty for cheating IRS, as well as, for compensations paid to former Executive Directors. For example, $ 2 mln to Executive Director Oskar Mielczarek for premature releasing him from his post, against the Credit Union statute. This action was initiated by President Mielczarek, who wanted to hire his companion Bogdan Chmielewski for that position.  It is noteworthy that similar compensation amounting to $ 400 thousand was already received by Chmielewski who was fired by previous Board of Directors.

Federal agency NCUA, which is responsible for supervising activity of Credit Unions was informed many times about bad management of PSFCU Board of Directors by regular members, as well as, by former Director Marzena Wojczulanis and former Treasurer Zygmunt Staszewski.  Unfortunately, all those complaints and blames were ignored by NCUA authorities, appointed by former President Barak Obama government.  It looks like this is one of the most corrupted government  agencies in USA. 40 years ago there were 23 thousand Credit Unions in our country. Now, only 7 thousand remained. Most of them have been closed by courts due to corruption and embezzlement of members money.

PSFCU members are aware of pathology in management of our Credit Union, so they requested Board of Directors to convene a special meeting of members, in accordance with Statute rules.  Because Board of Directors refused to call such a meeting, members reported the matter to be resolved by Court. After four years of waiting, in 2015 finally Judge Wavny Toussaint of Kings County Supreme Court issued a judgment, which states that  Board of Directors should convene a special meeting of members.

Unfortunately, using illegally members money, Board of Directors hired a lawyer, who in its name appealed to the Court to defend their interests and positions. Appellate Division of Brooklyn Supreme Court of the State of New York approved this appeal in May 2016. PSFCU members feel humiliated and are outraged by this Court decision, which means permission to continue pathology in our financial institution which is managed by corrupt Board of Directors.

We believe that demanding for convening a special meeting is a prerogative of members of Credit Union and this is consistent with Union Statute. Court should not accept this appellation. Tricks of their legal counsel W. Cagney have not any legal justification. The above decision of the court is incomprehensible to members of the union who do not understand why the lawsuit and appeals take so much time. The law should be on the side of union members. Some of our members are beginning to doubt in the independence of some courts in our country, which citizens we are and which we respect.

We appreciate activity of New York State Governor Andrew Cuomo who appoints judges in our area. As former Attorney General of NY, he fought with financial crimes committed by various agencies against immigrants. Unfortunately, current NY Attorney General Eric Schneiderman has not taken any action in the explanation of financial allegations against PSFCU Board of Directors.

The same applies to Congresswoman Carolyn Maloney who should exercise control over credit unions in our district. Despite several complaints from PSFCU members she was not interested in reported abnormalities in our union. Lack of interest on the part of local politicians creates situation that Board of Directors feels unpunished and Union pathology continues.

Dear Mr. President Donald Trump,

Members of Polish & Slavic Federal Credit Union in New York hope and believe that your new administration and federal agencies will help us eradicate the pathologies in our Credit Union. Previous federal administration completely ignored our complaints, concerning this matter.

Yours faithfully,

Please, find attached copies of the following documents:

- Kings County Supreme Court judgment;
- Allegations made by former PSFCU Directors (Zygmunt Staszewski, Leon Kokoszka, Marzena Wojczulanis);
- Complaint of former PSFCU Director Mark Wysocki;
- Petition of PSFCU members;
- Complaints and allegations of PSFCU members against Board of Directors;
- Complaint mailed to Congresswoman Carolyn Maloney;
- Complaint filed at NYS Attorney General Office;
- Complaint filed at NYC FBI Office.


## CC:

- Honorable Judge Randall T. Eng, Supreme Court, State of New York Appellate Division, Second Department
- Honorable Andrew M. Cuomo, Governor of New York **State**
- Office of NY Attorney General Eric Schneiderman
- Office of US Attorney General Bob Ferguson
- FBI NYC Office

10/18/14

Office of Congresswoman Carolyn Maloney
2308 Rayburn House Office Building
Washington, DC 20515-0001

Dear Congresswoman Carolyn Maloney

Open letter

Members of the Polish & Slavic Federal Credit Union are
disappointed and disgusted due to lack of Your reaction and
response to two complaints sent to Your Office on 11/10/2013
and 09/01/2014, concerning the activities of a felonious group in
the PSFCU Board of Directors in Brooklyn, New York, chaired
by the Director volunteer Krzysztof Matyszczyk.  All the time
he acts against members of the Union, and by the way against
the IRS.  More than 10 years ago, Mr. Krzysztof Matyszczyk
being the treasurer of the PSFCU has committed tax fraud, by
allowing the transfer of large amounts of money outside the
United States  within 6,500 transactions without taxation. He did
not suffer any responsibility in this respect  , but the members of
the Union have suffered on this account the costs, including
penalties  amounting to more than USD 3 million.

Inter alia, You as a Congresswoman are responsible for credit
unions, but You  have not taken any intervention in this case.  In
October 2013 You took part at the meeting of the PSFCU Board

of Directors Brooklyn (New York) together with NCUA Board Member Michael Fryzel, where you had the opportunity to watch the protest of Union members who gathered outside the PSFCU Headquarters at 100 McGuinness Blvd in Brooklyn. However, neither You as Congresswoman, nor Mr. Fryzel as a representative of NCUA have no interest in what is the main reason for the protest, although demonstrators scrawled visible from afar slogan on the banners, showing what was the main reason for their dissatisfaction.

We PSFCU members and owners have a long list of malicious activities of President of PSFCU Board of Directors, as well as some members of the NCUA like Michael Fryzel and Frank Kressman to our non-profit financial institution. We have evidence that all requests of members and independent directors like Marzena Wojczulanis and Marek Wysocki, sent to the NCUA, were ignored (copies of those letters are attached to this complaint).

In the time when the court considers the issue of convening a special meeting of PSFCU members, 07/26/2013 NCUA approved a proposal to increase the number of members' signatures for a petition to 2,000 of previously existing number of 750, at the request of the Board of Directors PSFCU. It was done illegally and with a vengeance to make it more difficult in the future for members to call a special meeting (proof is attached).

During the financial crisis in 2008, the Board of Directors and Audit Committee of PSFCU, at the request of NCUA, transferred USD 1.5 million of members' money to rescue one of the bankrupting credit union. Why that money was not returned to PSFCU accounts and who shared it?

The next financial scam, amounting to nearly USD 2 million, relates to dismissal of Oskar Mielczarek from office of Executive Director, one year and half ago by the PSFCU Board of Directors . As a result of this decision,  Mr. Mielczarek sued the entire Board of Directors for alleged discrimination and illegal dismissal. It should be noted that prior to submitting the case to the court Mr. Mielczarek  received a compensation payment of $ 300,000. However, while serving the function of Executive Director he  stole secret financial documents, which burdened the entire PSFCU Board of Directors and Audit Committee.  This was a kind of blackmail to extort from them more than USD 1.5 million of additional compensation.  The current Board of Directors did not report the matter to the insurance company. The former Chairwoman of the Board of Directors Marzena Wierzbowska, after approval of some members of the Board of Directors, agreed to a settlement and gave the desired amount to Mr. Mielczarek.  We would like to mention that regular compensation for dismissed Executive Directors was never higher than USD 300,000 before.

Krzysztof Matyszczyk, who as a volunteer has been  a member of PSFCU Board of Directors for 17 years, ordered the dismissal

of Oskar Mielczarek as Executive Director to give his position to his buddy Bogdan Chmielewski, who was dismissed by the previous Board of Directors and received USD 300,000 compensation check. Next, Bogdan Chmielewski was hired as Vice President of the  Wawel Bank in New Jersey where the FBI conducted against him investigation. Then Krzysztof Matyszczyk again appointed him to the position of Executive Director PSFCU.

Krzysztof Matyszczyk as a PSFCU Board of Directors Chairman  uses insolently his volunteer position  to increase his personal wealth by buying homes with the use of foreclosure, without informing the members of the Union of that fact. Every year the Union shall bear millions of losses due to the activity of inflate loans for homes and bankruptcy. Sharing obtained in this way money is the motive of mafia activity, involving the Board of Directors, its Chairman Krzysztof Matyszczyk and the Audit Committee, which is elected by the Board of Directors in such a way as to not exercise adequate control over its operations. After all, Krzysztof Matyszczyk has not created his wealth basing on his own insurance agency.

FBI led an investigation, concerning suspected irregularities during  the construction of the PSFCU building, located at 100 McGuinness Blvd.  As a result,  a few mafiosos  of the construction company went to a prison. The question is why Krzysztof Matyszczyk , who commissioned this firm to perform the project is still staying on the loose. The initial cost estimated

for that project amounted to USD 7 million but the actual cost turned out to be twice higher (about USD 14 million). A similar situation happened in Fairfield (NJ), where he purchased a building that was double overpaid and ultimately the total cost amounted to USD 18 million. Every year they carried out repairs of individual branches of PSFCU and cost estimates are generally crossed for double.

Each year PSFCU elections are falsified by their befriended agency from Long Island, hired to count the votes. Persons designated by Krzysztof Matyszczyk always win elections. After the recent elections, a member of the PSFCU Jozef Łuczaj, who was usually handsomely rewarded for agitation in favor of the favorites of Krzysztof Matyszczyk, sued the Board of Directors, demanding USD million compensation for the alleged discrimination. That mafia-like behavior of Board of Directors shows how calculating way is used in attempting to extort money from PSFCU by going on a settlement with the plaintiff in court.

For many years PSFCU Board of Directors with Chairman Krzysztof Matyszczyk treat union members as their enemies and especially those who expose corruption and a huge detriment to the Union and the IRS. The Board of Directors and the NCUA are obliged to respect the rights of members, contained in the bylaw and federal law. Paradoxically, in a democratic country bylaw of our non-for-profit organization, as

well as, many amendments were enacted without the participation of members (evidence is enclosed to our letter).

We, members of PSFCU, cannot be incapacitated or intimidated in a situation when our dignity is violated. For example, we brought the case to court in Brooklyn to order calling of a special meeting of members, when it was ignored by Board of Directors and Audit Committee of the Union. Board of Directors through their lawyer, paid for members' money, tried to intimidate one of the members, who is involved in the court affair on the convening of a special meeting of our financial organization numbering to 85,000 members.

These financial scams at PSFCU could occur, among other things, because there was a lack of interest and willingness to cooperate on the part of NCUA high-ranking officials such as the NCUA General Counsel Frank Kressman and NCUA Board Member Michael Fryzel who supervised all Credit Unions in the USA.

This mob with Krzysztof Matyszczyk on the head, who ruled for years PSFCU was deliberately breaking the law in order to defend their own financial and material gain, acquired illegally from our non-for-profit organization. They should be put before the Supreme Court, so that justice is done, what we the undersigned members of the PSFCU are turning to the federal authorities.

Simultaneously, we turn to Congresswoman Carolyn Maloney, as our representative in Congress, which creates rights and exercise control over credit unions to take appropriate action, which would prevent that credit unions do not fall into the hands of the mob as it is now in our PSFCU.

Copy of this letter is sent to:

- White House Office of the President Barak Obama;

- Department of Justice;

- Attorney General;

- FBI Headquarters ;

- Internal Revenue Service;

- US Senate Committee on Finance

- NY Times – Investigative Staff

- NY Post – Investigative Staff

- NY Daily News – Investigative Staff

Sincerely, members of Polish & Slavic Federal Credit union:

1.  Zofia Gola (148 Freeman Str., # 3R, Brooklyn, NY 11222)

    *Zofia Gola*

2.  Jozef Guzik  (381 Burlington Rd., Paramus, N.J. 07652

    *Jozef Guzik*

    (tel.     1-201-693-1664)

3.  Roman Ploszaj  (2151 – 35 Ave. # 1D, Astoria, NY 11106

    *Roman Ploszaj*

4.  Jan Welenc  (349 Ocean Pkwy, # 6C, Brooklyn, NY 11218

    *Jan welenc*

5. Elzbieta Trochimowicz (341 E. 70 Street, # 6E, Manhattan, New York

    *Elzbieta Trochimowicz.*

6. Marek Wysocki  (tel.      1-917-399-3465,      1-212-203-6981)

    *MARK WYSOCKI*

# CERTIFICATE OF APPROVAL OF AMENDMENT TO BYLAWS

Polish and Slavic Federal Credit Union
Charter No. 22592

**WHEREAS,** formal request has been submitted by the officials of the Federal credit union that the following amendment of its bylaws be approved:

**Article IV, Section 3.** of the bylaws shall be amended to read as follows:

**Section 3. Special Meetings.** Special meetings of members may be called by the chair or the board upon majority vote, or by the supervisory committee as provided by these bylaws. The chair must call a special meeting, meaning the meeting must be held, within 30 days of the receipt of a written request of 2,000 members.

AND WHEREAS, the amendment is in the best interests of the members and is not inconsistent with Law, NOW, THEREFORE, pursuant to the provisions of the Federal Credit Union Act, the foregoing submitted amendment of the bylaws of the above Federal credit union is hereby approved this 26th day of July 2013, subject to adoption by the board of directors in accordance with the Federal Credit Union Bylaws.

Gail W. Laster
Director
Office of Consumer Protection

At a meeting held on _May 29th, 2013_ the above amendment to the bylaws was adopted by the board of directors in accordance with the Federal Credit Union Bylaws.

Presiding Officer                              Secretary

 National Credit Union Administration

July 26, 2013

Ms. Krzysztof Matyszczyk
Chairperson
Polish and Slavic Federal Credit Union
100 McGuinness Blvd.
Brooklyn, NY 11222

Dear Ms. Matyszczyk:

The bylaw amendment you requested has been approved. The enclosed amendment must be adopted in accordance with the instructions provided and must not be altered in any way. The following actions are required for the amendment to become effective:

- Adopt the amendment at a meeting held in accordance with the bylaws;

- Ensure the appropriate officers sign and date the CERTIFICATE OF APPROVAL OF AMENDMENT TO BYLAWS in the proper place; and

- File the completed certification form with the credit union's official bylaws. You do not need to forward a copy to NCUA.

If you have any questions, please contact Consumer Access Analyst Susan Ryan at (703) 664-3957.

Sincerely,

Gail W. Laster
Director
Office of Consumer Protection

Enclosure

OCP/SMR:smr
SSIC 6100
FCU 22592-E03

cc:    Office of General Counsel
       NCUA Region I
       Supervisor Examiner Roy Gray
       District Examiner Thomas LoGiudice
       Consumer Access Analyst Susan Ryan

03/16/17

National Credit Union Administration
Office of Inspector General
P.O. Box 25705
Alexandria, VA 22313-5705

Attn. Mr. James Hagen

**RE: Annual meeting of PSFCU and election procedures**

Dear Sir,

With reference to Notice of Annual Meeting of PSFCU and Election Procedures,
we the undersigned members of Polish & Slavic Federal Credit Union would like
to draw your attention to suspicious irregularities in conduct of elections to Board
of Directors.  For many years, in every election only candidates nominated by
Director Krzysztof Matyszczyk were winners.  Krzysztof Matyszczyk who sits on
the Board of Directors for several years, behaves like a mob boss, who subjugated
Board of Directors and the whole PSFCU.  Also in this year's elections, those
candidates will be victorious, whom he appointed, like Ryszard Bak, Malgorzata
Gradzki, Karol Kwiatkowski, Marzena Wierzbowska.

Many members of PSFCU suspect that such a sick situation would not be possible
without falsification by-election results.  This suspicion discourages Union
members to participate in elections. Usually, only about four thousand members
take part in voting with total number of eighty six thousand Union members. The
same allegedly independent agency from Long Island deals with counting of votes
in many years. This agency receives about 100 thousand dollars for counting of
votes during elections.  Unfortunately, opening envelopes with ballots and counting
of votes takes place in their office instead of public place during the general
meeting of members.  Such procedure creates a large field for falsification of
election results.

Taking into consideration above observations we would like to ask NCUA for
supervising this year's election, and especially careful control of counting votes.
Opening envelopes with ballots should be held in public during the meeting with

presence of members of the Union. We would like to emphasize that such procedure was used during special meeting of PSFCU members in March 2012, when a few Directors, who acted to the detriment of the union, were removed from their positions as a result of secret voting.

Yours faithfully,

*Jozef Guzik*

381 Burlington Rd., Paramus, NJ 07652

Tel. (201) 693-1664   joeguzik@gmail.com

*Zofia Gola*

148 Freeman Str., # 3R, Brooklyn, NY 11222

Tel. (718) 349-1917

*Jan Sidranski*

188 Nassau Ave., Brooklyn, NY 11222

Tel. (718) 938-5213

*Jan Welenc*

349 Ocean Pkwy, # 6C, Brooklyn, NY 11218

Tel. (646) 806-3857   janwelz@wp.pl

*Witold Rosowski* (kontakt@solidarni2010.pl0

List of 200 PSFCU members who signed petition, concerning public counting of voices during general meeting is attached.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

-------------------------------------------------------------X

JAN WELENC AND ERIK ROSZ KOWSKI

INDEX NO. 12933/13

-------------------------------------------------------------
Plaintiff/Pétitioner

Part 130 Certification/
Legal Back

-against-

THE BOARD DIRECTORS OF POLISH
AND FEDERAL CREDIT UNION

-------------------------------------------------------------
Defendant/Respondent

-------------------------------------------------------------X

**To the best of my knowledge, information and belief,
formed after an inquiry reasonable under the circumstances,
the presentation of these papers or the contentions therein
are not frivolous as defined in subsection (c) of section
130-1.1 of the Rules of the Chief Administrator (22NYCRR)**

Sign name: _Leon Kucaj_

Print name: _LEON KUCAY_

Address: _21-20 34th Ave_

_Long Isl. City N.Y. 11106_

Telephone _917 969~3039_

LEON KUCAY
_____ being duly sworn, hereby deposes and says:

From its inception over forty years ago, all meetings, including special meetings of the Polish and Slavic Federal Credit Union's membership, have taken place on Saturdays or Sundays. This includes the special meeting that occurred in March of 2012 in Greenpoint, Brooklyn. Never has a meeting been held during the week.

I, like many PSFCU members, work in the afternoons or have other commitments and given the extremely short notice, I received a notice in the mail on August 22, 2018, I will not have the opportunity to appear at the meeting and be heard. Simply put, one week's notice for a meeting to take place during the week is not acceptable. Although this may be allowed by the PSFCU's by-laws, the intention of those by-laws, as with every organization's by-laws, is the protection of the rights of its members and to prevent abuses by the organization's leadership. Furthermore, the specific intention of the by-law allowing a meeting to be called within seven days is to allow PSFCU leadership to call a meeting required for an emergent matter, rather than calling a meeting to ambush activist membership. It is not a coincidence that a meeting to remove five current and former PSFCU Board Members from their leadership positions and the membership rolls of the PSFCU has for the first time in over forty years been held on a weekday.

Over 2,000 signatures of PSFCU members were gathered in 2012 in support of the special meeting for the removal of certain Board Members. Allowing the Board to hold the special meeting on August 28, 2018, with so short a notice and at such an inconvenient time and location (indeed the vast majority of PSFCU members live in Greenpoint, Brooklyn, New York) would severely prejudice PSFCU membership and their ability to hold their leadership accountable to any degree. Actions by the Board such as this one are part of the very essence that PSFCU membership ultimately decided to hold such a meeting.

Furthermore, a meeting at seven p.m., severely limits the ability of a vast majority of PSFCU membership to attend, as at least half of the members reside in New York State and would be forced to travel a long distance in rush hour traffic. Additionally, the seven p.m. meeting time does not provide a sufficient amount of time for due process to occur regarding the removal of five certain individuals. Those individuals are entitled to a length of time so that each removal vote can

be given the proper attention it deserves. Each vote should be debated extensively, with the individual at issue also given time to be heard and respond to arguments for removal. A meeting at seven p.m. would prejudice not only PSFCU membership but the individuals who are up for removal. Actions by the Board such as this one are part of the very essence that PSFCU membership ultimately decided to hold such a meeting.

This is not an emergent matter, quite the contrary, this matter has been litigated for over five years as evidenced by the 2013 New York Supreme Court Docket Number. Although, PSFCU members have been very eager to hold this meeting since 2012, as Board has sought to delay the matter in litigation as long as possible, finally at a time when the litigation is coming to a close, as the Board is about to exhaust its last possible avenue of appeal, the Board has sought to take the decision away from the Courts by holding a sham meeting. As directed by Judge Wavny Toussaint, the original trial judge in this matter, after input from PSFCU membership regarding the location, date and time, the Board is to provide PSFCU membership with at minimum sixty days' notice of the special meeting through multiple media formats such as regular mail, email, conspicuous notices posted at branches, ATM's and on the website.

Ultimately, the meeting should be held where the PSFCU was born, and where the vast majority of its membership resides, Greenpoint, Brooklyn. It's understandable that the Board may be hesitant to do so as during the last special meeting in March of 2012, held in Greenpoint, PSFCU membership approved the removal of four directors. Corrupt individuals will go to any length to stay in a position of power. As such, I implore this Honorable Court to order that a special meeting not be held on August 28, 2018 or any other date with the proper process having been undertaken to ensure that each PSFCU member is given their due process.

WHEREFORE, THE UNDERSIGNED RESPECTFULLY REQUESTS THE WITHIN MOTION BE DENIED.

_Leon Lucay_

Signature

Sworn to before me this _24_ day of _August_ 20 _18_

_Wieslaw Komosinski_
Notary Public/Court Employee

State of:  NEW YORK
County of:  KINGS

WIESLAW KOMOSINSKI
Notary Public - State of New York
No. 01KO6137712
Qualified in Queens County
My Commission Expires December 5, 20 _21_

 ———— National Credit Union Administration ————

**Office of Inspector General**

May 5, 2017

Mr. Jan Welenc
349 Ocean Parkway #6C
Brooklyn, NY 11218

Dear Mr. Welenc:

This is to confirm receipt of your letter dated March 16, 2017, to the National Credit Union Administration (NCUA) Office of Inspector General (OIG) requesting NCUA supervision of the Polish & Slavic Federal Credit Union (PSFCU) board election process.

NCUA OIG does not have statutory jurisdiction over this matter. However, we have referred your letter and the attached member petition to the appropriate NCUA Regional Office for their information and consideration.

If you have further questions or concerns regarding PSFCU, you may contact the NCUA Consumer Assistance Center at:

>   National Credit Union Administration
>   Office of Consumer Financial Protection and Access
>   1775 Duke St.
>   Alexandria, VA 22314
>
>   NCUA Consumer Assistance Center
>   Phone: 800-755-1030 (toll-free)
>   E-mail: consumerassistance@ncua.gov
>   Website: www.mycreditunion.gov

Sincerely,

James W. Hagen
Inspector General

 National Credit Union Administration
Office of Consumer Financial Protection and Access

April 17, 2017

Ms. Jan Welenc
349 Ocean Pkwy. #6C
Brooklyn, NY 11218

Dear Ms. Welenc:

We are writing in response to your letter addressed to Attorney General Eric T. Schneiderman received on February 6, 2017, and subsequently forwarded to the National Credit Union Administration.

We appreciate being alerted to these matters. We have shared your concerns with our field staff who will be reviewing the issues you raised as part of the supervision process. Due to the sensitive and confidential nature of the examination process, please understand that we will be unable to share the results of our investigation with you.

We also noted that your letter brings up the issue of a request to convene a special meeting of the Polish & Slavic Federal Credit Union members. Our understanding is that this remains a matter before the New York State Supreme Court. Consistent with our prior correspondence, it is not within the purview of the National Credit Union Administration to become involved in litigation between members and their credit unions. Any determination handed down by the courts will supersede potential action from this office.

We will monitor future events as they unfold and will take appropriate action if deemed necessary. This will be our final correspondence with you concerning these matters.

Sincerely,

*Gail W. Laster*

Gail W. Laster
Director

OCFPA/PMD:pmd
FCU 22592 – E10

cc:   L.J. Blankenberger, Regional Director, NCUA
      Roy Gray, Supervisory Examiner, NCUA
      David Benoit, District Examiner, NCUA
      Paul Dibble, Consumer Access Analyst, NCUA

STATEMENT OF GROUP OF PSFCU MEMBERS TO THE
PSFCU BOARD OF DIRECTORS AND SUPERVISORY
COMMITTEE

We below signed members of PSFCU, located at 100 McGuinness
Blvd in Brooklyn, categorically ask PSFCU Board of Directors to
revoke the special meeting of PSFCU members, which was
released on 08/28/2018 at 07:00 PM by the Board of Directors.

REASONS:

1. Calling today a special meeting of PSFCU members by the
   Board of Directors at Fairfield NJ, which was ordered by the
   NYS Supreme Court, violates the statutory rights and the
   second amendment to the US Constitution, which guarantees
   the participation of members in the vote.
2. Many PSFCU members received a special meeting
   notification only 3 to 5 days before the date of meeting. The
   Union Statute guarantees that this information will be
   received 7 days before the special meeting of members.
3. Date 08/20/2018 on the notice already shows that all letters
   have been delayed by one day and members from distant
   destinations like Chicago, Copiague, Florida and others have
   received this information with even more delay. The
   aforementioned cases show that the statutory 7-day deadline
   for delivering letters to members has not been met.
4. For many years, Board of Directors has informed members
   about annual reporting and electoral meetings by sending
   letters one month in advance and placing information on
   entry doors of all branches of the Credit Union, as well as
   announcing such information in Polonia press.
5. In the case of current calling of the special meeting of
   PSFCU members, there was no this kind of important
   information, because Board of Directors wanted to limit



Received 8/29/2018   A Pytlak COO, Board & Staff FCU

Nowy Jork, 08/28/2018

OŚWIADCZENIE GRUPY CZŁONKÓW FSFCU DO RADY
DYREKTORÓW I KOMISJI REWIZYJNEJ:

My poniżej podpisani członkowie PSFCU zlokalizowanej na 100
McGuinness Blvd na Brooklynie w sposób kategoryczny żądamy od
Rady Dyrektorów PSFUC unieważnienia w dniu dzisiejszym tj.
08/28/2018 o godz. 7:00 wieczorem zebrania specjalnego dla członków
przez Radę i Dyrektorów Unii Kredytowej.

UZASADNIENIE:

1. Zwołane zebranie specjalne w dniu dzisiejszym w Fairfield NJ przez
   Radę PSFCU dla członków nakazanego przez Sąd Najwyższy Stanu
   Nowy Jork jest pogwałceniem praw statutowych oraz drugiej
   poprawki do Konstytucji USA, która gwarantuje udział w głosowaniu
   członków.

2. Powiadomienia o zebraniu specjalnym wielu członków otrzymało na
   3 do 5-ciu dni przed datą zebrania.

   Statut Unii gwarantuje otrzymanie tej informacji na 7 dni przed
   odbyciem zebrania specjalnego dla członków.

3. Data 08/20/2018, która umieszczona jest w piśmie świadczy już o
   tym, że wszystkie listy już zostały opóźnione o jeden dzień i
   członkowie PSFCU z dalszych miast jak: Chicago, Copejk, Floryda i
   innych stanów otrzymają te informacje z jeszcze większym
   opóźnieniem.

Wymienione wyżej przypadki świadczą o tym, że nie został dotrzymany
statutowy 7-dniowy termin dostarczania listów członkom.

4. Co roczne zwoływane zebrania sprawozdawczo-wyborcze przez Radę
   Dyrektorów PSFCU przestrzegają od wielu lat informowania swoich
   członków poprzez wysyłanie listów z wyprzedzeniem 1-miesięcznym
   oraz rozwieszania informacji na drzwiach wejściowych wszystkich
   oddziałów Unii Kredytowej, a także umieszczania informacji w prasie
   polonijnej.

13. Zebranie specjalne nie jest organizowane dla Rady Dyrektorów ich
sympatyków i pracowników Unii Kredytowej, bo taka sytuacja jest w
obecnej chwili.

Z poważaniem, w imieniu członków:

Do wiadomości:

- Prokurator USA Sisson

- Prokurator Stanu NY

- FBI

- NCUA

- Rewident miasta NY, NJ

- Gubernator Stanu NJ

- Gubernator Stanu NY

- Gubernator ILINOJ

- Burmistrz NY, NJ

WIESLAW KOMOSINSKI
Notary Public - State of New York
No. 01KO6137712
Qualified in Queens County
My Commission Expires December 5, 20 21

State of:   NEW YORK
County of:   KINGS

Subscribed and sworn to before me this
22 day of AUGUST 2018.

WIESLAW KOMOSINSKI, Notary Public
My Comm. Expires DEC 05, 2021

At an I.A.S. Trial Term, Part _1_ of the Supreme
Court of the State of New York, held in and for the
County of Kings, at the Courthouse, located at
Civic Center, Borough of Brooklyn, City and State
of New York, on the _10th_ day of _October_ 20_18_

P R E S E N T :
Hon. _WAVNY TOUSSAINT_
                                    **Justice**

_WELCK, JAN, etc._

                              **Plaintiff(s)**

Cal. No. _46_
Index No. _0012933/2013_

- against -

_BOARD OF DIRECTORS OF
POLISH & SLAVIC
FEDERAL CREDIT UNION_        **Defendant(s)**

| The following papers numbered 1 to read on this motion | Papers Numbered |
|---|---|
| Notice of Motion - Order to Show Cause and Affidavits (Affirmations) Annexed | _1 - 2_ |
| Answering Affidavit (Affirmation) | _3_ |
| Reply Affidavit (Affirmation) | |
| Affidavit (Affirmation) | |
| Pleadings - Exhibits | |
| Stipulations - Minutes | |
| Filed Papers | |

_APPLICATION TO STAY MEETING
(SPECIAL MEETING OF CREDIT UNION MEMBERS)
HELD ON AUGUST 28, 2018, IS DENIED AS MOOT
as the special meeting was held on 8/28/18_

For Clerks use only
MG___
MD___
Motion Seq. #

_____

EJV-rev 11-04

E N T E R

_____
                    J.S.C.

HON. WAVNY TOUSSAINT

# MARZENA WIERZBOWSKA WAS THE WORST PRESIDENT OF BOARD OF DIRECTORS IN THE HISTORY OF POLISH & SLAVIC FEDERAL CREDIT UNION!!

**SHE APPLIED AGAIN AS A CANDIDATE TO THE BOARD OF DIRECTORS?! DO NOT VOTE FOR WIERZBOWSKA! DO NOT VOTE FOR THE ENEMY OF POLES!**

**PLEASE READ THIS AND DECIDE WHETHER PEOPLE LIKE HER MAY REPRESENT US! DURING HER TERM AS PRESIDENT OF PSFCU BOAD OF DIRECTORS:**

**SHE DID NOTHING TO RECOVER $ 590 MLN** INVESTED AGAINST THE WILL OF THE MEMBERS OF THE UNION AND TO ALLOCATE THAT MONEY TO LOW-INTEREST LOANS FOR BENEFITS OF PSFCU MEMBERS.

THE HIGHEST INCREASE OF FEES FOR FINANCIAL OPERATIONS AND CUSTOMER SERVICE IN UNION.

INTEREST ON SAVINGS ACCOUNTS WAS **THE LOWEST DURING UNION EXISTENCE**.

**SHE "FROZE" EMPLOYEES RETIREMENT PLAN** OF OVER A YEAR AGO WHAT CAUSED THEIR DISSATISFACTION AND LOSING TRUST TO THE COUNCIL . SHE DID NOT INFORM ABOUT CHANGE IN CONTRACT WHAT CAUSED **LOSS AMOUNTING TO $ 1,800,000!**

**SHE ALLOWED ILLEGAL AXING OF 22 EMPLOYEES**. TWO OF THEM FILED A LAWSUIT – ONE WAS REHIRED AND THE OTHER RECEIVED **$ 100,000 COMPENSATION**. WHAT WOULD HAPPEN IF OTHER 20 PEOPLE FOLLOW THEM?

SHE PARTICIPATED IN DISMISSING CEO OSKAR MIELCZAREK AND **PAID HIM $ 300,000** COMPENSATION. UNFORTUNATELY, HE FILED A LAWSUIT AGAINST UNION BUT LATER HE ACCEPTED AMICABLE SETTLMENT AFTER **RECEIVING $ 1,250,000 COMPENSATION SHE PAID HIM FOR THE COST OF UNION MEMBERS. HER DECISIONS WERE NOT MOTIVATED BY BENEFITS OF UNION BUT BY COTERIE INTEREST TO HIRE THEIR COMRADE BOGDAN CHMIELEWSKI FOR CEO POSITION. SHE IGNORED FACT THAT CHMIELEWSKI WAS PREVIOUSLY FIRED DUE TO ACCUSATION FOR ACTING TO THE UNION DETRIMENT.**

WIERZBOWSKA TRAVELS TO UNNECESSARY CONFERENCES AND SYMPOSIA COST UNION MORE THAN **$ 30,000 PER YEAR**. EACH TIME SHE TOOK WITH HER MEMBERS OF HER FAMILY. SHE LIVED IN EXPENSIVE HOTELS AND DINED IN EXPENSIVE RESTAURANTS. HER TRAVLES BROUGHT ONLY COSTS BUT NO TENGIBLE BENEFITS FOR UNION MEMBERS. **FROM THE BEGINNING OF HER**

TERM SHE USED MORE THAN $ 1 MLN AND SHE DOES NOT WANT TO
DISCLOSE STATEMENTS OF HER EXPENDITURES.

DURING ONE OF HER TRAVELS TO WARSAW SHE WAS OFFERED A FREE STAY AT
HOTEL "POSELSKI" AT THE EXPENSE OF THE ORGANIZERS OF THE SYMPOSIUM
BUT SHE PREFERRED TO USE OUR MONEY TO PAY FOR APARTMENY IN
"BRISTOL" ONE OF THE MOST EXPENSIVE HOTELS IN WARSAW.

SHE USED MEMBERS MONEY TO PAY FOR HER EDUCATION IN ONE OF THE BEST
AMERICAN UNIVERSITIES (COLUMBIA). SHE LIVES IN BROOKLYN BUT SHE
RENTED A HOTEL IN MANHATTAN

WEN SHE TOOK SOME COURSES AT COLUMBIA UNIVERSITY AND MEMBERS
PAID FOT THIS!

EVERY YEAR SHE SPENT VACATION WITH HER FAMILY FOR OUR MONEY IN
HAWAII, CARRIBEAN, EUROPE. EVEN IN THE LAST WEEK OF HER TERM AT
THE BOARD OF DIRECTORS SHE TOOK HER FAMILY TO PUERTO RICO!!

BASED ON MATYSZCZYK COMMAND AND PETITION ARRANGED BY FORMER
MILITIA-MAN LUCZAJ, SHE CALLED SPECIAL MEETING OF MEMBERS TO
DEPRIVE POSITIONS OF BORTNIK "COMPETITIVE GROUP" TO ALLOW
MATYSZCZYK PERFORMING HIS MACHINATIONS. MEMBERS WHO BELIEVD THAT
THIS MEETING MIGHT CHANGE SITUATION FOR BETTER COULD SEE THAT THIS
CHANGE WAS APPARENT.

JUST LIKE BORTNIK SHE REJECTED MEMBERS' PETITION CONCERNING
CALLING A SPECIAL MEETING SIGNED (TWICE) BY MORE THAN 2,000
MEMBERS AND SUPPORTED BY NCUA.

SHE PERSISTENTLY AGAIN HIRED BOGDAN CHMIELEWSKI BUDDY OF
MATYSZCZYK FOR POSITION OF CEO, IGNORING FACT THAT HE WAS ALREADY
DISCARDED FROM THIS POSITION BEFORE AND HE RECEIVED MORE THAN $
300,000 COMPENSATION. CHMIELEWSKI HIRED HIS INCOMPETENT COMRADES
FOR WELL-PAID POSITIONS AT PSFCU. HE TOOK GROUNDLESS LOAN
AMOUNTING TO $ 35 MLN THAT COSTS UNION MORE THAN $ 800,000 PER YEAR,
($ 3 MLN SO FAR)!! CHMIELEWSKI OPENED NEW BRANCHES OF PSFCU IN
CHICAGO WITHOUT CONSULTATION WITH MEMBERS. THOSE BRANCHES MAKE A
LOSS AMOUNTING TO MORE THAN $ 1 MLN EACH YEAR. HE RECOMMENDED
GRANTING OF MULTI-MILLION DOLLAR LOANS TO UNTESTED PERSONS (FOR
EXAMPLE: GALDI, SAAR, KUZMA). NOW, THOSE BORROWERS HAVE NO MONEY
TO PAY THE LOANS AND OUR CREDIT UNION SUFFERS MUTI-MILLION LOSSES. IN
FACT HE DID NOTHING POSITIVE FOR CREDIT UNION BUT HE RECEIVES
PAYMENT OF $ 300,000 PER YEAR!!

**OUR UNION NEEDS AN EXPERT WHO WILL NOT ENGAGE IN INTERNAL PERSONAL GAMES AND POLITICKING, UNLIKE MATYSZCZYK AND CHMIELEWSKI. WE NEED SOMEBODY FROM OUTSIDE THE PERSONAL SYSTEMS WHO WILL MANAGE OUR UNION HONESTLY AND PROFESSIONALLY. UNFORTUNATELY, WIERZBOWSKA TRIED TO CONVINCE US THAT IT WAS NOT POSSIBLE TO FIND IN THE WHOLE NEW YORK AND NEW JERSEY MORE QUALIFIED PERSON THAN CHMIELEWSKI, HER PAL.**

WIERZBOWSKA IGNORED PRROTESTS OF MEMBERS WHEN SHE TRANSFERRED MEMBERS FEES FOR BOZENA KAMINSKI OF POLISH AND SLAVIC CENTER. BOZENA KAMINSKI USED THIS MONEY TO HIRE TWO LAW OFFICES WHAT ALLOWED REJECTION OF PSC MEMBERS COMPLAINT BY COURT. PSC MEMBERS JUST DEMANDED A FAIR ELECTION. AGAIN MEMBERS MONEY WAS USED AGAINST MEMBERS AND BOZENA KAMINSKI COULD STAY AT PSC BOARD OF DIRECTORS FOR UNLIMITED TIME. WIERZBOWSKA FAILED TO FULFILL HER PREVIOUS PROMISES NOT TO TRANSFER MEMBERS FEES UNTIL BOZENA KAMINSKI SUBMITS ACCOUNT STATEMENTS SHOWING HOW FEES MONEY WAS SPENT. WIERZBOWSKA SHOWED HER TRUE FACE WHEN SHE IGNORED PSC MEMBERS AND SUPPORTED KAMINSKI COTERIE. THANKS TO WIERZBOWSKA SUCH DISCREDITED PEOPLE LIKE BOZENA KAMINSKI AND JANUSZ JOZWIAK REMAIN IN PSC BOARD OF DIRECTORS.

**LET'S CALL SPECIAL MEETING OF MEMBERS TO REMOVE PEOPLE WHO HAVE BEEN DESTROYING OUR ORGANIZATION PSFCU FOR YEARS.**

**MARZENA WIERZBOWSK LIED TO US AND CAUSED MULTIMILLION LOSSES FOR WHAT SHE MUST BE EXPELLED FROM PSFCU MEMBERSHIP AS SOON AS POSSIBLE.**

# ELZBIETA BAUMGARTNER

## SHE "SITS" IN THE BOARD OF DIRECTORS FOR 13 YEARS OUT OF WHICH OUR CREDIT UNION HAS CHANGED FROM AN ORGANIZATION THAT HELPS MEMBERS INTO A PRIVATE FARM OF "CONCRETE DIRECTORS"

## OVER 4,000 MEMEBERS WHO DOUBLE SIGNED PETITION DEMANDING CALLING OF SPECIAL MEETING OPTED FOR THE REMOVAL OF BAUMGARTNER FROM OUR UNION!!

IN THE LATE 1980s SHE WAS ONE OF THE ADVOCATES OF STOCKBRIDGE FUNDING, FINANCIAL PYRAMID CREATED BY EUGENIUSZ KARCZEWSKI. DUE TO HER FINANCIAL ADVICES MORE THAN 1,000 POLES LOST THEIR LIFE SAVINGS (MORE THAN $ 34 MILLION). LATER IN 1991 SHE WROTE IN LOCAL NEWSPAPERS ABOUT PRINCIPLES OF CAPITALISTIC MARKET ARGUING THAT IT IS NORMAL THAT PEOPLE LOSE THEIR MONEY AND HOW IMPORTANT THE DIVERSIFICATION IS. IT IS A PITY THAT SHE DID NOT WRITE ABOUT THAT EARLIER WHEN SHE ENCOURAGED PEOPLE TO INVEST INTO FRAUDULENT KARCZEWSKI BUSINESS.

AS A RESULT OF HER ADVICES HUNDREDS OF PEOPLE LOST THEIR MONEY AFTER INVESTING INTO SHARES OF COMPANY MCI/WORLDCOM THAT IS NO LONGER SOLVENT.

FOR MANY YEARS SHE HAS BEEN INVOLVED IN FINANCIAL CONSULTATION BUSINESS. WE SHOULD ASK HOW SHE GAINED ALL THAT FINANCIAL KNOWLEDGE? FROM THE BEGINNING OF HER STAY IN THE BOARD OF DIRECTORS SHE TAKES PART IN ALL KINDS OF TRAINING AND COURSES ALL OVER THE WORLD WHAT COSTS A LOT OF MEMBERS MONEY. OFTEN SHE TOOK MEMBERS OF HER FAMILY FOR THOSE "ECURSIONS."

IN ORDER TO GET RID OF THE FORMER CHAIRMAN OF BOARD OF DIRECTORS DARIUSZ CZOCH, WHO WANTED TO IMPROVE SITUATION IN "CONCRETETE SYSTEM"OF PSFCU BOARD OF DIRECTORS ACTIVITY, BAUMGARTNER INITIATED SMEAR CAMPAIGN OF SENDING LETTERS TO HIS COMPANY TO SLANDER HIM. IT RESULTED IN HIS RESIGNATION.

SHE WAS A LEADER OF GROUP OF DIRECTORS WHO REFUSED TO GIVE ONE DAY OFF TO PSFCU EMPLOYEES TO TAKE PART IN THE FUNERAL CEREMONIES OF OUR POPE JOHN PAUL II ORGANIZED BY POLISH CHURCHES.

SHE IS RESPONSIBLE FOR THE EXPANSION OF THE PSFCU TO CHICAGO WITHOUT CONSULTATION WITH UNION MEMBERS. THIS WRONG DECISION BRINGS THE MILLION DOLLARS LOSS EVERY YEAR.

**BAUMGARTNER** IS RESPONSIBLE FOR EXCEEDING BUDGET DURING CONSTRUCTION OF PSFCU BUILDING IN GREENPOINT AT MCGUINNESS BLVD TWICE. INSTEAD OF PLANNED $ 7 MILLION THEY SPENT ALMOST $ 15 MILLION. WHAT HAPPENED TO THAT MONEY? BAUMGARTNER LIKE OTHER MEMBERS OF MATYSZCZYK COTERIE DOES NOT WANT TO INFORM MEMBERS ABOUT THAT, ALTHOUGH CONTRACTOR WHO PERFORMED WORK AT THIS BUILDING WAS PRESENTLY JAILED.

BAUMGARTNER WAS A MEMBER OF THE BOARD OF DIRECTORS WHEN THEY DECIDED TO
PURCHASE BUILDING IN FAIRFIELD (N.J.). THEY SPENT MUCH MORE MONEY FOR THAT BUILDING
THAN ITS REAL VALUE AS IT IS LOCATED AT THE FLOOD ZONE. THEY FORCED MANY
EMPLOYEES WHO WORKED BEFORE IN GREENPOINT BRANCH TO MOVE TO FAIRFIELD, DESPITE
FACT THAT BUILDING AT MCGUINNESS BLVD IS ALMOST EMPTY.

BAUMGARTNER AS A MEMBER OF BOARD OF DIRECTORS GAVE PERMISSION TO THEN (AND
NOW) CEO BOGDAN CHMIELEWSKI TO TAKE A LOAN AMOUNTING TO $ 35 MLN. THE COST OF
LOAN SERVICING IS NOW MORE THAN $ 800,000 PER YEAR. SHE GRANTED HUGE LOANS,
AMOUNTING TO MILLIONS OF DOLLARS, TO PEOPLE WHO ARE NOT ABLE TO REPAY THEM (FOR
EXAMPLE: LAWSUIT PSFCU V. GALDI & SAAR, LOAN FOR KUZMA FROM CHICAG AND SIMILAR
LOANS AT RIDGEWOOD AND MASPETH). NOW, WHEN BOGDAN CHMIELEWSKI WAS HIRED AGAIN
AS CEO, BAUMGARTNER DOES NOT INFORM MEMBERS ABOUT NEXT LOANS, AMOUNTING TO
MILLIONS OF DOLLARS, GRANTED TO THEIR PALS. AGAIN, THERE IS A RISK THAT THEY WILL
APPLY FOR REDEMPTION OF BANK LOAN AND DEBT RELIEF WILL BE GRANTED FOR THEM.

BAUMGARTNER TOGETHER WITH FORMER CEO OSKAR MIELCZAREK PREPARED ANSWER IN
WRITING FOR QUESTIONS ASKED BY MEMBERS, CONCERNING INVESTING OF $ 590 MLN INTO
SHARES OF COMPANIES FREDDIE MAC AND FANNIE MEA. SHE DECEIVED ALL OF US, SAYING
THAT THOSE INVESTMENTS ARE SECURED BY IMPLIED GOVERNMENT GUARANTEES. SHE
INTENTIONALLY PRESENTED FALSE INFORMATION, CONCERNING DETAILS OF ABOVE
INVESTMENTS. SHE WAS SURE THAT POLES ARE TOO STUPID TO UNDERSTAND HER DECEITFUL
FINANCIAL ARGUMENTS. SHE DID NOT MENTION THAT THOSE MONEY SHOULD NOT HAVE BEEN
INVESTED IN SUCH WORTHLESS COMPANIES, GIVING ONLY 1.63% RETURN ON INVESTMENT,
INSTEAD OF GRANTING LOANS TO MEMBERS, AS WELL AS, PAYMENT OF DIVIDENDS EACH YEAR.

BAUMGARTNER SUPPORTED LUCZAJ GROUP FIGHTING FOR CALLING PREVIOUS SPECIAL
MEETING. SHE WROTE LETTERS TO COURT BUT NOW WHEN PETITION CONCERNS HER, SHE IS
OPPOSING CALLING A SPECIAL MEETING. SHE VOTED FOR MODIFICATION OF BYLAW TO
INCREASE NUMBER OF SIGNATURES SUPPORTING PETITION FROM 750 TO 2,500 TO BE GUARDED
AGAINST "MEMBERS JUSTICE." WHAT IS SHE AFRAID OF? IT HAPPENED IN THE PAST THAT SHE
RESIGNED HERSELF FROM BOARD OF DIRECTORS WHEN MEMBERS WERE VOTING AGAINST HER
DURING ANNUAL MEETING BUT SHE CAME BACK SOON. WHY IS SHE FIGHTING SO
DESPERATELY FOR THIS VOLUNTEER POSITION THAT REQUIRES A LOT OF TIME AND ENERGY?

THIS "CONCRETE DIRECTOR" HAS BEEN SITING AT BOARD OF DIRECTORS FOR 12 YEARS AND SHE
HARMS POLISH COMMUNITY AS MUCH AS SHE CAN, OBSTRUCTING YOUNG MEMBERS OF POLISH
COMMUNITY TO JOIN BOARD OF DIRECTORS.

**VOTE FOR REMOVING ELZBIETA BAUMGARTNER FROM PSFCU
BOARD OF DIRECTORS, AS WELL AS, FOR DEPRIVING HER OF
PSFCU MEMBERSHIP. TELL ENOUGH IS ENOUGH FOR HER DOUBLE
ETHIC STANDARDS, AS WELL AS, FOR FINANCIAL LOSSES SHE
COUSED IN PSFCU!**

# BOGDAN CHMIELEWSKI

## WHO IS THE MAN WHICH "HOLDS OUR MONEY" AND WHY HE RETURNS TO HIS PREVIOUS POSITION, LIKE BOOMERANG, DESPITE FACT THAT HE HAD BEEN FIRED.

In 2007 Chmielewski was hired for the position of Executive Director of Polish & Slavic Federal Credit Union, the largest ethnic financial organization in USA. **He received payment each year amounting to more than $ 250,000 plus bonus for tens of thousands of dollars.** In 1989 Chmielewski graduated in communist Poland from Marxist-Leninist economics and has neither formal education of USA nor any competence or qualification to manage any financial institution. In PSFCU he began to work from the lowest positions, but as he was always close to "Matyszczyk coterie" and was doing what he was told, in the end, according to the principle **"mediocre, passive but loyal"**, they pushed him to the position of Executive Director.

During his directorship, Union, without the agreement of the members, began to accept new sponsors (over 30 years the sole sponsor of the Union was Polish & Slavic Center), opened branches in Chicago that bring millions of dollars in losses every year, granted multimillion-dollar loans, which the borrowers stopped paying off and the case went to court after removing Chmielewski from his position, created a whole range of unnecessary highly paid management positions and hired for them incompetent persons like Chmielewski himself.

Chmielewski, instead of dealing with finances and managing Credit Union, was attending all local events to catch the pictures in the newspapers, doing publicity and good impression, while our union fell at the end of the ranking, giving the lowest interest rate on savings and the most inconvenient loans, as well as, our Union has enormous losses each year.

Chmielewski contributed in investing $ 590 million of our money into bonds of failing firms Freddie Mac and Fannie Mae that brings only a 1.63% return, which at 3.5% inflation gives more than $ 10 million loss a year.

Chmielewski has sold all loans to other banks, and now our Union has almost no assets. Chmielewski took a loan amounting to $ 35 million which costs us over $ 800,000 per year in repayment of interest.

In 2009, Chmielewski was finally removed (**he got nearly $ 400,000 severance pay**), but "Bortnik clique" hired in his place not much better specialist - Oskar Mielczarek. Mielczarek sued his previous company and won over Euro 250,000. After removing him from his position in PSFCU he sued our Union for discrimination and received from Ms. Wierzbowska $ 1,800,000 of compensation.

After leaving PSFCU Chmielewski found a new job in the Polish Bank WAWEL as Deputy Executive Director.  Soon, this Bank met with similar problems as PSFCU.  Currently, FBI is investigating charges related to money laundering by the WAWEL Board of Directors and former boss of Chmielewski probably will be jailed.

Wierzbowska deliberately removed  Mielczarek from the position of  Executive Director in order to hire Chmielewski again.  Wierzbowska  knew that Mielczarek sued Credit Union unreasonably but she preferred to pay him compensation using members' money ($ 1.8 million!) to hire Chmielewski.  The current Board of Directors was fully discredited by hiring an incompetent man who was previously removed from the same position and probably broke the law on employment. **Nobody will believe in it, that in New York they could not find anyone better than a person previously banned from this position, without  American education, which exposed  PSFCU on millions dollars of  losses.**

Currently, Chmielewski employed by Matyszczyk clique, which again took over control of the Board of Directors, continues previously started work of destruction our organization.  However, when they occur in the Polish-language media, falsely ensure that the Union is doing great but figures published by the National Credit Union Administration say something to the contrary.  **Already in this year Chmielewski lost more than $ 1 million of our money and by the end of the year he will probably double this "result."** He also started hiring their cronies and "granting" credits.  It is a pity that  Poles will not benefit of this.  For what we pay him now almost $ 300,000 a year.

# MEMBERS OF POLISH & SLAVIC FEDERAL CREDIT UNION!

**How much longer we will tolerate situations in which such people like Matyszczyk, Baumgartner and other members of clique will occupy our Polish Organization? Some of them have served on Board of Directors unpaid volunteer positions for longer than 15 years and  they led to multi-million dollar annual losses, enriching themselves in the meantime and traveling in the world for members money.  They employ mediocrity in managerial positions, in order to have full control over them and do not let the Poles to use the potential of our organization for the benefit of the Polish community.**

**Convene the Special Meeting to throw "Matyszczyk clique" from our organization as we did with "Bortnik clique" on March 25, 2012 year to make sure that our Union is again in Polish hands.**

At an IAS Term, Part 70 of the Supreme Court
of the State of New York, held in and for the
County of Kings, at the Courthouse, at Civic
Center, Brooklyn, New York, on the 12th day
of June, 2015.

PRESENT:

HON. WAVNY TOUSSAINT,
                                   Justice.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
JAN WELENC AND IRENEUSZ ROSZKOWSKI,                          AMENDED
JR., AS EXECUTOR OF THE ESTATE OF                            ORDER
IRENEUSZ ROSZKOWSKI,

                            Plaintiffs,

         - against -                                         Index No.  12933/13

THE BOARD OF DIRECTORS OF POLISH AND
SLAVIC FEDERAL CREDIT UNION,

                            Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

The following papers numbered 1 to 8 read herein:

|  | Papers Numbered |
|---|---|
| Notice of Motion/Order to Show Cause/ Petition/Cross Motion and Affidavits (Affirmations) Annexed_____ | 1-2, 3-4, 5, 8 |
| Opposing Affidavits (Affirmations)_____ |  |
| Reply Affidavits (Affirmations)_____ | 6 |
| _____Affidavit (Affirmation)_____ |  |
| Other Papers__Supplemental Papers in Opposition_____ | 7 |

        Upon the foregoing papers, plaintiffs Jan Welenc and Ireneusz Roszkowski, Jr., as

Executor of the Estate of Ireneusz Roszkowski,[1] move for an order requiring defendant the

_____

        [1] The court notes that Ireneusz Roszkowski died during the pendency of this action, and,
by way of an order dated October 29, 2014, the court substituted Ireneusz Roszkowski, Jr., as

Board of Directors of Polish and Slavic Federal Credit Union (Board) to cover any and all future legal expenses incurred in the representation of plaintiffs in their action as against the Board (motion sequence 1). The Board cross moves for an order, pursuant to CPLR 3212, granting it summary judgment dismissing the complaint (motion sequence 2). Plaintiffs further moved for an order assigning Mark Wysocki, as a plaintiff in this matter, due to the death of Ireneusz Roszkowski (motion sequence 3). By way of a separate motion, plaintiffs move for an earlier hearing date than the original calendar date of the motions (motion sequence 4). An additional motion by plaintiff to among other things add additional material to the record (motion sequence 5), on consent of the defendant, was deemed to be supplemental papers in opposition to defendant's motion for summary judgment dismissing he complaint.

Plaintiffs contend that the Board improperly rejected two separate petitions signed by over 2000 members of the Polish and Slavic Federal Credit Union (Credit Union), requesting that a special meeting of the Credit Union's members be called. As is relevant here, the first petition requested that a special meeting of the Credit Union's membership be called in order to remove four directors from the Board and from their membership in the Credit Union and to remove a supervisory committee person from the Credit Union's supervisory committee. The request for removal was based on allegations of various ethical violations and improper management of the Credit Union's financial affairs. This first petition also requested that,

---

Executor of the Estate of Ireneusz Roszkowski in place of Ireneusz Roszkowski.

at the special meeting, the members vote on temporary directors to fill the vacancies caused by the removal.

In an October 9, 2012 notice, the Board acknowledged the receipt of the petition, and acknowledged that it contained 974 valid signatures and that these signatures constituted a sufficient number of signatures to call a special meeting under the Credit Union's Bylaws (Bylaws) as they existed at the time.  Nevertheless, the Board declined to call a special meeting, asserting that the petition was invalid because: (1) the portion of the petition requesting that an election be held at the special meeting to replace the removed board members violated the Bylaws; (2) this defect with the petition invalidated the entire petition, including the portion of the petition requesting the removal of the five directors; and (3) the portion of the petition requesting the removal of the remaining board members was also invalid because of inconsistencies between the Polish and English translations of the grounds for removal.

In the second petition, plaintiffs requested a special meeting be held to vote on the removal of the four directors and the supervisory committee person who were subject to the request in the first petition, as well as the removal of two additional directors.  Unlike the first petition, the second petition only requested that a removal vote be held, but did not outline the grounds for removal or request that a vote also be held to fill the vacancies.  The Board, in a notice dated February 1, 2013, stated that it found the second petition invalid

3

because it did not specify a reason for the requested action and declined to hold the requested special meeting.

Plaintiffs, proceeding pro-se, commenced this action in July 2013, requesting that the Board call the special meeting as requested in the petitions. The Board thereafter answered and the parties have since made the instant motions.

Before addressing the parties' motions, the court finds that it has subject matter jurisdiction over the action (*see Financial Indus. Regulatory Auth., Inc. v Fiero*, 10 NY3d 12, 16-17[2008] [issue of a court's subject matter jurisdiction may be raised anytime and may be raised sua sponte]). Although the Credit Union is a federally chartered credit union organized pursuant to the Federal Credit Union Act (12 USCA § 1751, et seq.) (the Act), neither the Act nor the relevant federal regulations grant federal courts or the National Credit Union Administration (NCUA) exclusive jurisdiction over disputes involving member rights under a federal credit union's by-laws (*see Harrington v Philadelphia City Employees Federal Credit Union*, 243 Pa Super 33, 41-42, 364 A2d 435, 439-440 [Pa Super 1976]; *see also Knebel v St. Helens Community Federal Credit Union*, 2013 WL 2243934 [U] [D Or 2013]; *Sly v DFCU Financial Credit Union*, 443 F Supp2d 885 [ED Mich, 2006]). In addition, as the Bylaws serve as a contract between the Credit Union and its members (*Buller v Giorno*, 28 AD3d 258[1st Dept 2006]; *Matter of American Fibre Chair Seat Corp.*, 241 App Div 532, 535-537 [2d Dept 1934], *affd* 265 NY 416 [1934]; *see also Matter of LaSonde v Seabrook*, 89 AD3d 132, 137 [1st Dept 2011], *lv denied* 18 NY3d 911 [2012]), this court

4

undoubtedly has subject matter jurisdiction to adjudicate the parties' rights under the Bylaws

(see *Matter of American Fibre Chair Seat Corp.*, 241 App Div at 537; *see also Browne v*

*Hibbets*, 290 NY 459, 466-467 [1943]; *Caliendo v McFarland*, 13 Misc 2d 183, 188-[Sup

Ct, New York County 1958]).

Turning to the Board's cross motion for summary judgment, the determination of the

motion turns on the rights of Credit Union members under the Bylaws. The right of Credit

Union members to request a special meeting is addressed in Article IV, section 3 of the By-

Laws, which provide that:

> "Special meetings of the members may be called by the chair or
> the board of directors upon a majority vote, or by the
> supervisory committee as provided in these bylaws. The chair
> *must* call a special meeting, meaning a meeting must be held,
> within 30 days of the receipt of a written request of 25 members
> or 5% of the members as of the date of the request, whichever
> number is larger. However, a request of no more than 750
> members may be required to call a special meeting.
>
> "The notice of a special meeting must be given as provided in
> Section 2 of this article. Special meetings may be held at any
> location permitted for the annual meeting" (emphasis added).

As is relevant to notice, Article IV, Section 2 provides that, "[n]otice of any special meeting

must state the purpose for which it is to be held, and no business other than that related to this

purpose may be transacted at the meeting." In light of the use of the term "must" call a

special meeting upon the receipt of a written request from a sufficient number of members

in Article IV, Section 3 of the Bylaws, a chair has no discretion to deny a request for a

special meeting made by a sufficient number of members (see *Matter of Auer v Dressel*, 306

. 5

NY 427, 431 [1954]; *Kenavan v City of New York*, 177 Misc 2d 647, 651 [Sup Ct, Kings County 1998], *reversed on other grounds* 267 AD2d 353 [2d Dept 1999], *lv denied* 95 NY2d 756 [2000]; *Matter of Friess v Morgenthau*, 86 Misc 2d 852, 854 [Sup Ct, New York County 1975]; *see also M/S Bremen v Zapata Off-Shore Co.*, 407 US 1, 20 [1972]).

Nevertheless, a court will not require a meeting to be held to vote on a request that is improper under the law or the organization's bylaws (*see Caliendo*, 13 Misc 2d at 189-190; NCUA Opinion Letter 06-0326 [March 28, 2006]; *see also Ripin v United States Woven Label Co.*, 205 NY 442 [1912]; 87 CJS, Towns § 47; *cf. Matter of Auer v Dressel*, 306 NY at 432-434).[2] Here, the Bylaws specifically allow the Credit Union members to remove a director or committee member (Bylaws, Article XVI, § 3),[3] and to expel members from the Credit Union (Bylaws, Article XIV, § 1).[4] However, by giving a director sought to be removed or a member sought to be expelled the opportunity to be heard (Bylaws, Article XIV, § 1 and Article XVI, § 3), the Bylaws impliedly require the request for a special meeting to specify the reasons for removal (NCUA Opinion Letter 06-0326 [March 28,

---

[2] The court notes that, although the opinion letter from NCUA does not carry the force of law, it is entitled to deference to the extent that it is persuasive (*see Christensen v Harris*, 529 US 576, 587 [2000]).

[3] Article XVI, section 3 of the Bylaws provides that, "[n]otwithstanding any other provisions in these bylaws, any director or committee member of this credit union may be removed from office by the affirmative vote of a majority of the members present at a special meeting called for the purpose, but only after an opportunity has been given to be heard."

[4] Article XIV, section 1 of the Bylaws, provides, in relevant part, that "[a] member may be expelled by a two-thirds vote of the members present at [a] special meeting called for that purpose, but only after the member has been given the opportunity to be heard."

2006]; NCUA Opinion Letter 98-0950 [Dec. 29, 1998]). In addition, nothing in the Bylaws

suggests that members have the authority to fill the vacancies created by the removal of a

director by electing a temporary director at a special meeting. Rather, under the Bylaws, only

the remaining members of the Board have the authority to fill a vacancy with a temporary

director (Bylaws, Article VI, § 4).[5]

Applying these considerations to the first petition, the court finds that the portion of

the first petition requesting a vote to remove the committee member and four directors based

on alleged misconduct states a valid reason for holding a special meeting. The Board's

assertion that the request is rendered improper because of inconsistences between the English

and Polish versions of the request is not supported by an affidavit from a translator or other

evidentiary proof demonstrating that the Polish translation is inaccurate (*see Rosenberg v*

*Piller*, 116 AD3d 1023, 1025-1026 [2d Dept 2014]; CPLR 2101 [b]). In any event, the

Polish translation, even with the inconsistencies alleged by the Board, is not so different from

the English version to be misleading and it adequately conveys the reasons for requesting that

the Board call the special meeting to the Polish speaking members signing the petition.[6] The

_____

[5] Article VI, section 4 of the Bylaws provides, as is relevant, that, "[a]ny vacancy on the board . . . will be filled as soon as possible by a vote of a majority of the directors then holding office. Directors . . . appointed to fill a vacancy will hold office only until the next annual meeting, at which any unexpired terms will be filled by vote of the members, and until the qualification of their successors."

[6] The court notes that, to the extent that the Polish translation did not mention that the request also involved the removal from membership of three of the directors, the court finds that this alleged defect is not material because the primary purpose of the request for a special meeting is the removal of the directors from the Board based on improper leadership.

7

court thus finds that the alleged inconsistencies are not material and that they are insufficient to render the request improper (*see Matter of Rock Church v Milani*, 256 AD2d 255, 256 [1st Dept 1998]).

The court agrees with the Board that the portion of the petition requesting that a vote be held to elect temporary directors to replace the removed directors violates the Bylaws, as that power rests with the remaining board members (Bylaws, Article VI, § 4). Contrary to the Board's assertion, the inclusion of the improper request does not invalidate the entire request for a special meeting (*see Matter of Weisblum v Li Falco Mfg. Co. Inc.*, 193 Misc 473, 478 [Sup Ct, Herkimer County 1947]). To hold that the improper request vitiates the entire request to call a special meeting would constitute a hyper-technical reading of the requirements relating to the requests for special meetings (*see* NCUA Opinion Letter 06-0326 [March 28, 2006]), and improperly impede the important right of members to request the calling of a special meeting (*see Matter of Auer*, 306 NY at 431-433). Even if, as argued by the Board, the requested reasons for holding a special meeting must be analyzed like a contract, the court finds that the request to hold a vote to remove the four board members is severable from and in no way contingent on the request that, upon their removal, the members be allowed to vote on their replacements (*see Hart v City of New York*, 201 NY 45, 57-58 [1911]; *Alderman v Central N.Y. Arterial Mkts.*, 24 AD2d 1046 [3d Dept 1965]; *Anheuser-Busch Ice & Cold Stor. Co., Inc. v Reynolds*, 221 App Div 174, 178 [1st Dept 1927]). As such contractual principles do not require striking the valid requests because of

8

the invalid request. Therefore, the Board was required to call a special meeting based on the first petition.

The Board's motion for summary judgment, as it relates to the plaintiff's first petition is denied. The Board should have called a special meeting, relative to the first petition submitted by the plaintiff's. That portion of the petition which seeks to temporarily elect board members to replace any that are removed is improper and need not be addressed at the special meeting. The Court directs that a special meeting of the members of the Credit Union be called for by the Board of Directors and held within sixty (60) days of service of this order with notice of entry.

The court finds that the Board was not required to call a special meeting based on the second petition, in that the second petition failed to identify the grounds for removing the directors from the Board (Bylaws, Article XVI, § 3; NCUA Opinion Letter 06-0326 [March 28, 2006]; NCUA Opinion Letter 98-0950 [Dec. 29, 1998]). Accordingly, the Board's motion for summary judgment as it relates to the second petition only, is granted.

Plaintiffs' motion requesting that the Board be required to cover plaintiffs' attorneys' fees must be denied, as plaintiffs have failed to identify a contractual or statutory basis for the recovery of such fees (*see Gorman v Fowkes*, 97 AD3d 726, 727 [2d Dept 2012]; *Blair v O'Donnell*, 85 AD3d 954, 956 [2d Dept 2011]; *Reilly Mrtg. Group Inc. v Mount Vernon Sav. & Loan Assn.*, 568 F Supp 1067, 1078-1079 [DC Va 1983] [addressing an attorney fee request by stockholders moving to compel a special meeting]).

Plaintiffs' motion for a earlier hearing date is denied as academic, as argument has already been held on the motions.  Plaintiff's motion to have Mark Wysocki substituted as plaintiff is denied, as moot, in light of the appointment of Ireneusz Roszkowski, as the estates representative, pursuant to an Order of the Surrogates Court, Kings County, dated September 19, 2014. Plaintiff's remaining motion to add additional material was previously resolved on consent.

Accordingly, a special meeting of the members of the Credit Union is to be called for by the Board of Directors and held within sixty (60) days of service of this order with notice of entry.

This constitutes the decision, judgment and order of the court.

E N T E R,

_____

J. S. C.

HON. WAVNY TOUSSANT

10

# Supreme Court of the State of New York
## Appellate Division: Second Judicial Department

D54957
G/htr

_____AD3d_____

Argued - January 4, 2018

REINALDO E. RIVERA, J.P.
JEFFREY A. COHEN
ROBERT J. MILLER
LINDA CHRISTOPHER, JJ.

2015-10708
2016-02293

DECISION & ORDER

Jan Welenc, et al., respondents, v Board of Directors
of Polish and Slavic Federal Credit Union, appellant.

(Index No. 12933/13)

Windels Marx Lane & Mittendorf, LLP, New York, NY (William C. Cagney and
Rodman E. Honecker of counsel), for appellant.

Tseitlin & Glas, P.C., New York, NY (Eduardo J. Glas of counsel), for respondents.

Appeals by the defendant from an amended order of the Supreme Court, Kings
County (Wavny Toussaint, J.), dated June 12, 2015, and an order of the same court dated February
24, 2016. The amended order dated June 12, 2015, insofar as appealed from, denied the defendant's
motion for summary judgment dismissing the complaint and, in effect, searched the record and
awarded summary judgment to the plaintiffs on the complaint. The order dated February 24, 2016,
insofar as appealed from, upon renewal and reargument, adhered to the original determination in the
amended order dated June 12, 2015.

ORDERED that the appeal from the amended order dated June 12, 2015, is dismissed,
as that order was superseded by the order dated February 24, 2016, made upon renewal and
reargument; and it is further,

ORDERED that the order dated February 24, 2016, is affirmed insofar as appealed
from; and it is further,

ORDERED that one bill of costs is awarded to the plaintiffs.

April 4, 2018

Page 1.

WELENC v BOARD OF DIRECTORS OF POLISH AND SLAVIC
FEDERAL CREDIT UNION

In September 2012, a petition signed by more than 2,000 members of the Polish and Slavic Federal Credit Union (hereinafter the Credit Union) was submitted to the Board of Directors of the Credit Union (hereinafter the Board), requesting that the Board call and hold a special meeting of its membership to, inter alia, put to a vote a motion to remove certain individuals from the Board and an individual from the Supervisory Committee. In October 2012, the Board posted a notice stating that the petition was "determined to be invalid" due to, among other things, "discrepancies" between a version of the petition containing paragraphs written in Polish and an English translation submitted by the Board. In July 2013, the plaintiffs commenced this action "to order Board of Directors to call special meeting of [the Credit Union's] members." Thereafter, the Board cross-moved for summary judgment dismissing the complaint. In an amended order dated June 12, 2015, the Supreme Court, inter alia, denied the Board's motion for summary judgment and, in effect, searched the record and awarded summary judgment to the plaintiffs on the complaint. The Board then moved for leave to renew and reargue its motion for summary judgment. In an order dated February 24, 2016, the court, among other things, upon renewal and reargument, adhered to the original determination in the amended order dated June 12, 2015. The Board appeals from the amended order dated June 12, 2015, and the order dated February 24, 2016.

Contrary to the Board's contention, it failed to establish, prima facie, that the petition to call a special meeting was invalid due to "discrepancies" between a version of the petition containing paragraphs written in Polish and an English translation submitted by the Board, since the English translation was not accompanied by an affidavit by the translator stating the translator's qualifications and that the translation was accurate (*see* CPLR 2101[b]), and thus, did not constitute admissible evidence (*see Rosenberg v Piller*, 116 AD3d 1023, 1025). Since the Board otherwise failed to establish, prima facie, that the petition was invalid, the Supreme Court properly, upon renewal and reargument, adhered to its original determination denying the Board's motion for summary judgment dismissing the complaint and, under the circumstances presented, properly exercised its authority to, in effect, search the record and award summary judgment to the plaintiffs (*see* CPLR 3212[b]).

The Board's remaining contentions are either not properly before this Court or without merit.

RIVERA, J.P., COHEN, MILLER and CHRISTOPHER, JJ., concur.

ENTER:

Aprilanne Agostino
Clerk of the Court

April 4, 2018                                                                                                    Page 2.

WELENC v BOARD OF DIRECTORS OF POLISH AND SLAVIC
FEDERAL CREDIT UNION

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION, SECOND DEPARTMENT
-----------------------------------------------------------------------X

JAN WELENC AND IRENEUSZ ROSZKOWSKI, JR.,
AS EXECUTOR OF THE ESTATE OF IRENEUSZ
ROSZKOWSKI,

                        Plaintiffs - Respondents,

        -against-

THE BOARD OF DIRECTORS OF POLISH AND
SLAVIC FEDERAL CREDIT UNION,

                  Defendant - Appellant.

-----------------------------------------------------------------------X

Index Nos.:  2015-10708
                 2016-02293

(Kings Cty. Index No.: 12933/13)

**AFFIRMATION OF SERVICE**

       EDUARDO J. GLAS, and attorney duly licensed to practice before the Court of this

State, affirms under penalties of perjury pursuant to CPLR 2106 as follows:

       1.      On May 10, 2018, I caused to be served two true copies of the Affirmation in

Opposition to Motion for Leave to Appeal to Court of Appeals via regular mail delivery to

counsel for defendant-appellant below by depositing the same in a first class, postage paid,

properly addressed wrapper in an official depository under the exclusive care and control of the

United States Postal Service pursuant to CPLR 2103(b)(2) at the following address:

William C. Cagney, Esq.
Windels Marx Lane & Mittendorf, LLP
156 West 56th Street
New York, New York 10019

Dated: May 10, 2018

                                                    Eduardo J. Glas

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION, SECOND DEPARTMENT
------------------------------------------------------------X

JAN WELENC AND IRENEUSZ ROSZKOWSKI,
JR., AS EXECUTOR OF THE ESTATE OF
IRENEUSZ ROSZKOWSKI,

                Plaintiffs - Respondents,

      -against-

THE BOARD OF DIRECTORS OF POLISH AND
SLAVIC FEDERAL CREDIT UNION,

               Defendant - Appellant.

------------------------------------------------------------X

Index Nos.: 2015-10708
                   2016-02293

(Kings Cty. Index No.:
12933/13)

**AFFIRMATION IN
OPPOSITION TO
MOTION FOR LEAVE
TO APPEAL TO COURT
OF APPEALS**

 

EDUARDO J. GLAS affirms, under penalties of perjury pursuant to CPLR
2106, as follows:

      1.     I am an attorney duly admitted to practice law in the State of New
York, and I am one of the principals at the law firm of Tseitlin & Glas, P.C.,
attorneys for the plaintiffs-respondents ("Plaintiffs").

      2.     I submit this Affirmation in opposition to Defendant/Appellant's, the
Board of Directors (the "Board") of the Polish & Slavic Federal Credit Union,
Motion for Leave to Appeal to the Court of Appeals pursuant to CPLR

1

5602(a)(1)(i), CPLR 5513(b), CPLR 5516, and 22 NYCRR § 670.5 (Rule 670.5)

and 22 NYCRR 670.6 (Rule 670.6).

3.    The Board has unsuccessfully attempted to dismiss Plaintiff's demand

for a special meeting of members of the Credit Union to expel certain board

members and one unelected officer from the Credit Union three times –twice

before the trial court and once before this Court.  On this fourth attempt, the Board

moves for leave to appeal to the Court of Appeals on grounds that this Court

decision was contrary to existing law and thus should be reviewed by the Court of

Appeals.  This Court's decision, however, was not contrary to existing law.  Since

there is no question of law that has arisen that needs to be reviewed by the Court of

Appeals, the present motion should be denied.

4.    The only argument raised in support of the motion is that this Court's

decision did not address the Board's mootness claim.  The argument is farfetched.

The Board made the mootness claim a focal point of its appeal.  It was the first

point of its moving brief.  In addition, it was the corner-stone of its presentation at

oral argument.  The Decision makes clear that this Court rejected the mootness

claim as having no merit.  See Decision and Order at p. 2 (after noting that the

Board failed to establish that the petition to call a special meeting was invalid, and

that the trial court properly awarded summary judgment in favor of the Plaintiffs,

the Court held: "The Board's remaining contentions are either not properly before

still in office.  Consequently, there can be no mootness as to him because elections do not even come into play in connection with such officers.

7.      The purpose of the special meeting is not to select directors as in regular elections, but to remove (or expel from the Credit Union altogether) those directors and committee members whom the members believe have acted in a manner detrimental to the Credit Union.  It is a check and balance on the accountability of directors and other officers that goes beyond the right of election at regular, annual meetings.  See Matter of Auer v. Dressel, 306 N.Y. 427, 430, 118 N.E.2d 590 (1954) ("The important right of stockholders to have such [special] meetings will be of little practical value if corporate management can ignore the request").  The normal, annual elections are not the vehicle to challenge a candidate's conduct that may have harmed the Credit Union.  The nominees for the position of directors are selected mostly by the Board, which tends to perpetuate itself. (R. 108).   The vote is up or down and takes place before the annual meeting that can be attended by the members.  (R. 146-148) (Bylaws, Article V, Section 2).   Indeed, at the annual meeting only the *result* of the voting is made public.  Id. (Section 2(d)(8)).  There is no room for debating allegations of wrongdoing prior to an annual, regular election of directors.  (R. 112-113; 232-233; 246-248).  The information provided to members prior to regular, annual

elections consists only of brief biographical sketches of the candidates.  See, e.g.
R. 246-248.

8.      In contrast, a special meeting seeking to remove an individual
provides a forum to air grievances and charges, allowing the challenged
individuals an opportunity to defend themselves.  (R. 158; 159) (Bylaws, Article
XIV, Section 1 ("A member may be expelled by a two-thirds vote of the members
present at a special meeting called for that purpose, but only after the member has
been given an opportunity to be heard."); and Article XVI, Section 3
("Notwithstanding any other provision in these bylaws, any director or committee
member of this credit union may be removed from office by the affirmative vote of
a majority of the members present at a special meeting called for that purpose, but
only after an opportunity has been given to be heard.")).  Thus, the special meeting
has a purpose and function that cannot be supplanted by regular, annual elections.
It is an additional check and balance to the accountability of directors that should
not be taken away from the members.

9.      In short, the cases upon which the Board relies do not even address
special meetings where the expulsion of members is sought, and the matter is never
held to a vote in derogation of the rights of members.  See, e.g., Litas Investing Co.
v. Vebeliunas, 148 A.D.2d 680, 539 N.Y.S.2d 429 (2nd Dept. 1989) (president of
the company who had been removed from office by the board of directors and

where there are no novel issues of law and no reason to claim that this Court failed to follow precedents would give credence to the adage:  Justice delayed, justice denied.

WHEREFORE, Plaintiffs respectfully request that the Board's motion be denied.


Dated:  New York, New York
        May 10, 2018.


Eduardo J. Glas

*Kings County Clerk's Index No. 12933/13*
*Appellate Division, Second Department Docket Nos. 2015-10708 and 2016-02293*

# Court of Appeals

### STATE OF NEW YORK

---

JAN WELENC and IRENEUSZ ROSZKOWSKI, JR., AS
EXECUTOR OF THE ESTATE OF IRENEUSZ ROSZKOWSKI,

*Plaintiffs-Respondents,*

*against*

THE BOARD OF DIRECTORS OF POLISH AND
SLAVIC FEDERAL CREDIT UNION,

*Defendant-Appellant.*

---

## OPPOSITION TO MOTION FOR LEAVE TO APPEAL
## TO THE NEW YORK STATE COURT OF APPEALS

---

RECEIVED

JUL - 6 2018

NEW YORK STATE
COURT OF APPEALS

TSEITLIN & GLAS, P.C.
*Attorneys for Plaintiffs-Respondents*
345 7th Avenue, 21st Floor
New York, New York 10001
212-944-7434

*Date Completed: June 21, 2018*

---

STATE OF NEW YORK
COURT OF APPEALS

-----------------------------------------------------------X

JAN WELENC AND IRENEUSZ ROSZKOWSKI,
JR., AS EXECUTOR OF THE ESTATE OF
IRENEUSZ ROSZKOWSKI,

                      Plaintiffs - Respondents,

-against-

THE BOARD OF DIRECTORS OF POLISH AND
SLAVIC FEDERAL CREDIT UNION,

                    Defendant - Appellant.

-----------------------------------------------------------X

Appellate Division
Second Department
Docket Nos.: 2015-10708
              2016-02293

(Kings Cty. Index No.:
12933/13)

**AFFIRMATION OF
COUNSEL IN
OPPOSITION TO
MOTION FOR LEAVE
TO APPEAL**

EDUARDO J. GLAS affirms, under penalties of perjury pursuant to CPLR 2106, as follows:

1.     I am an attorney duly admitted to practice law in the State of New York, and I am one of the principals at the law firm of Tseitlin & Glas, P.C., attorneys for the plaintiffs-respondents ("Plaintiffs").

2.     I submit this Affirmation in opposition to Defendant/Appellant's, the Board of Directors (the "Board") of the Polish & Slavic Federal Credit Union (the "Credit Union"), Motion for Leave to Appeal to the Court of Appeals pursuant to

1

CPLR 5602(a)(1)(i), CPLR 5513(b), CPLR 5516, and 22 NYCRR § 670.5 (Rule 670.5) and 22 NYCRR 670.6 (Rule 670.6), from a *unanimous* Decision & Order of the Supreme Court, Appellate Division, Second Judicial Department, entered on April 4, 2018, affirming the Order of the Supreme Court, Trial Term, Kings County (Toussaint, J.) dated February 24, 2016, directing the Board to convene a special meeting of the members of the Credit Union as required by its by-laws after more than 2000 members signed a petition requesting such meeting.

3.    The Board has unsuccessfully attempted to dismiss Plaintiff's demand for a special meeting of members of the Credit Union to expel certain board members and one unelected officer from the Credit Union three times–twice before the Trial Court and once before the Appellate Division. The Board also filed this very same motion for leave to appeal to this Court before the Appellate Division, which was *unanimously* denied by the panel that heard the appeal. On this fifth attempt, the Board seeks leave to appeal to this Court on grounds that the Appellate Division's decision was contrary to existing law and thus should be reviewed by this Court. The Appellate Division's decision, however, was not contrary to existing law. Since there is no question of law that has arisen that needs to be reviewed by this Court, the present motion should be denied.

4.    The only argument raised in support of the motion is that the Appellate Division's decision did not address the Board's mootness claim. See

2

Affirmation in Support of Motion, ¶ 15.  This argument is farfetched.  The Board made the mootness claim a focal point of its appeal.  It was the first point of its moving brief.  In addition, it was the cornerstone of its presentation at oral argument.  The Appellate Division's decision makes clear that the mootness claim was rejected as having no merit.  See Decision and Order at p. 2 (after noting that the Board failed to establish that the petition to call a special meeting was invalid, and that the Trial Court properly awarded summary judgment in favor of the Plaintiffs, the Court held: "The Board's remaining contentions are either not properly before this Court or without merit.").  As further explained below, the mootness doctrine is inapplicable to the undisputed facts of this case.  The Appellate Division was right in rejecting the argument as lacking merit.  Accordingly, there is no point in granting leave to continue an appeal that, at this stage, borders on the frivolous.  The motion should be denied.

5.      The main defect in the Board's claim that the mootness doctrine is applicable because the directorships in the Board were renewed through elections that took place after the filing of this matter is that it ignores *all* the demands made in the petitions (signed by more than two-thousand members of the Credit Union) by focusing just on the removal of certain directors from the Board.  Indeed, the petitions did not just ask for the removal of the targeted individuals from the Board, but sought to expel them as members of the Credit Union as well.  The

3

expulsion of the targeted individuals from the Credit Union is a different form of relief that cannot be mooted by annual elections that only dealt with the filling of positions in the Board. The Board's motion does not dispute this, but wrongly claims, as shown below, that the Plaintiffs can no longer seek the expulsion of the directors. See below ¶¶ 10-13.

6.     In addition, the petition also sought the expulsion of a Supervisory Committee member, an officer who is appointed by the Board and not elected by the members. Still, the by-laws of the Credit Union grant the members the right, through their vote at a special meeting, to remove committee members. (R.88) (By-laws Art. XVI, Section 3). The Supervisory Committee Member targeted is still in office. Consequently, there can be no mootness as to him because elections do not even come into play in connection with such officers. Tellingly, the Board's motion does not even address the issue of the expulsion of the Supervisory Committee member.

7.     The purpose of the special meeting is not to select directors as in regular elections, but to remove (or expel from the Credit Union altogether) those directors and committee members whom the members believe have acted in a manner detrimental to the Credit Union. It is a check and balance on the accountability of directors and other officers that goes beyond the right of election at regular, annual meetings. See Matter of Auer v. Dressel, 306 N.Y. 427, 430,

4

118 N.E.2d 590 (1954) ("The important right of stockholders to have such [special] meetings will be of little practical value if corporate management can ignore the request").  The normal, annual elections are not the vehicle to challenge a candidate's conduct that may have harmed the Credit Union.  The nominees for the position of directors are selected mostly by the Board, which tends to perpetuate itself. (R. 108).    The vote is up or down and takes place before the annual meeting that can be attended by the members.  (R. 146-148) (Bylaws, Article V, Section 2).   Indeed, at the annual meeting only the *result* of the voting is made public.  Id. (Section 2(d)(8)).  There is no room for debating allegations of wrongdoing prior to an annual, regular election of directors.  (R. 112-113; 232-233; 246-248).  The information provided to members prior to regular, annual elections consists only of brief biographical sketches of the candidates.  See, e.g. R. 246-248.

8.     In contrast, a special meeting seeking to remove an individual provides a forum to air grievances and charges, allowing the challenged individuals an opportunity to defend themselves.  (R.  158; 159) (Bylaws, Article XIV, Section 1 ("A member may be expelled by a two-thirds vote of the members present at a special meeting called for that purpose, but only after the member has been given an opportunity to be heard."); and Article XVI, Section 3 ("Notwithstanding any other provision in these bylaws, any director or committee

5

member of this credit union may be removed from office by the affirmative vote of

a majority of the members present at a special meeting called for that purpose, but

only after an opportunity has been given to be heard.")).  Thus, the special meeting

has a purpose and function that cannot be supplanted by regular, annual elections.

It is an additional check and balance to the accountability of directors that should

not be taken away from the members.

     9.     The cases upon which the Board relies do not even address special

meetings where the expulsion of members is sought, but the matter is never held to

a vote in derogation of the rights of members.  See, e.g., Litas Investing Co. v.

Vebeliunas, 148 A.D.2d 680, 539 N.Y.S.2d 429 (2nd Dept. 1989) (president of the

company who had been removed from office by the board of directors and

enjoined by the court from acting as president was reappointed as president after a

regular annual shareholders' meeting was held and changed the composition of the

board.  The Second Department held that it was error to deny the president's

motion to lift the injunction that had been entered because the elections that took

place after the injunction was entered had not been enjoined, were not contested by

the plaintiff, and rendered the issues previously raised academic); Grossman et al.

v. Katz et al., 195 A.D.2d 462, 600 N.Y.S.2d 130 (2nd Dept. 1993) (proceeding

commenced to have an election held.  After commencement of the case, elections

were held. Trial court still refused to dismiss the case, even where no opposition

6

had been filed.  Appellate Division held that subsequent elections mooted issues and dismissed the case). The failure to vote on the expulsion of members and on the removal of the unelected officer belies the Board's claim that Second Department's Decision somehow ignored precedent that now needs to be reviewed by the Court of Appeals.

10.    In the present motion, the Board makes an argument that was never presented to the Trial Court or to the Second Department (i.e., the notion that somehow the Trial Court precluded the Plaintiffs from seeking the expulsion from the Credit Union of the targeted individuals).  As such, it should be rejected under the well-established principle that a reviewing court does not hear arguments raised for the first time on appeal.  Misicki v. Cardona, 12 N.Y.3d 511, 519, 909 N.E.2d 1213 (New York, 2009).

11.    Even if for the sake of discussion, the Board's new argument on this motion were to be considered, it should be rejected on the merits as well.  First, the Trial Court never ruled that Plaintiff's could not seek the expulsion of the targeted individuals as requested in their Petition.  On the contrary, after discussing the Credit Union by-law provisions allowing members to remove directors and committee members and to expel members from the Credit Union, the Trial Court found the first petition was a valid exercise of the members' rights and directed the Board to call a special meeting to allow a vote on the petition's requests.  Aff. in

Support of Motion, Exhibit B, pp. 6-7, 9. In doing so, the Trial Court held that only one item (i.e., the request that sought to elect, on a temporary basis, board members to replace any who were removed) of the petition was improper and did not have to be addressed at the special meeting. The Trial Court never ruled that the expulsion request could not be pursued at the special meeting. Id. at p. 9.

12.    The Board's reliance on footnote six of the Trial Court's decision is misplaced. The footnote reads: "… *to the extent that the Polish translation did not mention that the request also involved the removal from membership* of three of the directors, the court finds that this alleged defect is not material …" Aff. in Support of Motion, Exhibit B, p. 7 (emphasis added). To infer from this footnote that the Trial Court somehow precluded Plaintiffs from seeking the expulsion of the directors at the special meeting is unwarranted. In fact, the Board ignores the Trial Court's ruling that the translations offered by the Board were inadmissible to prove that the Polish translation included in the petition at stake was inaccurate. Id. at p. 7 ("The Board's assertion that the request is rendered improper because of inconsistencies between the English and Polish versions of the request is not supported by an affidavit from a translator or other evidentiary proof demonstrating that the Polish translation is inaccurate (*see Rosenberg v. Piller*, 116 Ad3d 1023, 1025-1026 [2d Dept 2014]; CPLR 2101 [b])."). The Appellate Division affirmed this ruling and the Board is not seeking review of this point of

8

should not be impeded.  The issues in the matter are very much alive.  The members have waited patiently for now almost six years since the first petition was presented to the Board to hold the special meeting.  The Second Department panel of four judges *unanimously* held that the Board was in the wrong.  To grant leave to appeal here where there are no novel issues of law and no reason to claim that the Appellate Division failed to follow precedents would give credence to the adage:  Justice delayed, justice denied.

WHEREFORE, Plaintiffs respectfully request that the Board's motion be denied.


Dated:  New York, New York
        July _5_, 2018.


Eduardo J. Glas

10

# State of New York
## Court of Appeals

*Decided and Entered on the*
*thirteenth day of September, 2018*

**Present,** Hon. Janet DiFiore, *Chief Judge, presiding.*

Mo. No. 2018-649
Jan Welenc et al.,
  Respondents,
   v.
Board of Directors of Polish and Slavic
Federal Credit Union,
  Appellant.

  Appellant having moved for leave to appeal to the Court of Appeals in the above cause;

  Upon the papers filed and due deliberation, it is

  ORDERED, that the motion is denied with one hundred dollars costs and necessary reproduction disbursements.

John P. Asiello
Clerk of the Court



*State of New York*
*Court of Appeals*

John P. Asiello
Chief Clerk and
Legal Counsel to the Court

Clerk's Office
20 Eagle Street
Albany, New York 12207-1095

Decided September 13, 2018

Mo. No. 2018-649

Jan Welenc et al.,
        Respondents,
        v.
Board of Directors of Polish and Slavic Federal
Credit Union,
        Appellant.

Motion for leave to appeal denied with one hundred dollars
costs and necessary reproduction disbursements.